**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL BUSINESS AVIATION ASSOCIATION, INC., 1200 G Street N.W., Suite 1100 Washington, DC 20005 SANTA MONICA AIRPORT ASSOCIATION, INC., 3021 Airport Avenue, Suite 210 Santa Monica, California 90405 WONDERFUL CITRUS LLC, 1901 S. Lexington Street Delano, CA 93215 BILL'S AIR CENTER, INC., 3147 Donald Douglas Loop South Santa Monica, CA 90405 KIM DAVIDSON AVIATION, INC., AND 2701 Airport Avenue Santa Monica, California 90405 REDGATE PARTNERS, LLC, 2429 S. Peck Road Whittier, CA 90601 *Plaintiffs,* v. DANIEL K. ELWELL, ACTING ADMINISTRATOR, AND FEDERAL AVIATION ADMINISTRATION 800 Independence Ave., S.W. Washington, DC 20591 *Defendants.* | Case No. _____ COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs National Business Aviation Association, Inc., Santa Monica Airport

Association, Inc., Wonderful Citrus LLC, Bill's Air Center, Inc., Kim Davidson Aviation, Inc.,

and Redgate Partners, LLC, by and through their undersigned counsel, bring this action against

Daniel K. Elwell, in his official capacity as the Acting Administrator of the Federal Aviation Administration ("FAA"), and FAA, seeking a declaratory judgment and injunctive relief holding that FAA acted beyond its statutory authority in releasing the City of Santa Monica, California ("City" or "Santa Monica") from the requirement that it operate Santa Monica Municipal Airport ("SMO" or "Airport") in conformity with specified obligations to the federal government ("Releases").

FAA acted contrary to statutory mandates as follows:

(i)     FAA did not find that the Releases were "necessary to protect or advance the civil aviation interests of the United States," in facial conflict with a mandate included in FAA's organic statutes (49 U.S.C. § 47153(a)(2)).

(ii)    FAA did not find that SMO no longer serves the purpose for which it was conveyed, or that the Releases would not prevent SMO from carrying out the purposes for which SMO was conveyed, in facial conflict with a mandate included in FAA's organic statutes (49 U.S.C. § 47153(a)(1)).

(iii)   FAA did not require that the City submit, and did not thereafter itself approve, a study of the noise and access restrictions incorporated into the Releases, in facial conflict with a mandate included in FAA's organic statutes (the Airport Noise and Capacity Act ("ANCA"); 49 U.S.C. § 47524(c)).

(iv)    FAA did not analyze the environmental consequences of the actions authorized by the Releases, or make any showing that the Releases were categorically excluded from environmental analysis, as required by the National Environmental Policy Act ("NEPA"), in facial conflict with a mandate which the Court of Appeals for

the District of Columbia Circuit ("D.C. Circuit") has held implicates FAA's

organic statutes (42 U.S.C. §§ 4332(2)(C)).

(v)     FAA failed to provide public notice and an opportunity for public comment on the

Releases, in facial conflict with mandates of FAA's organic statutes (49 U.S.C. §§

47107(h)(2), 47151(d), 47153(a)(1)).

(vi)    FAA waived the enforcement of requirements attached to federal grants that the

agency has a non-discretionary obligation to enforce, in facial conflict with

mandates of FAA's organic statutes (49 U.S.C. § 47107(a)).

In releasing the City's federal obligations, as heretofore described, FAA has engaged in

ultra vires actions that have harmed the plaintiffs and deprived them of statutory rights.  As a

result of the Releases, Plaintiffs' access to the Airport is restricted in the short term by the

truncation of its runway, and in the long term by its closure.  Further, the disruption caused by

FAA's ultra vires actions is not limited to Plaintiffs but also impacts other tenants and users of

SMO, and other airports, and their tenants and users, throughout Southern California, to which

displaced tenants and users of SMO have relocated and will relocate.

Plaintiffs accordingly seek an order declaring that FAA was without authority to enter

into the Releases and providing other relief, as hereinafter requested.

## JURISDICTION AND VENUE

1.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1337; the

All Writs Act, 28 U.S.C. § 1651; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and

2202.

2.      This Court is authorized by Leedom v. Kyne, 358 U.S. 184 (1958), and its

progeny, as decided by the United States Supreme Court, the D.C. Circuit and this Court, to

prohibit action by an agency (including action not deemed final) that is in excess of the agency's jurisdiction or its delegated powers.

3.      Although 49 U.S.C. § 46110 provides for review of final orders of FAA in the D.C. Circuit or another circuit court, that statute does not foreclose this Court's jurisdiction in this case.  As more fully alleged hereafter, a panel of the D.C. Circuit has ruled that the FAA's actions in releasing the City's federal obligations did not constitute a final order of the FAA, and thus that Section 46110 does not allow a petition for review.  NBAA v. Huerta, 2018 WL 3159150 (June 12, 2018).  Plaintiffs have no other means within their control of obtaining apposite judicial review of the Releases.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because: (i) defendant Daniel K. Elwell, in his official capacity as the Acting Administrator of FAA, resides in the District of Columbia (see, e.g., Hartke v. FAA, 369 F.Supp. 741, 743 (E.D.N.Y. 1973)), and FAA is headquartered in the District of Columbia, and (ii) on information and belief, a substantial part of the events giving rise to this claim occurred in the District of Columbia.

## PARTIES

### Plaintiffs

5.      The National Business Aviation Association, Inc., a District of Columbia corporation, is the leading voice for companies that operate aircraft in support of their business or are otherwise involved in business aviation.  NBAA's 11,000 members can and do make use of SMO and include Plaintiffs Wonderful Citrus LLC, Bill's Air Center, Inc., Kim Davidson Aviation, Inc., and Redgate Partners, LLC.

6.      The Santa Monica Airport Association, Inc., a California corporation, since 1967 has had the purpose of promoting general aviation at SMO and across the country.  Its members

include most of the aircraft owners and operators based at SMO and many others who utilize SMO, including Plaintiffs Wonderful Citrus LLC, Bill's Air Center, Inc., and Kim Davidson Aviation, Inc.

7.     Wonderful Citrus LLC, a Delaware limited liability company, is the largest vertically integrated citrus business in the United States.  For more than fifteen years, Wonderful has relied on SMO as a vital hub for employee travel to Wonderful's multiple locations across the western United States.

8.     Bill's Air Center, Inc., a California corporation, has operated an aircraft inspection and repair facility at SMO since 1989.

9.     Kim Davidson Aviation, Inc., a California corporation, is an FAA-certified repair station and factory authorized Cirrus Aircraft service center that has been located at SMO since 1982.

10.    Redgate Partners, LLC, a California limited liability company, and its subsidiaries engage in commercial vehicle sales, leasing, financing and repair.  Redgate bases aircraft at SMO to enable employee travel to multiple destinations across the western United States.

**Defendants**

11.    Daniel K. Elwell is the Acting Administrator of FAA, and FAA is the federal agency with general oversight responsibility for airports, including their compliance with obligations incorporated into federal airport improvement grants and surplus property deeds, and the associated mandatory requirements included in FAA's organic statutes, in addition to other requirements explicit and implicit in FAA's organic statutes, including ANCA and NEPA.

## FACTUAL BACKGROUND

### The City's Federal Obligations

12.     SMO has a century of history as an airport.  For decades it was home to Douglas Aircraft, which built World War II transports and bombers, and later airliners.  Jet aircraft routinely have operated at SMO for more than 50 years.

13.     SMO for decades has been designated as a "reliever" by FAA – i.e., a significant general aviation airport which accommodates traffic that otherwise would utilize already-congested commercial airports, such as Los Angeles International Airport.

14.     SMO was leased to the federal government for military use during World War II.  Afterwards, a much-improved runway-taxiway complex was returned to the City via a 1948 deed under the Surplus Property Act.

15.     Under the deed, obligations were imposed upon the City – most importantly, that it operate SMO as a fully-functional airport in perpetuity.  FAA is responsible for enforcing the deed-based obligations, and periodically has reaffirmed that the deed's obligations are perpetual.

16.     Despite being the steward of this valuable asset, for decades the City has sought to restrict or close SMO, triggering both court and administrative proceedings, in which the City's efforts were vigorously and successfully resisted by FAA.  See, e.g., Santa Monica v. FAA, 631 F.3d 550 (D.C.Cir. 2011).

17.     In 2013, the City initiated new litigation against FAA under the Quiet Title Act (28 U.S.C. § 2409a) in the U.S. District Court for the Central District of California ("Central District"), seeking a declaration that its deed-based obligations were not perpetual and had expired (C.D.Cal. docket no. 13-8046) ("Central District case").

18.     FAA opposed the claim – initially emphasizing that it was time-barred, filed more than fifty years too late.  The Central District agreed with FAA that the City's claim was untimely and dismissed the case, but on appeal the Ninth Circuit remanded the case to the Central District, on essentially procedural grounds.  See Santa Monica v. U.S., 2014 WL 1348499 (C.D.Cal. 2014) and 650 Fed. Appx. 326 (9th Cir. 2016).

19.     The City also has accepted grants from FAA pursuant to the Airport Improvement Program ("AIP"; 49 U.S.C. § 47107).  They are accompanied by obligations similar to, if not more extensive than, deed-based obligations and typically endure for 20 years.

20.     The City last received a disbursement of AIP grant funds from FAA in 2003.  In an administrative proceeding initiated in 2014 by some of the parties to this proceeding (FAA docket no. 16-14-04), FAA ruled that the acceptance of those funds extended SMO's grant-based obligations through 2023.  The City petitioned for review of that decision (Ninth Circuit docket no. 16-72827) ("Ninth Circuit case").

**Settlement Agreement and Releases**

21.     In January 2017, the FAA and the City entered into a settlement agreement ("Agreement"), which:

    a)      settled and provided for dismissal of the pending Central District case and the pending Ninth Circuit case;

    b)      explicitly released the City from its federal obligations as heretofore alleged;

    c)      as part of the release of obligations, provided that the City could immediately reduce the sole runway at SMO from 4,973 feet to 3,500 feet, thereby eliminating many operations at SMO, and could close the Airport altogether after December 31, 2028; and

      d)      required the parties to request entry by the Central District of a consent decree approving the Agreement.

22.     On January 28, 2017 – a Saturday – FAA and the City revealed the existence of the Agreement.  Negotiations between the two entities had been conducted in complete secrecy, with no prior notice and no opportunity for stakeholder participation or public comment.

23.     The Agreement was signed by FAA's Chief Counsel, in Washington DC.

24.     The Agreement did not include any of the findings required by 49 U.S.C. § 47153(a)(1)-(2); did not include the approval of a noise and access study required by ANCA (nor was such a study submitted to FAA by the City); did not include the environmental analysis, or documentation that a categorical exclusion was applicable, as required by NEPA; and did not explain how FAA could agree not to enforce grant-based obligations that the agency previously had acknowledged to be non-discretionary and non-waivable pursuant to 49 U.S.C. § 47107(a).

25.     The Agreement was docketed in the Central District case on the next business day, January 30, 2017, along with the request for entry of a consent decree.  The Central District approved that request within 48 hours, entering the consent decree on February 1, 2017.

26.     Plaintiffs were not parties to the Central District proceeding, nor did they have a meaningful opportunity to participate before the case was closed.

27.     In the brief window before entry of the consent decree, two other parties, unaffiliated with Plaintiffs, did manage to request intervention to object to the Agreement.  FAA and the City both opposed the motions, and the Central District denied the requests as untimely.

28.     Previously, in August 2016, two of the Plaintiffs (Bill's Air Center, Inc. and Kim Davidson Aviation, Inc.) had also moved to intervene in the Central District case, but their motion was denied on the premise that FAA would adequately represent their interests.

29.    Santa Monica promptly exercised its runway reduction authority by changing the runway paint markings, signs, and lighting, thereby reducing its designated operational length to 3,500 feet, and by modifying associated taxiways, in December 2017.

30.    The City currently is considering proposals for the demolition and removal of pavement in excess of 3,500 feet at either end of the runway.  The City also has formally resolved to close the Airport as soon as permitted by the Agreement.

**Plaintiffs' Initial Challenge**

31.    On February 13, 2017, Plaintiffs filed a petition for review in the D.C. Circuit (no. 17-1054), alleging that the Agreement was a final order of FAA and that the Releases embodied therein were facially non-compliant with mandatory statutory and regulatory requirements.

32.    FAA primarily opposed the petition on procedural grounds, arguing first that the Plaintiffs lacked standing – because a ruling invalidating the Agreement would not directly affect the consent decree entered by the Central District and thus that Petitioners could obtain no redress from the D.C. Circuit – and second that the Agreement was not a final order cognizable under 49 U.S.C. § 46110, because it entered into effect only once the Central District approved the consent decree.

33.    The D.C. Circuit rejected FAA's contention that Plaintiffs lacked standing, explaining that "[t]here is at least a significant possibility that a decision by this Court invalidating the January 30 agreement also would unravel the February 1 consent decree," but held that the Agreement did not constitute a final order of FAA, and accordingly did not reach the substantive questions of statutory compliance raised by Plaintiffs.  See 2018 WL 3159150.

## CLAIM FOR RELIEF

## COUNT 1

### The Releases Are Not In Accordance With
### FAA's Organic Statutes and Exceed FAA's Authority

34.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 33 of this Complaint, as though fully set forth below.

35.     FAA's organic statutes, as codified in Title 49, Subtitle VII of the U.S. Code, provide FAA with limited authority.

36.     The Releases exceed FAA's authority because FAA entirely failed to comply with predicates set forth in 49 U.S.C. § 47153(a)(1) and (2) (justifications required for release of airport obligations); 49 U.S.C. § 47524(c) (ANCA aircraft noise and access study requirements); 49 U.S.C. § 4332(2)(C) (NEPA environmental study requirements); 49 U.S.C. §§ 47151(d), 47153(a)(1), and § 47107(h)(2) (public notice and comment requirements for releases); and 49 U.S.C. § 47107(a) (non-discretionary requirement to enforce grant-based obligations).

37.     Although federal agencies have some authority to settle litigation to which they are parties, that authority is limited; it does not enable them to agree to settle on terms that conflict with statute.  Nor does the Department of Justice's own limited authority to settle litigation authorize or insulate a settlement on behalf of an agency client that is ultra vires to that agency's authority.  See, e.g., National Audubon Society v. Watt, 678 F.2d 299, n.18 (D.C.Cir. 1982).

38.     The implementation of the Releases has deprived, and will continue to deprive, Plaintiffs of rights intended by Congress – rights both substantive and procedural.  Congress deliberately constrained FAA's discretion to enter into a release of airport obligations in order to protect the significant public interest in continued access to those facilities, and Plaintiffs are

entitled to FAA's conformity with the procedures mandated by Congress should the agency entertain a request for such a release.

39.     Further, without this Court's action, Plaintiffs would be wholly deprived of any means within their control to obtain judicial review of the Releases.  The D.C Circuit already has ruled that the Agreement is not subject to judicial review under 49 U.S.C. § 46110.  See 2018 WL 3159150.  Nor do Plaintiffs have a statutory right to seek judicial review in any other forum of the specific issue of the authority of FAA to enter into the Releases.

40.     This case does not require this Court to consider whether FAA's compliance with the statutes cited above was adequate; FAA simply made no effort to comply with them at all, despite Congressional mandates to do so.   Accordingly, this is the exceptional case in which, pursuant to Leedom and its progeny, this Court can and should strike down action taken by an agency that plainly was excess of its powers.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully request that this Court enter judgment in their favor, and:

1.     Declare that FAA was without authority to enter into the Releases;

2.     Declare that the Agreement incorporating the unauthorized Releases accordingly is invalid;

3.     Prohibit FAA and all other persons from enforcing, applying, or implementing (or requiring others to enforce, apply, or implement) the Releases or the Agreement; and

4.     Grant Plaintiffs such other relief as may be necessary or appropriate.

Respectfully submitted,

ZUCKERT, SCOUTT & RASENBERGER, LLP

/s/ Jolyon A. Silversmith

Dated: July 24, 2018

JOLYON ("JOL") A. SILVERSMITH, Esq.
D.C. Bar no. 463897
BARBARA M. MARRIN, Esq.
D.C. Bar no. 1031665; admission to D.D.C. pending
888 17th Street, N.W., Suite 700
Washington, D.C. 20006
(202) 298-8660
jasilversmith@zsrlaw.com
bmmarrin@zsrlaw.com

RICHARD K. SIMON, Esq.
1700 Decker School Lane
Malibu, CA 90265
(310) 503-7286
rsimon3@verizon.net

Counsel for Plaintiffs

**Certificate required by LCvR 26.1 of the Local Rules of the United States District Court**

**for the District of Columbia**

I, the undersigned, counsel of record for the Plaintiffs, certify that to the best of my knowledge and belief, the following are parent companies, subsidiaries, affiliates, or companies which own at least 10% of the stock of the Plaintiffs which have any outstanding securities in the hands of the public:

- None

These representations are made in order that judges of this Court may determine the need for recusal.

Respectfully submitted,

ZUCKERT, SCOUTT & RASENBERGER, LLP

/s/ Jolyon A. Silversmith

JOLYON ("JOL") A. SILVERSMITH, Esq.
D.C. Bar no. 463897
888 17th Street, N.W., Suite 700
Washington, D.C. 20006
(202) 298-8660
jasilversmith@zsrlaw.com

Counsel for Plaintiffs