## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NATIONAL BUSINESS AVIATION ASSOCIATION, INC., *et al.*, | ) ) ) | |
| | ) | Case No. 1:18-cv-01719-RBW |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL K. ELWELL, only in his official capacity as Acting Administrator of the Federal Aviation Administration, | ) ) ) | |
| 800 Independent Avenue, S.W., Washington, DC 20591 | ) ) | |
| | ) | |
| and | ) | |
| | ) | |
| FEDERAL AVIATION ADMINISTRATION, | ) | |
| 800 Independent Avenue, S.W., Washington, DC 20591 | ) ) | |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

In this case, Plaintiffs National Business Aviation Association, Inc., *et al.*, (collectively, "Plaintiffs"), try once again to undermine a settlement (and the consent decree that effected the settlement) between the City of Santa Monica ("City") and the United States, Federal Aviation Administration ("FAA"), and the then-FAA Administrator concerning the operation of the Santa Monica Municipal Airport ("Airport"). Plaintiffs contend that the settlement is invalid because the FAA allegedly failed to abide by procedural requirements that would have applied if the FAA had acted on its own, outside the litigation context, to release property interests. Plaintiffs originally brought these claims in the D.C. Circuit, which rejected them because the settlement itself did not release the interests. Rather, the judicial act of entering the consent decree effected that release, so the settlement was not a final FAA order subject to the court's review.

Undeterred, Plaintiffs now attempt to reassert their claims under *Leedom v. Kyne*, 358

U.S. 184 (1958), which permits judicial review of otherwise unreviewable agency actions,

including non-final agency actions, in extremely limited circumstances.  As the D.C. Circuit

explained, such a "claim is essentially a Hail Mary pass—and in court as in football, the attempt

rarely succeeds."  *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir.

2009).  This is not one of those rare cases.  There are three requirements Plaintiffs would have to

meet for their purported *Leedom* claim to be cognizable, and, because they meet none, this action

should be dismissed.

## BACKGROUND

## I.      Property Interests in the Airport

In 1941, the United States leased from the City the parcels of land upon which the

Airport sits ("Airport Property") as part of its effort to develop military aircraft during World

War II.[1]  *See* Complaint for Declaratory and Injunctive Relief ("Complaint") ¶¶ 12-14;

Declaration of Gary Feldon ("Feldon Decl."), Ex. A (Instrument of Transfer) at 3-4.[2]  After the

---

[1]  For a more complete recitation of the history of the Airport and the disputes surrounding it, see Order Granting Defendants' Motion to Dismiss, *Santa Monica v. United States*, 2:13-cv-08046-JFW (VBKx) (C.D. Cal. Feb. 13, 2014), ECF No. 31, *rev'd on unrelated grounds by* 650 F. App'x 650 (2016).

[2]  Although a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is typically decided solely on the allegations in the complaint (including any documents attached to the complaint), the Court may consider "documents incorporated into the complaint by reference[] and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 232 (2007). "Under the incorporation-by-reference doctrine, a defendant can submit—and the court can consider—a document that 'is not attached by the plaintiff, but is referred to in the complaint and integral to the plaintiff's claim.' A document is 'integral' to the complaint if it 'form[s] the basis for a claim or part of a claim.'" *Horton v. Espindola*, Case No. 17-cv-01230 (APM), ___ F. Supp. 3d ___, 2018 WL 3768533, at *3 (D.D.C. Aug. 8, 2018) (citations omitted).  The exhibits to this motion—legal documents conveying or recording property interests in the Airport Property and filings in other litigation concerning the Airport Property—fall in that category because they are extensively referenced in the Complaint and collectively set forth the basis of Plaintiffs' claims. *See* Compl. ¶¶ 17-18, 20-21, 23-25, 31-33, 36-38.  Moreover, public filings of transfer of interests in property and the existence and content of filings in other litigation (but not the truth of those contents) are subject to judicial notice because their accuracy cannot reasonably be questioned. *Asnake v. Deutsche Bank Nat'l Trust Co.*, 313 F. Supp. 3d 84, 85-86 (D.D.C. 2018) ("The Court may also take judicial notice of 'public records,' such as deeds and other court proceedings, without converting a motion to dismiss into one for summary judgment.").

War, the United States, acting through the War Assets Administration, executed an agreement ("Instrument of Transfer") conveying its leasehold interest in the leased portion of the Airport Property back to the City pursuant to the Surplus Property Act of 1944. Feldon Decl., Ex. A.

The Instrument of Transfer required that "no property transferred by th[at] instrument shall be used, leased, sold, salvaged, or disposed of by the [City] for other than airport purposes without the written consent of the Civil Aeronautics Administrator." *Id.* at 6. If the City violated this requirement or any other provision of the Instrument of Transfer, the "rights transferred by th[at] instrument . . . shall at the option of the [United States] revert to the [United States] sixty (60) days following the date upon which demand to this effect is made in writing by the Civil Aeronautics Administrator or his successor in function," unless the City cured the breach in that time. *Id.* The City has operated the Airport since the Instrument of Transfer. Compl. ¶¶ 12-14.

Beginning in the late 1960s, the Airport became the subject of legal disputes among the City, the FAA, City residents, and Airport tenants and users.[3] *See id.* ¶ 16. Many of the disputes between the FAA and the City were held in abeyance between 1984 and 2015 as a result of an agreement between the two concerning the operation of the Airport ("1984 Agreement"). Feldon Decl., Ex. B (1984 Agreement). There were nonetheless numerous legal challenges to the way the City operated the Airport in state courts, federal courts, and administrative proceedings.[4]

---

[3] *E.g.*, *City of Santa Monica v. FAA*, 631 F.3d 550 (D.C. Cir. 2011); *United States v. City of Santa Monica*, 330 F. App'x 124 (2009); *Cal. Aviation, Inc. v. City of Santa Monica*, 806 F.2d 905 (9th Cir. 1986); *Santa Monica Airport Ass'n v. City of Santa Monica*, 659 F.2d 100 (9th Cir. 1980); *Nestle v. City of Santa Monica*, 496 P.2d 480 (Cal. 1972); *Nat'l Business Aviation Ass'n v. City of Santa Monica*, FAA Docket No. 16-14-04 (Aug. 15, 2016); *In re City of Santa Monica*, FAA Docket No. 16-02-08, FDMS No. FAA-203-15807 (July 8, 2009); *Santa Monica Airport Ass'n v. City of Santa Monica*, FAA Docket No. 16-99-21 (Feb. 4, 2003); Office of the Attorney Gen. of the State of Cal. Op. No. CV 74-317, 58 Ops. Cal. Atty. Gen. 345 (May 30, 1975).

[4] *E.g.*, *City of Santa Monica*, 631 F.3d 550; *City of Santa Monica*, 330 F. App'x 124; *Cal. Aviation, Inc.*, 806 F.2d 905; *In re City of Santa Monica*, FAA Docket No. 16-02-08; *Santa Monica Airport Ass'n*, FAA Docket No. 16-99-21.

**II.     Central District of California Litigation**

In 2013, in anticipation of the expiration of the 1984 Agreement, the City filed a federal

lawsuit in the U.S. District Court for the Central District of California against the United States,

the FAA, and the then-FAA Administrator.  *See* Compl. Decl. & Injunctive Relief Under Quiet

Title Act & U.S. Const., *City of Santa Monica v. United States*, 2:13-cv-08046-JFW (VBK), ¶ 1

(C.D. Cal. Oct. 31, 2013) ("Central District Litigation").  In relevant part, the City's lawsuit

asserted a Quiet Title Act claim for a declaration that it would be free to close the Airport

entirely once the 1984 Agreement expired.  *Id.* at 31-32.  The City contended its obligations

under the Instrument of Transfer lasted only as long as the United States' leasehold in the Airport

Property would have lasted, had the United States not surrendered that property interest under

the Instrument.  *Id.* ¶¶ 1, 82, 123, 131.  *See also id.* ¶¶ 96, 110.  The FAA and the United States

contended that the City had obligated itself to operate the Airport in perpetuity when it entered

into the Instrument of Transfer.  *Id.* ¶ 1.

The Federal Government moved to dismiss the case on various grounds, including that

the Quiet Title Act claim was barred by that law's twelve-year statute of limitations, which runs

from when the plaintiff knew or reasonably should have known of the Federal Government's

adverse property claim.  *City of Santa Monica*, ECF No. 18, 2:13-cv-08046-JFW (VBK).  The

Central District of California accepted the statute of limitations argument and dismissed the

Quiet Title Act claim with prejudice and the remaining claims without prejudice as premature or

unripe.  Order Granting Defs.' Mot. Dismiss, ECF No. 31, *City of Santa Monica*, 2:13-cv-08046-

JFW (VBK), at 17.  On appeal, the Ninth Circuit reversed and remanded for further proceedings

because the language of the Instrument of Transfer did not resolve the issue of the City's notice

and the later events relied upon by the Federal Government had "disputed significance" that

could not be resolved on a motion to dismiss.  *City of Santa Monica v. United States*, 650 F.

App'x 326, 327-29 (9th Cir. 2016).  The Ninth Circuit therefore held that further development of

the factual record was necessary.  *Id.* at 329.

Following the remand, Kim Davidson Aviation, Inc. and Bill's Air Center, Inc., two

Plaintiffs here, moved to intervene in the Central District Litigation.  Notice of Mot. & Mot.

Intervene; Mem. P. & A., ECF No. 47, *City of Santa Monica*, 2:13-cv-08046-JFW (VBK).  The

Central District of California denied the motion, finding those Plaintiffs could not intervene as of

right and permissive intervention was unnecessary because of "the unity of interests between

[them and the d]efendants."  *City of Santa Monica v. United States*, 13-cv-8046-JFW (VBKx),

2016 WL 10576629 (C.D. Cal. Sept. 23, 2016).  Those parties did not appeal the denial of their

motion, although the denial was immediately appealable.  *See Stringfellow v. Concerned*

*Neighbors in Action*, 480 U.S. 370, 377 (1987).

## III.   Additional Disputes Regarding the Airport Between the City and the FAA

While discovery proceeded in the Central District Litigation, there were two pending

disputes regarding the City's other obligations concerning the operation of the Airport.  The

FAA and the City ultimately agreed to resolve these disputes as part of the global settlement

Plaintiffs challenge here.

In one dispute, the City and the FAA disagreed regarding duration of the City's

obligations under a 1994 FAA airport improvement grant.  In administrative proceedings, the

FAA held that the City extended the duration of its grant obligations by accepting additional

funds under the grant in 2004, requiring the City to continue to operate the Airport through 2024.

*See* Br. Pet'r City of Santa Monica, *City of Santa Monica v. FAA*, Dkt. 16, No. 16-72827 (9th

Cir. Dec. 16, 2016).  The City appealed that determination, contending that the additional

funding did not extend its grant obligations and that the obligations had therefore already lapsed in 2014.  *Id.*  Plaintiff National Business Aviation Association, Inc. ("NBAA") and the Aircraft Owners and Pilots Association moved to intervene in support of the FAA in that case.  Mot. Leave Intervene as Resp't Aircraft Owners & Pilots Ass'n & Nat'l Bus. Aviation Ass'n, *City of Santa Monica*, Dkt 8, No. 16-72827 (9th Cir. Sept. 26, 2016).  The motion was not ruled upon before the City voluntarily dismissed the case following the settlement.

In the other dispute, the FAA addressed the City's attempt to evict two fixed-base operators that provided aviation fuel at the Airport.  Interim Cease & Desist Order, *In re Compliance with Fed. Obligations by the City of Santa Monica*, FAA Dkt. No. 16-16-13, 1 (Dec. 12, 2016).  The FAA issued an interim cease and desist order in December 2016 prohibiting the eviction during the administrative proceedings.  *Id.* at 5.  The FAA did not make a final determination in the matter before it also was resolved by the global settlement.

## IV.     Settlement Agreement and Consent Decree

Following initial exchanges of discovery in the Central District Litigation and court-ordered mediation, the City and the Federal Government agreed to resolve that case and the disputes pending in the Ninth Circuit and before the FAA.  *See* Order Vacating Scheduling Conf. & Referral to Private Mediation, *City of Santa Monica*, ECF No. 45, 2:13-cv-08046-JFW (VBK) (C.D. Cal. Aug. 11, 2016).  To this end, they negotiated the Settlement Agreement/Consent Decree between the Federal Aviation Administration and the City of Santa Monica ("Settlement Agreement").  Feldon Decl., Ex. C (Settlement Agreement) at 3-4.  Under the Settlement Agreement, the parties would jointly move the court to enter a consent decree embodying their agreement.  If the court failed to do so, the Agreement would "be of no force and effect and [could] not be used by either Party for any purpose whatsoever."  *Id.* at 4.

Under the terms of the proposed consent decree, (1) the City was allowed to immediately shorten the Airport's runway; (2) the City committed to operate the Airport in accordance with certain FAA regulations and specified grant obligations through the expiration of the Settlement Agreement on December 31, 2028; and (3) the FAA released the Airport Property from all rights and restrictions other than those imposed by the decree or by statute.  *See id.* at 3-7.  The parties also agreed to dismiss the Ninth Circuit litigation and the administrative matter pending before the FAA.  *Id.* 3-4.

The day after the parties' joint filing of the Settlement Agreement and the proposed Consent Decree, two resident groups filed notice of their intent to move to intervene to oppose the proposed consent decree as "effectively transfer[ring] control over the Air space to the federal government," which would be "100 times more intrusive on the City than the 1948 Instrument of Transfer."  Resident Groups' Notice Emergency Mot. (1) Permission Intervene & (2) Obj. Settlement & Consent Decree, ECF No. 53, *City of Santa Monica*, 2:13-cv-08046-JFW (VBK), at 2.

On February 1, 2017, two days after the parties' joint filing, Judge Walter denied the motion to intervene and entered the proposed consent decree.  Order Re: Stipulation & Order/Consent Decree, *City of Santa Monica*, ECF No. 56*, 2:13-cv-08046-JFW (VBK) ("Consent Decree") (attached to the Feldon Declaration as Exhibit D).  In that order, Judge Walter specifically stated that he had "reviewed the Settlement Agreement . . . and conclude[d] that" it was "'not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned.'"  *Id.* (citation omitted).

Neither resident group appealed, nor did any other non-party move to intervene to challenge the Consent Decree. *See generally* Docket, *City of Santa Monica*, 2:13-cv-08046-JFW (VBK). Plaintiff NBAA, which still had a motion to intervene pending in the Ninth Circuit, did not object when the Ninth Circuit granted the City's motion to voluntarily dismiss that case. *Nat'l Bus. Aviation Ass'n, Inc. v. Huerta*, ___ F. App'x ___, No. 17-1054, 2018 WL 3159150, *2 (D.C. Cir. June 12, 2018) (per curiam).

## V.     Plaintiffs' Failed Challenge to the Settlement Agreement in the D.C. Circuit

In February 2017, Plaintiffs sued in the D.C. Circuit seeking review of the Settlement Agreement. Pet. for Review, *Nat'l Bus. Aviation Ass'n, Inc. v. Huerta*, Doc. #1662704, No. 17-1054 (D.C. Cir. Feb. 13, 2017). Plaintiffs filed their petition for review pursuant to 49 U.S.C. § 46110, which in relevant part permits individuals with substantial interests in final orders of the FAA Administrator to challenge those orders. Jurisdiction over such claims is limited exclusively to the D.C. Circuit or "the court of appeals of the United States for the circuit in which the person resides or has its principal place of business." 49 U.S.C. § 46110(a). The Federal Government moved to dismiss for lack of jurisdiction on February 24, 2017, and explicitly stated that Plaintiffs' proper forum for relief would be the Central District of California. Resp'ts' Mot. Dismiss Review Lack of a Reviewable FAA Order, *Nat'l Bus. Aviation Ass'n, Inc. v. FAA*, No. 17-1054, Doc. #1663033, at 7 (D.C. Cir. Feb. 24, 2017).

After full briefing and oral argument, the D.C. Circuit dismissed the petition. *Nat'l Bus. Aviation Ass'n, Inc.*, 2018 WL 3159150, at *2. The court held that the Settlement Agreement was not a final order because it "produced no legal consequences at all." *Id.* Rather, any release of interests happened when the Central District of California issued the Consent Decree. *Id.* Thus, the Agreement was not reviewable as a final FAA order under 49 U.S.C. § 46110. *Id.* at

*2-3.  Plaintiffs filed for rehearing *en banc*, which was denied August 6, 2018.  Order, *Nat'l Bus. Aviation Ass'n*, Doc #1744207, No. 17-1054.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) requires dismissal when the plaintiff fails to make allegations sufficient to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A "claim has facial plausibility" when the "well-pleaded factual allegations" allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  "While the complaint is to be construed liberally in plaintiff's favor, the Court need not accept inferences unsupported by facts alleged in the complaint; nor must the Court accept plaintiff's legal conclusions."  *United States v. All Assets Held at Bank Julius Baer & Co.*, 571 F. Supp. 2d 1, 15 (D.D.C. 2008).

## ARGUMENT

Plaintiffs here rely on this Court's purported jurisdiction under *Leedom* to adjudicate the same claims that Plaintiffs raised in their failed D.C. Circuit challenge.  Compl. ¶¶ 2-3.  "The invocation of *Leedom* jurisdiction . . . is extraordinary."  *Ass'n of Civilian Technicians v. Fed. Labor Relations Auth.*, 283 F.3d 339, 344 (D.C. Cir. 2002).  "This point cannot be overstated, because . . . *Leedom* jurisdiction is extremely narrow in scope."  *Nat'l Air Traffic Controllers Ass'n AFL-CIO v. Fed. Serv. Impasses Panel*, 437 F.3d 1256, 1263 (D.C. Cir. 2006).  A court may only consider claims brought pursuant to *Leedom* when "barring review by the district court 'would wholly deprive [the party] of a meaningful and adequate means of vindicating its statutory rights'" and "the agency has acted 'in excess of its delegated powers and contrary to a specific prohibition' which 'is clear and mandatory.'"  *Nat'l Air Traffic Controllers Ass'n AFL-*

*CIO v. Fed. Serv. Impasses Panel*, 437 F.3d 1256, 1263 (D.C. Cir. 2006).  In addition, *Leedom*

review is not available when there is an express "statutory preclusion of review" of the claims

asserted.  *Nyunt*, 589 F.3d at 449.  Here, none of the conditions is met.

## I.      Intervention Would Have Given Plaintiffs a Full Opportunity for Meaningful Review of the Claims They Assert Here.

A plaintiff may only properly invoke a court's jurisdiction under *Leedom* when there is

no other mechanism for judicial review of a claim.  *Nat'l Air Traffic Controllers Ass'n*, 437 F.3d

at 1263.  Here, Plaintiffs could have moved to intervene in the Central District Litigation to

challenge the Consent Decree on the same grounds that it asserts in this case.  *See Pac. Mar.*

*Ass'n v. NLRB*, 827 F.3d 1203, 1211 (9th Cir. 2016) (rejecting *Leedom* jurisdiction when

intervention in an administrative proceeding "presented [the plaintiff] with a viable alternative

path to seeking review").  This avenue for review precludes their reliance on *Leedom* here.

The D.C. Circuit's decision rejecting Plaintiffs' last attempt to challenge the Settlement

Agreement makes clear that intervention in the Central District Litigation would have provided

Plaintiffs with meaningful review of their claims.  In that decision, the D.C. Circuit noted that

"the Ninth Circuit repeatedly has held that intervenors may challenge consent decrees entered

into by federal agencies as violating any applicable statutes or regulations," meaning that

Plaintiffs could "have raised their current arguments in" the Central District Litigation.  *Nat'l*

*Bus. Aviation Ass'n, Inc.*, 2018 WL 3159150, at *3.  The court went on to explain that, "if the

settlement agreement did violate federal law[,] . . . then so too would a consent decree

incorporating its terms.  And under Ninth Circuit precedent binding on the Central District,

courts cannot immunize agency actions from judicial review by incorporating them into consent

decrees."  *Id.* at *2.  Had Plaintiffs been able to invalidate the Consent Decree, the Settlement

Agreement "would have been 'of no force and effect' whatsoever." *Id.* (internal record citation omitted).

Despite the availability of this means of review, "none of the [Plaintiffs] sought intervention after the 'Settlement Agreement . . .' created fissures between [them and] the FAA."[5] *Id.* at *3. Plaintiffs justify their inaction by asserting that the two days between the parties jointly moving for the Central District of California to enter the Consent Decree embodying the Settlement Agreement and the grant of that motion did not give them "a meaningful opportunity to participate before the case was closed." Compl. ¶¶ 25-26.

This assertion fails for two reasons. First, two Santa Monica resident groups filed notice of their intent to intervene to challenge the Settlement Agreement and proposed Consent Decree within a day of the joint motion, Feldon Decl., Ex. F, belying Plaintiffs' claim that they did not have enough time to file a motion themselves. Indeed, two Plaintiffs simply could have renewed their already-filed intervention motions setting out their interests in the case and added their opposition to the Settlement Agreement. *See* Notice of Mot. & Mot. Intervene; Mem. P. & A., ECF No. 47, *City of Santa Monica*, 2:13-cv-08046-JFW (VBK).

Second, Plaintiffs could have moved to intervene in the Central District Litigation after the entry of the Consent Decree to seek relief under Federal Rule of Civil Procedure 60(b) or to file an appeal. In the Ninth Circuit, "a post-judgment motion to intervene is timely if filed within the time allowed for the filing of an appeal," which in this case would have been sixty days. *Yniquez v. Arizona*, 939 F.2d 727, 734 (9th Cir. 1991); Fed. R. App. P. 4(a)(1)(B). Even an untimely motion to intervene to challenge a consent decree may be granted in appropriate

---

[5] The D.C. Circuit also noted that NBAA "was seeking intervention in the Ninth Circuit appeal regarding the grant conditions, yet it raised no objection when the appeal was dismissed as provided for in the [Consent D]ecree." *See Nat'l Bus. Aviation Ass'n, Inc.*, 2018 WL 3159150, at *3.

circumstances. *See Orange Cnty. v. Air Cal.*, 799 F.2d 535, 538 (9th Cir. 1986); *Alaniz v. Tillie Lewis Foods*, 572 F.2d 657, 659 (9th Cir. 1978).  And, if Plaintiffs' motion to intervene were denied, they would have had the immediate right to appeal the denial to the Ninth Circuit.  *See Stringfellow*, 480 U.S. at 377.  *See also United States v. Carpenter*, 526 F.3d 1237, 1240-41 (9th Cir. 2008) (vacating a settlement when a district court improperly denied a motion to intervene).  In short, Plaintiffs had a very real and meaningful opportunity to intervene but chose not to do so.

Plaintiffs' failure to intervene in the Central District Litigation is hard to reconcile with the ardor with which they have pursued their claims before the D.C. Circuit and now this Court.  Less than a month after entry of the Consent Decree (and therefore well within the period Plaintiffs could have timely intervened in the Central District Litigation), the Federal Government specifically stated in its motion to dismiss Plaintiffs' D.C. Circuit petition that, if Plaintiffs "desire[d] to challenge the Consent Decree, they [could] attempt to seek relief from the Central District of California . . . and perhaps appeal to the Ninth Circuit."  Resp'ts' Mot. to Dismiss Review for Lack of a Reviewable FAA Order, *Nat'l Bus. Aviation Ass'n, Inc.*, No. 17-1054, Doc. #1663033, at 7.  Despite this admonition, Plaintiffs have avoided taking any direct action in the Central District of California, "the court having jurisdiction over the Consent Decree."  *Nat'l Bus. Aviation Ass'n, Inc.*, 2018 WL 3159150, at *3 (internal quotation marks omitted).  Indeed, while they have spent eighteen months filing claims elsewhere, the City shortened its runway, which is one of the two harms upon which Plaintiffs now base their claim.  Compl. at 3, ¶ 29.  Plaintiffs' assertion that they want meaningful review but that it was not available therefore rings hollow.

Thus, Plaintiffs cannot rely on *Leedom* to seek review in this Court.  *See Nat'l Air Traffic Controllers Ass'n AFL-CIO*, 437 F.3d at 1263.

## II.      The FAA Did Not Act in Excess of Its Delegated Powers.

A plaintiff is also not entitled to review under *Leedom* unless an "agency has acted 'in excess of its delegated powers and contrary to a specific prohibition' which 'is clear and mandatory.'"  *Id.* (internal citations omitted).  Mere disagreement about the scope of an agency's authority is insufficient to permit review.  Rather, "the agency error must be so extreme that one may view it as jurisdictional or nearly so."  *Am. Fed'n of Gov't Emps. v. Sec'y of Air Force*, 716 F.3d 633, 639 n.6 (D.C. Cir. 2013) (internal quotation marks omitted).  Plaintiffs here allege six procedural failings by the FAA when it entered into the Settlement Agreement.  Compl. at 2. Plaintiffs' allegations are fatally flawed because they rely on three faulty legal premises and fail on their face.  Thus, Plaintiffs have failed to allege improper agency action, much less the extreme agency overreaching required to bring a claim under *Leedom*.

A.  Plaintiffs' Claims Rely on Faulty Legal Premises.

Plaintiffs' allegations miss the mark because they baselessly presume that the procedural requirements with which the FAA must comply when releasing property interests in airports outside of litigation apply to the United States's agreeing to be bound by a consent decree to resolve litigation involving disputed rights.  *See* Compl. at 2-3, ¶¶ 21-24.  This unsupported presumption fails for three independent reasons.

Initially, Plaintiffs challenge the Settlement Agreement as though it effected the purported releases of the United States' interests in the Airport Property.  *See id.* at 2-3, 11.  *See also id.* ¶ 21 (alleging that "the FAA and the City entered into a settlement agreement," which

"explicitly released the City from its federal obligations").[6]  The Complaint does not contain a

single reference to the Consent Decree.  *See generally id.*  However, as the D.C. Circuit held, the

Agreement "as distinct from the consent decree . . . produced no legal consequences at all.  To

the contrary, the agreement did not become effective until the decree was entered and, absent

that decree, the agreement would have been 'of no force and effect' whatsoever."  *Nat'l Bus.*

*Aviation Ass'n, Inc.*, 2018 WL 3159150, at *2 (internal record citations omitted).  The

Agreement therefore need not comply with the procedural requirements for releasing property

interests because it did not release anything.  Rather, any release of property interests was

through the Consent Decree entered by the Central District of California, and that court is not

subject to the purported procedural requirements Plaintiffs allege govern the Agreement.

    Next, Plaintiffs assume that the FAA's procedural requirements for releasing a property

interest in an airport through administrative action also apply to the Federal Government's

entering into the Settlement Agreement.  *See* Compl. at 2-3 (alleging failure to comply with

statutes governing administrative actions by the FAA).  This assumption is faulty because FAA

procedures are not applicable to the Department of Justice's settling litigation against the United

States and federal agencies.  Congress vested the Attorney General, acting through the officers of

the Department of Justice, with plenary authority to conduct and supervise litigation in which

federal agencies are parties.  28 U.S.C. §§ 516, 519.  This authority "embraces all aspects of

litigation, including settlement."  *Presidential Garden Assocs. v. United States ex rel. Sec'y of*

*Hous. & Urban Dev.*, 175 F.3d 132, 141 n.1 (2d Cir. 1999).  Therefore, the requirements for

FAA administrative order are not directly applicable to the Department of Justice's settling or

---

[6]  Plaintiffs notably omit the United States as a party to the Central District Litigation throughout the Complaint.
*See* Compl. ¶ 21.

moving for entry of a consent decree, even if those actions would have an effect that could be achieved by an FAA order.[7]  *See, e.g.*, *Am. Forest Res. Council v. Ashe*, 946 F. Supp. 2d 1, 26 (D.D.C. 2013) (upholding a consent decree that vacated a part of an agency rule without notice and comment even though the agency would have had to provide notice and comment to vacate the rule itself), *judgment entered* 301 F.R.D. 14 (D.D.C. 2014), *and aff'd* 601 F. App'x 1 (D.C. Cir. 2015).

Finally, Plaintiffs assume that the Federal Government actually released property interests in the Airport through the Settlement Agreement.  *See* Compl. at 2-3.  Whether the United States actually had any property interests to release was the core question at issue in the Central District Litigation.  *See City of Santa Monica*, 650 F. App'x at 327–28.  Likewise, whether the City's grant obligations under its FAA airport improvement grants had already expired was the central dispute in the Ninth Circuit litigation resolved by the Consent Decree. Br. Pet'r City of Santa Monica, *City of Santa Monica*, Dkt. 16, No. 16-72827.  The only way to determine if the United States retained any property interests to release would have been to litigate the Central District Litigation to a final judgment.  However, when evaluating a consent decree, a court should not "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induces consensual settlements."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  *See also United States v. State of Oregon*, 913 F.2d 576, 582 (9th Cir. 1990) ("The reviewing court should not determine contested issues of fact that underlie the dispute.").  It would therefore be improper for this Court

---

[7]  This is not to say that the United States or a federal agency may enter a settlement or consent decree the substance of which violates federal law.  *Nat'l Bus. Aviation Ass'n, Inc.*, 2018 WL 3159150, at *2; *Conservation Nw. v. Sherman*, 715 F.3d 1181, 1187 (9th Cir. 2013).

to accept Plaintiffs' unsupported assumption that the Federal Government had a property interest in the Airport Property that was released by the Settlement Agreement and Consent Decree when the continued existence of such an interest was the key issue contested in the Central District Litigation.

B.  Plaintiffs' Allegations that the Settlement Agreement Did Not Comply with FAA

Even if the six procedural requirements applicable to FAA orders that Plaintiffs invoke could apply to settlements, Plaintiffs fail to show that the Settlement Agreement in this case would violate those requirements.  Each of the six requirements would either be met by the Agreement or, by the requirement's own terms, would not apply to the actions taken under the Agreement.

Plaintiffs first assert that the FAA improperly failed to make a finding that the releases in the Settlement Agreement "were 'necessary to protect or advance the civil aviation interests of the United States.'"  Compl. at 2 (citing 49 U.S.C. §§ 47153(a)(2)).  This disregards the explicit statement in the Agreement that the FAA (along with the other parties) found the Agreement to be "in the interest of the public and civil aviation."  Feldon Decl., Ex. C. at 3.  Indeed, there can be little doubt that the Agreement and resulting Consent Decree were in the interest of civil aviation.  The Consent Decree eliminated litigation risk and obligated the City to operate the Airport until 2028, which is four years more than if the FAA had prevailed in the Ninth Circuit but lost in the Central District Litigation.  By contrast, if the City had prevailed in both cases, it could have immediately closed the Airport without any advance notice.  This closure would throw into disarray the closely interwoven network of civilian air traffic in the already-congested airspace of Southern California, with ripple effects nationwide.  The Consent Decree ensured that the Airport will remain open for at least another decade, albeit with a shorter runway.  The

FAA reasonably deemed this compromise to be necessary to protect the civil aviation interests of the United States.

Plaintiffs second assert that the FAA improperly failed to make a finding that the Airport either no longer served the purpose for which it was conveyed or that the Settlement Agreement would not prevent the Airport from serving that purpose.  Compl. at 2 (citing 49 U.S.C. § 47153(a)(1)).  Again, the Consent Decree specifically ensures that the Airport continues to further its purpose—serving civilian air traffic—for another decade.  The City prevailing in its litigation against the Federal Government, by contrast, would allow the immediate closure of the Airport in its entirely.  The FAA therefore found that compromising a contested property interest in the Airport to avoid major disruption in civilian air traffic in Southern California and beyond was the means by which the Airport could continue to further its overall purpose.  *See* Feldon Decl., Ex. C. at 3.

Plaintiffs third assert that the FAA violated the Airport Noise and Capacity Act by failing to condition the releases in the Settlement Agreement on the City submitting, and the FAA approving, a study of noise and access restrictions.  Compl. at 2 (citing 49 U.S.C. § 47524(c)).  That law, however, governs restrictions on the types of aircraft permitted to use airports based on the amount of noise the aircraft produce.  *See City of Naples Airport Auth. v. FAA*, 409 F.3d 431, 433 (D.C. Cir. 2005).  The Settlement Agreement does not directly restrict the aircraft that can use the Airport.  *See* Feldon Decl., Ex. C at 4-5 (". . . [T]he Airport shall accommodate aircraft operations that can safely take off and land on a runway of the agreed-upon length.").  By its terms, the Act therefore does not apply.

Plaintiffs fourth assert that the FAA violated the National Environmental Policy Act by improperly failing to analyze the environmental consequences of the actions the City could

undertake pursuant to the releases in the Settlement Agreement or, in the alternative, to show that the releases in the Agreement were excluded from such analysis.  Compl. at 2-3 (citing 42 U.S.C. § 4332(2)(C)).  In fact, only "major Federal actions significantly affecting the quality of the human environment" trigger an analysis under that statute, 42 U.S.C. § 4332(C), and "'[m]ajor federal action' does not include action taken by the Department of Justice within the framework of . . . civil or criminal litigation, including but not limited to the submission of consent or settlement agreements," 28 C.F.R. § 61.4.  Moreover, "federal release of airport land" is categorically excluded from the requirement of preparing a formal environmental assessment. *See, e.g.*, FAA Order 5050.4B (2006), Table 6-2, *available at* https://go.usa.gov/xnrZQ.

Plaintiffs fifth assert that the FAA improperly failed to undertake notice and comment for the releases in the Settlement Agreement.  Compl. at 3 (citing 49 U.S.C. §§ 47107(h)(2), 47151(d)(, 47153(a)(1)).  Notice and comment requirements that apply to agency actions in the ordinary course, however, do not necessarily apply to actions required by consent decrees.  *See Am. Forest Res. Council*, 946 F. Supp. 2d at 26 (collecting cases).  The notice and comment requirements invoked, moreover, only apply when obligated property is proposed to be used for non-aeronautical purposes.  Under the Agreement, no parcel of Airport Property was proposed for non-aeronautical uses.  Rather, the City's intended use remained undecided and any future non-aeronautical use would have to be "safe and compatible with the operation of the Airport," and the released portion of the property would remain subject to an avigation easement.  *See* Feldon Decl., Ex. C at 5.  The cited notice and comment requirements were thus not triggered by the Agreement.

Plaintiffs sixth assert that the FAA improperly failed to enforce obligations under federal grants.  Compl. at 3 (citing 49 U.S.C. § 47107(a)).  This allegation is devoid of any specifics on

what grant obligations are at issue or how the FAA purportedly failed to enforce them.  *See id.*

Nonetheless, the Consent Decree requires "[t]he City's operation of the Airport until December

31, 2028 [to] conform with . . . the standards set forth in grant assurances 19, 22, 23, 24, 25, and

30."  Feldon Decl., Ex. C at 7.  *See also id.* at 5, 6.  This language contradicts Plaintiffs'

assertion.  Moreover, this provision actually extends, not releases, the City's grant obligations.

Even if the FAA had prevailed in the Ninth Circuit litigation regarding the grants, the City would

be obligated to meet its grant obligations only until 2024.  *See* Br. Pet'r City of Santa Monica,

*City of Santa Monica*, Dkt. 16, No. 16-72827.  Plaintiffs' final allegation is therefore meritless.

**III.    Federal Law Expressly Precludes Review of Plaintiffs' Claims by this Court.**

Finally, *Leedom* does not provide an avenue for review when Congress has expressly

limited jurisdiction over a claim.  *Nyunt*, 589 F.3d at 449.  *See also Bd. of Governors of the Fed.*

*Reserve Sys. v. MCorp Fin. Inc.*, 502 U.S. 32, 44 (1991).  Plaintiffs could have directly

challenged the Consent Decree in the Central District of California, but they have chosen instead

to seek review of the Settlement Agreement as if it were a FAA order.  *See* Compl. ¶ 3.  It is on

this basis that they challenged the Settlement Agreement under 49 U.S.C. § 46110 in the D.C.

Circuit, and that they bring the same challenges here.  *Id.* ¶¶ 3, 31, 39.  As set forth above, the

Settlement Agreement is not a FAA order, so Plaintiffs' challenges are without merit.  But, if it

were a FAA order, Plaintiffs would not be entitled to invoke this Court's jurisdiction under

*Leedom* because 49 U.S.C. § 46110(a) expressly limits jurisdiction to review FAA orders to

United States courts of appeals.

When it enacted 49 U.S.C. § 46110(a), Congress stripped federal district courts of

jurisdiction to review FAA orders.  That express grant of exclusive jurisdiction "also preclude[s]

district courts from hearing claims that are 'inescapably intertwined' with review of [FAA]

orders." *Merritt v. Shuttle, Inc.*, 245 F.3d 182, 187 (2d Cir. 2001) (Sotomayor, J.).  The D.C. Circuit relied on this jurisdiction in adjudicating Plaintiffs' original challenge to the Settlement Agreement.  *Nat'l Bus. Aviation Ass'n, Inc.*, 2018 WL 3159150, at *1-2.  Although the D.C. Circuit found that Plaintiffs' claim was not reviewable on the merits because the Settlement Agreement was not a final FAA order, that does not mean that this Court can disregard the limitations of 49 U.S.C. § 46110(a) and take it upon itself to engage in the substantive review that the D.C. Circuit found to be improper.  *See id.* at *2.  Even in the rare case where *Leedom* would permit review of non-final FAA orders, only circuit courts would have jurisdiction to conduct that review.  Indeed, without citing to *Leedom*, Plaintiffs invoked the equitable principle underlying it when they asked the D.C. Circuit to review the Settlement Agreement as if it were final to provide Plaintiffs with meaningful review of the Agreement.  *Nat'l Bus. Aviation Ass'n, Inc.*, 2018 WL 3159150, at *3 ("Petitioners invite us nonetheless to deem final the January 30 agreement, lest the FAA escape judicial review through what petitioners describe as 'procedural trickery.'").  The D.C. Circuit declined to disregard the finality requirement for review.  *Id.* Plaintiffs cannot now recycle that argument to seek judicial review in this Court when Congress specifically has deprived district courts of jurisdiction to review FAA orders.

Contrary to Plaintiffs' allegations, the Settlement Agreement is not a FAA order subject to review.  But, if it were, 49 U.S.C. § 46110(a) would preclude that review from occurring in this Court.  This Court therefore does not have jurisdiction under *Leedom* to consider Plaintiffs' claims.  *Nyunt*, 589 F.3d at 449.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint should be dismissed with prejudice for failure to state a claim.

Dated:  September 28, 2018    Respectfully submitted,

             JOSEPH H. HUNT
             Assistant Attorney General

             JACQUELINE COLEMAN SNEAD
             Assistant Branch Director

             /s/ *Gary D. Feldon*
             GARY D. FELDON
             Trial Attorney
             United States Department of Justice
             Civil Division, Federal Programs Branch
             20 Massachusetts Ave. NW, Room 7128
             Washington, D.C. 20530
             Tel: (202) 514-4686
             Fax: (202) 616-8460
             E-mail: gary.d.feldon@usdoj.gov

             *Attorneys for Defendants*