**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

NATIONAL BUSINESS AVIATION ASSOCIATION, INC.,
    1200 G Street N.W., Suite 1100
    Washington, DC 20005

SANTA MONICA AIRPORT ASSOCIATION, INC.,
    3021 Airport Avenue, Suite 210
    Santa Monica, CA 90405

BILL'S AIR CENTER, INC.,
    3147 Donald Douglas Loop South
    Santa Monica, CA 90405

KIM DAVIDSON AVIATION, INC., AND
    2701 Airport Avenue
    Santa Monica, CA 90405

REDGATE PARTNERS, LLC,
    2429 S. Peck Road
    Whittier, CA 90601

        *Plaintiffs,*

v.

DANIEL K. ELWELL, ACTING ADMINISTRATOR, AND
FEDERAL AVIATION ADMINISTRATION
    800 Independence Ave., S.W.
    Washington, DC 20591

        *Defendants.*

Case No. 1:18-CV-1719-RBW

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## Table of Contents

Memorandum of Points and Authorities in Support of Plaintiffs' Opposition to Defendants'
    Motion to Dismiss      1

Background      3

Standard of Review      3

Argument      3

I.   Intervention Would Not Have Given Plaintiffs an Opportunity for Meaningful and
    Adequate Review of the Claims They Assert Here      5

    A.  Plaintiffs Were Not Required to Request Intervention and Objection at the Discretion
        of the Central District      6

    B.  Intervention and Objection at the Discretion of the Central District Would Not
        Constitute Meaningful and Adequate Judicial Review      8

    C.  Intervention and Objection, at the Discretion of the Central District, Likely Would
        Have Been Denied or Restricted      11

II.  FAA Acted in Excess of Its Delegated Powers      14

    A.  Plaintiffs' Claims Rely on Well-Established Legal Premises      15

        1.  The Agreement Is Subject to Challenge      15

        2.  The Agreement Must Comply with Statute      17

        3.  The Agreement Incorporates Releases      20

    B.  The Agreement Facially Does Not Comply with Statutory Requirements      23

        1.  Contrary to Statute, FAA Failed to Demonstrate a Benefit to Aviation      23

        2.  Contrary to Statute, FAA Failed to Demonstrate that the Agreement Is Consistent
            with SMO's Purposes      25

        3.  FAA Failed to Comply with the Airport Noise and Capacity Act      27

        4.  FAA Failed to Comply with the National Environmental Policy Act      30

        5.  Contrary to Statute, FAA Did Not Provide for Public Notice and Comment      32

        6.  Contrary to Statute, FAA Waived SMO's Grant-Based Obligations      34

III. Federal Law Does Not Preclude Review of Plaintiffs' Claims by this Court      36

Conclusion      38

## Table of Authorities

**Cases**

A&B Freight Lines v. FTC, 1980-1 Trade Cases ¶ 63,127, 1980 WL 1787 (D.D.C. 1980)          9

AFL v. NLRB, 308 U.S. 401 (1940)          4

Alaniz v. Tillie Lewis Foods, 572 F.2d 657 (9th Cir. 1978)          12

Allcare Hospice v. Sebelius, 2012 WL 5246512 (E.D.Okla. 2012)          37

American Federation of Government Employees v. FLRA, 453 F.3d 500 (D.C.Cir. 2006)          38

American Forest Resource Council v. Ashe, 946 F.Supp.2d 1 (D.D.C. 2013),
     affirmed on other grounds 601 Fed. Appx. 1 (D.C.Cir. 2015)          19, 33

Anacostia Watershed Society v. Babbitt, 871 F.Supp. 475 (D.D.C. 1994)          31

Ashley v. City of Jackson, 464 U.S. 900 (1983)          7

Association of Flight Attendants-CWA v. Huerta, 785 F.3d 710 (D.C.Cir. 2015)          37

Association of National Advertisers. v. FTC, 627 F.2d 1151 (D.C.Cir. 1979)          38

B&H Medical v. United States, 116 Fed.Cl. 671 (2014)          9

BFI Waste Systems v. FAA, 293 F.3d 527 (D.C.Cir. 2002)          33

*Board of Governors of the Federal Reserve System v. MCorp Financial,
     502 U.S. 32 (1991)          4, 5, 6, 36, 37

Boire v. Greyhound, 376 U.S. 473 (1964)          5

Bombardier v. Labor Department, 145 F.Supp.3d 21 (D.D.C. 2015)          10

Bowen v. Georgetown University Hospital, 488 U.S. 204 (1988)          22

Briscoe v. Levi, 535 F.2d 1259 (D.C.Cir. 1976), vacated and remanded on other grounds,
     432 U.S. 404 (1977)          9

Broadcast Music v. CBS, 441 U.S. 1 (1979)          15

Brookings Municipal Telephone v. FCC, 822 F.2d 1153 (D.C.Cir. 1987)          32

BRRAM v. FAA, 721 Fed. Appx. 173 (3rd Cir. 2018)          31

*CCA of Tennessee v. Perez, 2015 WL 10911364 (D.N.J. 2015)          9

*City of Rochester v. Bond, 603 F.2d 927 (D.C.Cir. 1979)                          2, 30, 37

Clark County v. FAA, 522 F.3d 437 (D.C.Cir. 2008)                                26

*Cleveland County Association v. County Board of Commissioners,
     142 F.3d 468 (D.C.Cir. 1998)                                                6, 18

*Conservation Northwest v. Sherman, 715 F.3d 1181 (9th Cir. 2013)                18, 32

Dart v. U.S., 848 F.2d 217 (D.C.Cir. 1988)                                       14

Davis v. Mineta, 302 F.3d 1104 (10th Cir. 2002)                                  24

Delta Air Lines v. U.S., 490 F.Supp. 907 (N.D.Ga. 1980)                          24

Detroit Newspaper Agency v. Schaub, 108 F.Supp.2d 729 (E.D.Mich. 2000),
     vacated on other grounds 286 F.3d 391 (6th Cir. 2002)                       34

Doe v. Rumsfeld, 341 F.Supp.2d 1 (D.D.C. 2004), remanded on other grounds
     172 Fed. Appx. 327 (D.C.Cir. 2006)                                          22

Doral Bank v. FDIC, 59 F.Supp.3d 358 (D.P.R. 2014)                               37

Dragon v. N.J. Department of Environmental Protection, 965 A.2d 209 (N.J.Super. 2009)   25

*Duluth v. National Indian Gaming Commission, 7 F.Supp.3d 30 (D.D.C. 2013)       17

EEOC v. St. Francis Xavier Parochial School, 117 F.3d 621 (D.C.Cir. 1997)        3

Estep v. Manley Deas Kochalski, 552 Fed. Appx. 502 (6th Cir. 2014)               22

*Executive Business Media v. DOD, 3 F.3d 759 (4th Cir. 1993)                     18, 21

Floyd v. City of New York, 302 F.R.D. 69 (S.D.N.Y. 2014),
     affirmed in part and dismissed in part, 770 F.3d 1051 (2d Cir. 2014)        12

Free Enterprise Fund v. Public Company Accounting Oversight Board, 561 U.S. 477 (2010)   10

*Friends of Richards-Gebaur Airport v. FAA, 251 F.3d 1178 (8th Cir. 2001)        23, 31

*Friends of the East Hampton Airport v. East Hampton, 841 F.3d 133 (2d Cir. 2016)   28, 30

Fund for Animals v. Espy, 814 F.Supp. 142 (D.D.C. 1993)                          31

Idaho v. ICC, 35 F.3d 585 (D.C.Cir. 1994)                                        31

In re American Apparel Shareholder Litigation, 855 F.Supp.2d 1043 (C.D.Cal. 2012)   25

In re Androgel Antitrust Litigation (No. II), 2014 WL 1600331 (N.D.Ga. 2014)     7

In re Healthback, 226 B.R. 464 (W.D.Okla.Bankr. 1998),
    vacated without opinion 1999 WL 35012949 (W.D.Okla.Bankr. 1999)    9

In re Manausa, 2013 WL 12233953 (N.D.Fla. 2013)    11

INS v. St. Cyr, 533 U.S. 289 (2001)    9

Keith v. Volpe, 118 F.3d 1386 (9th Cir. 1997)    19

*Leedom v. Kyne, 358 U.S. 184 (1958)    passim

Local 130, IUERMW v. McCulloch, 345 F.2d 90 (D.C.Cir. 1965)    1

Louisiana-Pacific v. NLRB, 52 F.3d 255, 258 (9th Cir. 1995)    24

Martin v. Wilks, 490 U.S. 755 (1989)    7

Media Access Project v. FCC, 883 F.2d 1063 (D.C.Cir. 1989)    30

Merritt v. Shuttle, 245 F.3d 182 (2d Cir. 2001)    37

*NARUC v. ICC, 41 F.3d 721 (D.C.Cir. 1994)    13, 14

NATCA v. Federal Service Impasses Panel, 437 F.3d 1256 (D.C.Cir. 2006)    5, 10

National Audubon Society v. Watt, 678 F.2d 299 (D.C.Cir. 1982)    18

NBAA v. Huerta, 2018 WL 3159150 (D.C.Cir. 2018)    13, 17, 18, 38

New York v. Reilly, 969 F.2d 1147 (D.C.Cir. 1992)    13

NLRB v. Interstate Dress Carriers, 610 F.2d 99 (3rd Cir. 1979)    13

Nyunt v. Chairman, Broadcasting Board of Governors,
    589 F.3d 445 (D.C.Cir. 2009)    4, 36

O'Donnell v. Bond, 510 F.Supp. 925 (D.D.C. 1981)    37

Officers for Justice v. Civil Service Commission, 688 F.2d 615 (9th Cir. 1982)    21

Orange County v. Air California, 799 F.2d 535 (9th Cir. 1986)    12

*Pacific Maritime Association v. NLRB, 827 F.3d 1203 (9th Cir. 2016)    7, 8

PanAmSat v. FCC, 198 F.3d 890 (D.C.Cir. 1999)    26

Paulin v. George Washington University School of Medicine and Health Sciences,
    878 F.Supp.2d 241 (D.D.C. 2012)    3

Pharmaceutical Research and Manufacturers of America v. HHS,
    43 F.Supp.3d 28 (D.D.C. 2014)                                                           28

Physicians National House Staff Association v. Murphy, 1979 WL 4851 (D.C.Cir. 1979),
    vacated 1979 WL 4854 (D.C.Cir. 1979),
    rehearing en banc 642 F.2d 492 (D.C.Cir. 1980)                                          13

Reuben H. Donnelley Corp. v. FTC, 1977-2 Trade Cases ¶ 61,783, 1977 WL 1514
    (N.D.Ill. 1977), vacated on other grounds 580 F.2d 264 (7th Cir. 1978)                  10

Reuters v. FCC, 781 F.2d 946 (D.C.Cir. 1986)                                            23, 36

Saginaw Chippewa Indian Tribe of Michigan v. NLRB, 838 F.Supp.2d 598 (E.D.Mich. 2011)  10

Santa Monica v. FAA, 631 F.3d 550 (D.C.Cir. 2011)                                           35

Scanwell Laboratories v. Shaffer, 424 F.2d 859 (D.C.Cir. 1970)                              18

Seaboard World Airlines v. Gronouski, 230 F.Supp. 44 (D.D.C. 1964)                          33

Sierra Club v. EPA, 762 F.3d 971 (D.C.Cir. 2014)                                            22

Southeastern Federal Power Customers v. Caldera, 301 F.Supp.2d 26 (D.D.C. 2004),
    reversed on other grounds, 514 F.3d 1316 (D.C.Cir. 2008)                                32

Southern Ohio Coal v. Interior Department, 831 F.Supp. 1324 (S.D.Ohio 1993),
    reversed on other grounds, 20 F.3d 1418 (6th Cir. 1994)                                 13

Sturm, Roger & Co. v. Chao, 300 F.3d 867 (D.C.Cir. 2002)                                 5, 10

Sugar Cane Growers v. Veneman, 289 F.3d 89 (D.C.Cir. 2002                                   33

Treasury Department v. FLRA, 43 F.3d 682 (D.C.Cir. 1994)                                    38

U.S. v. Alex. Brown & Sons, 169 F.R.D. 532 (S.D.N.Y. 1996)                                   7

U.S. v. Blue Lake Power, 215 F.Supp.3d 838 (N.D.Cal. 2016)                                  14

*U.S. v. Carpenter, 526 F.3d 1237 (9th Cir. 2008), on remand 2016 WL 4392810
    (D.Nev. 2016), 2017 WL 4274857 (D.Nev. 2017)                                     19, 20, 21

U.S. v. Oregon, 913 F.2d 576 (9th Cir. 1990)                                                21

U.S. v. South Florida Water Management District, 847 F.Supp. 1567 (S.D.Fla. 1992),
    affirmed and reversed on other grounds, 28 F.3d 1563 (11th Cir. 1994)                   32

U.S. v. United Technologies, 2013 WL 12303363 (D.D.C 2013)                                   9

Verizon Telephone Companies v. FCC, 269 F.3d 1098 (D.C.Cir. 2001)                           22

<u>Vinson v. Washington Gas Light</u>, 321 U.S. 489 (1944)    14

*<u>Washington v. State Department</u>, 318 F.Supp.3d 1247 (W.D.Wash. 2018)    7, 12, 16, 19

<u>Weber v. U.S.</u>, 209 F.3d 756 (D.C.Cir. 2000)    38

<u>Yniguez v. Arizona</u>, 939 F.2d 727 (9th Cir. 1991)    12

**Statutes**

5 U.S.C. § 706    34

12 U.S.C. § 1818    36, 37

42 U.S.C. § 405    37

42 U.S.C. § 4332 (National Environmental Policy Act ("NEPA"))    14, 22, 30, 31, 32

49 U.S.C. § 46110    2, 5, 16, 17, 36, 37, 38

49 U.S.C. § 47107    32, 34, 35

49 U.S.C. § 47151    32

49 U.S.C. § 47153    22, 23, 24, 25, 26, 32

49 U.S.C. § 47524 (Airport Noise and Capacity Act ("ANCA"))    22, 27, 28, 29, 30

Pub. L. 81-311    26

Pub. L. 85-726    23

Pub. L. 103-272    23

**Regulations**

14 C.F.R. § 155.3    23, 26

14 C.F.R. Part 16    35

14 C.F.R. Part 161    29

14 C.F.R. § 161.5    28

14 C.F.R. § 161.305    30

28 C.F.R. § 61.4    32

**Rules**

FRAP 42                                                                                      11

FRCP 12                                                        3, 23, 26, 27, 28, 30, 32, 34

Local Rule 7                                                                                   2

Local Rule 78.1                                                                               2

**Federal Register Notices**

Notice and Approval of Airport Noise and Access Restrictions,
     56 Fed. Reg. 48661 (September 25, 1991)                                             28

**FAA Administrative Decisions**

In the Matter of Revenue Diversion by the City of Los Angeles at Los Angeles International,
     Ontario, Van Nuys and Palmdale Airports, FAA docket no 16-01-96, Record of
     Determination, 1997 WL 35413113 (March 17, 1997)                                   35

In re Santa Monica, FAA docket no. 16-02-08, Director's Determination, 2008 WL 6895776
     (May 27, 2008)                                                                      35

NBAA v. Santa Monica, FAA docket no. 16-14-04, Final Agency Decision,
     2016 WL 9685579 (August 15, 2016)                                                   22

Platinum Aviation v. Bloomington-Normal Airport Authority, FAA docket no. 16-06-09,
     Final Decision and Order, 2007 WL 4854321 (November 28, 2007)                      35

**FAA Administrative Materials**

Airport Compliance Manual, FAA Order 5190.6B (September 30, 2009)              23, 33, 34

Design and Installation Details for Airport Visual Aids, FAA Advisory Circular 150/5340-30J
     (February 12, 2018)                                                                 29

Environmental Impacts: Policies and Procedures, FAA Order 1050.1F (July 16, 2015)       30

National Environmental Policy Act (NEPA) Implementing Instructions for Airport Actions,
     FAA Order 5050.4B (April 28, 2006)                                               30, 31

Standard Operating Procedure (SOP): CATEX Determinations, v. 5.1 (June 2, 2017)         31

Standards of Airport Markings, FAA Advisory Circular 150/5340-1L (September 27, 2013)   29

**Other Administrative Decisions**

Santana v. Bureau of Indian Affairs, 33 IBIA 135, 143, 1999 WL 35793970

(Interior Board of Indian Appeals January 28, 1999)                    31

**Other Administrative Materials**

Authority of the United States to Enter Settlements Limiting the Future Exercise of Executive
    Branch Discretion, 23 Op. OLC 126, 170 (1999)                    18

**Congressional Hearings and Reports**

Pub. L. 81-311, Surplus Airport Property – Disposal – Uses, S.Rep. 81-690,
    1949 U.S.C.C.A.N. 1965 (July 15, 1949)                    26

Hearings before a Subcommittee of the Committee on Expenditures in the Executive
    Departments, House of Representatives, 81st Cong., 1st Sess., on H.R. 2822
    (February 28 and March 28, 1949)                    25

Wendell H. Ford Aviation Investment and Reform Act for the 21st Century,
    H.Rep. 106-513 (March 8, 2000)                    33

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiffs National Business Aviation Association, Inc. ("NBAA"), Santa Monica Airport

Association, Inc., Bill's Air Center, Inc., Kim Davidson Aviation, Inc., and Redgate Partners,

LLC (collectively "Plaintiffs") oppose the motion to dismiss filed by Defendants Daniel K.

Elwell and Federal Aviation Administration (together "Defendants" or "FAA").

This action alleges that FAA acted in violation of multiple statutes in agreeing to release

the City of Santa Monica, California ("City" or "Santa Monica") from federal grant- and deed-

based requirements that the City operate Santa Monica Municipal Airport ("SMO" or "Airport")

in conformity with specified federal obligations.  As Defendants acknowledge, this case does not

directly challenge a consent decree, nor does it comprise a collateral attack thereon.  It was

FAA's entry into a settlement agreement with the City ("Agreement") in the first instance –

whether or not its effectiveness was conditioned on a decree – that was <u>ultra vires</u> and is subject

to challenge.  By entering into that Agreement, the FAA "stepped so plainly beyond the bounds

of [statute], or acted so clearly in defiance of it, as to warrant the immediate intervention of an

equity court."  <u>Local 130, IUERMW v. McCulloch</u>, 345 F.2d 90, 95 (D.C.Cir. 1965).

Federal statutes specifically restrict whether and how FAA can implement releases of

airports' federal obligations.  Defendants do not seriously contest that FAA ignored all of those

statutory mandates in executing the Agreement, nor that the Agreement quickly was made

effective.  Instead, Defendants argue that Plaintiffs do not have the right to maintain this action,

premised on assertions such as that because the Agreement was made conditional on a consent

decree, only that decree may be challenged.  Plaintiffs respectfully disagree.

Under the authority of <u>Leedom v. Kyne</u>, 358 U.S. 184 (1958) and its progeny, Plaintiffs

do have such a right.  Plaintiffs have no other means by which to obtain meaningful and adequate

judicial review.  FAA's actions indisputably are subject to judicial scrutiny, but the normal avenue for review of agency action has been foreclosed in this instance by the D.C. Circuit's determination that the Agreement did not comprise a final action, and thus was immune from review under 49 U.S.C. § 46110.  Defendants' proffered alternative – intervention and objection, subject to the discretion of the U.S. District Court for the Central District of California ("Central District"), to a consent decree to which Plaintiffs were not parties – is no substitute under Leedom jurisprudence.

Although the execution of the Agreement may not have been a <u>final</u> agency action, it was an <u>action</u> taken by FAA, and accordingly is susceptible to <u>Leedom</u>-based scrutiny.  Defendants' argument that there exists some hybrid alternative – a non-final agency action that nevertheless can only be reviewed by a circuit court – is without foundation.  "Actions which are not (or not yet) orders but which are nonetheless reviewable may be raised in the district court."  <u>City of Rochester v. Bond</u>, 603 F.2d 927 (D.C.Cir. 1979).  Additional arguments asserted by Defendants – that neither agency settlements nor consent decrees must comply with statutory mandates, and that there were actually no releases included in the Agreement because the obligations released by FAA had been contested – are likewise groundless and are addressed in detail hereafter.  Lastly, although Defendants perfunctorily argue that the Agreement could be read to be consistent with the governing statutory provisions, it is clear that facially applicable statutory requirements were simply ignored and not complied with by FAA.

Accordingly, and as further set forth in this memorandum, which follows the order of Defendants' arguments, the motion to dismiss should be denied.

Plaintiffs request an oral hearing, pursuant to Local Rules 7(f) and 78.1.

## BACKGROUND

Defendants' Memorandum, at 2-9, summarizes the history of SMO and the disputes between the City and FAA, drawing upon the Complaint and judicially-noticeable information. Except as noted, and to the extent consistent with the factual allegations made in the Complaint, Plaintiffs do not contest the accuracy of Defendants' summary.

## STANDARD OF REVIEW

Defendants moved to dismiss the Complaint on the grounds that it does not state a claim upon which relief may be granted, citing FRCP 12(b)(6).  "[F]or the purposes of ruling on a motion to dismiss, the factual allegations of the complaint <u>must</u> be presumed to be true and liberally construed in favor of the Plaintiff."  <u>Paulin v. George Washington University School of Medicine and Health Sciences</u>, 878 F.Supp.2d 241, 246 (D.D.C. 2012) (emphasis in original).  A court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice."  <u>EEOC v. St. Francis Xavier Parochial School</u>, 117 F.3d 621, 624 (D.C.Cir. 1997).  Plaintiffs submit that the Complaint sets forth allegations of fact and law that state a claim based on <u>Leedom</u>.

## ARGUMENT

The Complaint is predicated on the Supreme Court's decision in <u>Leedom v. Kyne</u>, 358 U.S. 184 (1958), which reasoned that:

> This case, in its posture before us, involves 'unlawful action of the Board (which) has inflicted an injury on the (respondent).'  Does the law, 'apart from the review provisions of the * * * Act,' afford a remedy?  We think the answer surely must be yes.  This suit is not one to 'review,' in the sense of that term as used in the Act, a decision of the Board made within its jurisdiction.  Rather it is one to strike down an order of the Board made in excess of its delegated powers and contrary to a specific prohibition in the Act. … Plainly, this was an attempted exercise of power that had been specifically withheld.  It deprived the professional employees of a 'right' assured to them by Congress.  Surely, in these circumstances, a

3

Federal District Court has jurisdiction of an original suit to prevent deprivation of a right so given.

Id., 188-89, quoting AFL v. NLRB, 308 U.S. 401, 412 (1940).  In other words, even if judicial review is implicitly foreclosed by generally-applicable statutory review provisions, a district court is empowered to strike down agency action if it facially exceeds the agency's delegated powers.  "This Court cannot lightly infer that Congress does not intend judicial protection of rights it confers against agency action taken in excess of delegated powers."  Id., 190.

Subsequently, the Supreme Court and the D.C. Circuit have explicated the requirements for Leedom-based claims.  The Supreme Court has established that Leedom not only requires agency action to facially have exceeded the agency's statutory authority, but also that absent district court scrutiny, the agency's action would "wholly deprive the [plaintiff] of a meaningful and adequate means of vindicating its statutory rights."  Board of Governors of the Federal Reserve System v. MCorp Financial, 502 U.S. 32, 43 (1991).  Specifically, in MCorp the Supreme Court held that the plaintiff had not been deprived of a means of vindicating its rights because if agency proceedings continued – and if the plaintiff was ruled to have violated the regulation at issue – the plaintiff could directly seek judicial review.  Id., 43-44.

Additionally, the Supreme Court and D.C. Circuit have required that under Leedom the statutory preclusion of review by a district court must not be express.  Nyunt v. Chairman, Broadcasting Board of Governors, 589 F.3d 445, 449 (D.C.Cir. 2009), citing MCorp, 502 U.S. at 44.  This factor appears to be rarely invoked, because statutory review provisions seldom include an express prohibition on district court review; and if the prohibition on district court review in a statute is merely implicit – as is the case here – a Leedom-based claim may proceed.

Plaintiffs acknowledge that Leedom-based claims are disfavored.  The Supreme Court cautioned that the pathway it created is "not to be extended to permit plenary district court

review … whenever it can be said that an erroneous assessment of the particular facts before the [agency] has led it to a conclusion which does not comport with the law." Boire v. Greyhound, 376 U.S. 473, 481 (1964). But Plaintiffs respectfully submit that the instant Complaint represents the exceptional case that Leedom was intended to ensure would not escape scrutiny.

As set forth infra: (i) Plaintiffs have no other means by which to obtain "meaningful and adequate" judicial review of the Agreement; the D.C. Circuit found FAA's statutory review provision, 49 U.S.C. § 46110, to be inapplicable, and the alternative Defendants suggest – intervention and objection to the consent decree – would not fulfill the requirements of Leedom; (ii) the statutes cited by Plaintiffs are facially applicable to FAA and the agency made no effort to meet their requirements, and neither the settlement agreement nor the consent decree is exempt from their mandates; and (iii) Section 46110 does not expressly preclude district court review, so Defendants' claim that it prohibits this Court from hearing a challenge to FAA's actions premised on Leedom is groundless.

## I. Intervention Would Not Have Given Plaintiffs an Opportunity for Meaningful and Adequate Review of the Claims They Assert Here

One of the three predicates for Leedom-based jurisprudence is that absent district court scrutiny of its claims, a plaintiff would be "wholly deprive[d]" of a "meaningful and adequate means of vindicating its statutory rights." MCorp, 502 U.S., at 43. The Supreme Court further clarified in MCorp that the only meaningful and adequate remedy is judicial review, id., and the D.C. Circuit since has specified that Leedom requires that for plaintiffs there be "no other means, within their control of obtaining judicial review." Sturm, Ruger & Co. v. Chao, 300 F.3d 867, 874 (D.C.Cir. 2002) (emphasis added). See also NATCA v. Federal Service Impasses Panel, 437 F.3d 1256, 1263 (D.C.Cir. 2006) (quoting Sturm). Defendants concur with this foundation

(Memorandum, at 10), but assert that because Plaintiffs could have sought to intervene and object in the Central District, Plaintiffs had a "viable alternate path."  Defendants are wrong.

### A. Plaintiffs Were Not Required to Request Intervention and Objection at the Discretion of the Central District

The mere existence of a consent decree does not require all claims related to it to be litigated in the issuing court.  To the contrary, the terms of a settlement – even one incorporated into a consent decree – do not bind third parties, and they may vindicate their rights separately. The D.C. Circuit made that clear in <u>Cleveland County Association v. County Board of Commissioners</u>, 142 F.3d 468, 473-74 (D.C.Cir. 1998) ("unless one is joined as a party to an action, one is generally not bound by the result, no matter whether that result is reached voluntarily by the parties or imposed upon them by the court").

Other courts concur.  Notably, the State Department recently entered into a settlement with private defendants, in the Western District of Texas, that would allow the distribution of blueprints for the creation of 3D-printed firearms that the federal government previously had deemed to be prohibited items on the U.S. Munitions List.  Eight states and the District of Columbia subsequently alleged, in the Western District of Washington, that the settlement was <u>ultra vires</u>.  The private defendants asserted that the Western District of Washington could not hear the states' challenge, in light of the settlement.  The court rejected that proposition:

> If, as plaintiffs allege, the federal defendants exceeded their authority in entering into the settlement agreement with the private defendants, they are entitled to file suit … and seek appropriate redress.  If the remedy afforded in this litigation impinges on the federal defendants' ability to perform under their settlement agreement with the private defendants, the latter may have a … claim against the former, but there is no jurisdictional bar to this litigation in the circumstances presented here.  The dismissal of the Texas litigation is not under attack: rather, the States are challenging the adequacy of agency action.

<u>Washington v. State Department</u>, 318 F.Supp.3d 1247, 1256 (W.D.Wash. 2018).[1]

Further, the notion that Plaintiffs can only litigate in the Central District, despite being strangers to the consent decree, implicates due process. As then-Justice Rehnquist explained in a dissent from the denial of certiorari in <u>Ashley v. City of Jackson</u>, 464 U.S. 900, 902 (1983):

> This principle should apply with all the more force to a consent decree, which is little more than a contract between the parties, formalized by the signature of a judge.  The central feature of any consent decree is that it is not an adjudication on the merits.  The decree may be scrutinized by the judge for fairness prior to his approval, but there is no contest or decision on the merits of the issues underlying the lawsuit.  Such a decree binds the signatories, but cannot be used as a shield against all future suits by nonparties seeking to challenge conduct that may or may not be governed by the decree.

Justice Rehnquist's reasoning was subsequently adopted in <u>Martin v. Wilks</u>, 490 U.S. 755, 761-64 (1989), the majority concluding that non-parties are neither bound by consent decrees nor obligated to intervene to vindicate their rights, but retain the right to pursue their own claims. Defendants have cited no contrary authority, and Plaintiffs are not aware of any.

Notwithstanding the Supreme Court's holding in <u>Martin</u>, Defendants suggest that <u>Leedom</u>'s requirements have not been fulfilled if a party fails to intervene in a related proceeding, citing <u>Pacific Maritime Association v. NLRB</u>, 827 F.3d 1203 (9th Cir. 2016) (Memorandum, at 10).  But Defendants fail to acknowledge that <u>Pacific Maritime</u> arose under very different circumstances.  The Ninth Circuit there concluded that <u>Leedom</u> was inapplicable because plaintiffs could have intervened: (i) in an administrative proceeding; (ii) that was actively pending; (iii) had not at that stage considered intervention; and (iv) directly concerned the same matter of law at issue before the court.  <u>Id.</u>, 1211.  In contrast, Defendants here assert that Plaintiffs must have intervened: (i) in a court case; (ii) in which a final judgment was

---

[1] <u>See also</u> <u>In re Androgel Antitrust Litigation (No. II)</u>, 2014 WL 1600331, *8 (N.D.Ga. 2014), <u>U.S. v. Alex. Brown & Sons</u>, 169 F.R.D. 532, n.4 (S.D.N.Y. 1996).

procured before there was any meaningful opportunity to intervene; (iii) in which the same judge previously had denied intervention; and (iv) in which the matter of law before this Court had not been raised at all.  The two situations are not comparable.  The Ninth Circuit clarified that a reason why intervention comprised a "viable alternative path" in Pacific Maritime was consistency with the doctrine of administrative exhaustion, and further noted that even without intervention, the plaintiff could appeal a final order entered in the administrative proceeding.  Id., 1211.  Again, those circumstances are entirely unlike those before this Court.

If anything, Pacific Maritime validates Plaintiffs' claims in this Court.  The opinion was specifically predicated on the presumption that there "will be a final order" of which the plaintiff could later seek judicial review.  Id., 1212 (emphasis in original).  In contrast, in Leedom, "there was no way for the union … to produce a final order of the Board."  Id.  But the Ninth Circuit added that "if the unfair labor practice proceeding did terminate in a settlement" – meaning there would not be a final order for the plaintiff to challenge – "nothing would prevent PMA from then seeking a district court order under Leedom."  Id. (emphasis in original).  In other words, the Ninth Circuit identified almost precisely the circumstances pleaded in the Complaint as those under which a Leedom-based claim should proceed: a challenge to agency action is alleged to be ultra vires, but because that action was implemented via a settlement, there is no final order nor a means for Plaintiffs to procure one to obtain direct judicial review.

## B.  Intervention and Objection at the Discretion of the Central District Would Not Constitute Meaningful and Adequate Judicial Review

Even if Plaintiffs had moved the Central District to, at its discretion, allow them to intervene and object to the consent decree (and even if Plaintiffs were actually allowed to do so – which cannot simply be assumed, as set forth infra in Section I(C)), the requirements of Leedom would not be fulfilled, because that would not be meaningful and adequate judicial review.

Although judicial review is for <u>Leedom</u> purposes the only "meaningful and adequate means of vindicating … statutory rights," <u>MCorp</u>, 502 U.S., at 43, not every appearance before a court automatically fulfills <u>Leedom</u>.  "Even where an appellate remedy is available … the court must still consider whether it is an 'adequate and meaningful' remedy." <u>CCA of Tennessee v. Perez</u>, 2015 WL 10911364, *12 (D.N.J. 2015).  Moreover, intervention and objection, in a third-party proceeding at a court's discretion, looks nothing like what is typically recognized to be an appellate remedy, and/or "judicial review." <u>See, e.g.</u>, <u>INS v. St. Cyr</u>, 533 U.S. 289, 312 and n.35 (2001) ("judicial review" is a "term[] of art" and refers to "full" review of a claim, in contrast to <u>habeas</u> proceedings); <u>B&H Medical v. U.S.</u>, 116 Fed.Cl. 671, 686 (2014) ("'[j]udicial review' contemplates that a court will review a decision issued by another tribunal"); <u>In re Healthback</u>, 226 B.R. 464, 469 (W.D.Okla.Bankr. 1998), <u>vacated without opinion</u> 1999 WL 35012949 (W.D.Okla.Bankr. 1999) ("[j]udicial review of an administrative decision is an adjudicatory process to <u>directly</u> determine the <u>legality</u> of a decision") (emphasis added).

So far as Plaintiffs are aware, no <u>Leedom</u>-based jurisprudence has ever suggested that it is sufficient that a plaintiff's rights could be injected into and incidentally considered in a third-party proceeding.  In contrast, <u>Leedom</u> "jurisdiction … will tend to be found where there is no <u>appellate</u> remedy at all." <u>CCA</u>, 2015 WL 10911364, *9 (emphasis added).  Further, the standard of review regarding a consent decree in the Central District, and for any appeal, would be highly deferential.[2]  Although also limited in scope, the standard applicable in this Court is different,[3] and thus proceedings in the Central District would be no substitute for <u>Leedom</u> purposes. <u>See,</u>

---

[2] <u>See, e.g.</u>, <u>U.S. v. United Technologies</u>, 2013 WL 12303363, *5 (D.D.C 2013) ("the Court makes only a 'narrow' inquiry in to the merits of the consent decree").

[3] <u>See, e.g.</u>, <u>Briscoe v. Levi</u>, 535 F.2d 1259, 1264 (D.C.Cir. 1976) <u>vacated and remanded on other grounds</u>, 432 U.S. 404 (1977).

e.g., A&B Freight Lines v. FTC, 1980-1 Trade Cases ¶ 63,127, 1980 WL 1787, *1 (D.D.C. 1980) (Leedom-based review is appropriate if "the standard of review would alter if the issue were reserved for later appeal"); Saginaw Chippewa Indian Tribe of Michigan v. NLRB, 838 F.Supp.2d 598, 605 (E.D.Mich. 2011) (judicial review would be available in a circuit court on a de novo basis, and thus plaintiff could not invoke Leedom, because it would be "the same standard of review that the Tribe would receive in this Court").

Another court has ruled that a "meaningful and adequate" remedy for Leedom purposes turns on the "statutory mechanism" for judicial review. "[A] plaintiff must always show that the statutory mechanism for appellate review of the challenged agency action is inadequate to protect his rights before he may invoke the Leedom rule." Reuben H. Donnelley Corp. v. FTC, 1977-2 Trade Cases ¶ 61,783, 1977 WL 1514, *2 (N.D.Ill. 1977), vacated on other grounds 580 F.2d 264 (7th Cir. 1978). But intervention and objection in the Central District would not be based upon any statutory mechanism for review of FAA actions.

Although the D.C. Circuit has suggested that Leedom's requirement for "judicial review" might be fulfilled by convoluted means – e.g., if a party refused to comply with an agency regulation and contested the enforcement proceeding that followed – even in such a scenario, that party ultimately would be a defendant in its own right; it would not be a potential intervenor to pre-existing litigation. See, e.g., NATCA, 437 F.3d at 1265; Sturm, 300 F.3d at 874-75. Moreover, this Court, invoking subsequent Supreme Court authority, recently has expressed doubt that convoluted procedures fulfill Leedom's requirements. The opportunity for judicial review must be straightforward. "[A] party lacks meaningful review of its claims" when an agency has structured its "procedures [to] create burdensome barriers to those claims being heard at all." Bombardier v. Labor Department, 145 F.Supp.3d 21, 35 (D.D.C. 2015), citing Free

Enterprise Fund v. Public Company Accounting Oversight Board, 561 U.S. 477, 490-91 (2010) ("[w]e normally do not require plaintiffs to … tak[e] … violative action [to] test[] the validity of the law," and such a course of action is not a "meaningful avenue of relief") (citations omitted).

### C. Intervention and Objection, at the Discretion of the Central District, Likely Would Have Been Denied or Restricted

A Leedom claim cannot be defeated by speculative alternatives. Here, the outcome of a hypothetical effort at intervention in the Central District to challenge the consent decree, which FAA now endorses, would not only be speculative but would be, and was in fact, opposed by FAA when attempted by other parties.

As Defendants acknowledge (Memorandum, at 7), only 48 hours elapsed between FAA and the City's submission of an application for a consent decree and the Central District's issuance thereof. In that brief window, two other parties submitted requests to intervene and object, which were denied despite the significant change in the circumstances of the case. Feldon Dec., Ex. D, at 1.[4]  Unmentioned in its background statement, FAA concurred with the City's opposition to intervention on the grounds that the motions were untimely.[5]  FAA's post hoc change of heart regarding intervention (Memorandum, at 11) does not ring true, nor is it consistent with law.  See, e.g., In re Manausa, 2013 WL 12233953, *3 (N.D.Fla. 2013) (36-hour

---

[4] Defendants' account of prior intervention motions (Memorandum, at 5, 8) is misleading.  The earlier motion of two present Plaintiffs was denied by the Central District on the premise that FAA would adequately represent their interests.  Order Denying Kim Davidson Aviation, Inc. and Bill's Air Center, Inc.'s Motion to Intervene, C.D.Cal. docket no. 13-8046, doc. no. 50 (September 23, 2016).  At that time, there was no basis to dispute that holding – although the Agreement later proved it to be incorrect.  Further, when the City dismissed its petition in the Ninth Circuit, it dismissed an appeal of an agency decision in NBAA's favor; there was no basis for NBAA to object, nor as a prospective intervenor could NBAA prevent the City from dismissing its own petition under FRAP 42(b).

[5] City of Santa Monica's Response to Resident Groups' Notice of Future Emergency Ex Parte Motion for (1) Permission to Intervene; and (2) Objection to Settlement and Consent Decree, C.D.Cal. no. 13-8046, doc. no. 54 (February 1, 2017) ("[i]t is not an efficient use of resources to permit these objectors to intervene for purposes of disputing the settlement"); Statement Regarding Notice of Motion to Intervene, C.D.Cal. no. 13-8046, doc. no. 55 (February 1, 2017) (FAA concurrence with the City's response).

deadline to object to discharge of debtor "was insufficient to satisfy requirements of due process").

Defendants also argue that Plaintiffs could have attempted to intervene and object <u>after</u> the consent decree was issued (Memorandum, at 11), but a district court's discretion to deny or limit intervention is significant if timeliness is at issue.  Defendants suggest that a post-judgment motion automatically would have been timely if filed within 60 days of the consent decree's approval (Memorandum, at 11), but that is not accurate.  In <u>Yniguez v. Arizona</u>, 939 F.2d 727, 734 (9th Cir. 1991), cited by Defendants, the district court actually considered multiple factors, not limited to the appeal window or timeliness, and the Ninth Circuit deferred to its discretion. Simply put, in <u>Yniguez</u> "the filing of a motion to intervene within the … appeal window was not dispositive as to timeliness."  <u>Floyd v. City of New York</u>, 302 F.R.D. 69, 86 (S.D.N.Y. 2014), <u>affirmed in part and dismissed in part</u>, 770 F.3d 1051 (2d Cir. 2014).[6]

Nothing in <u>Leedom</u> or subsequent decisions supports the contention that Plaintiffs were required to make a gesture in the Central District that likely would be futile.  The Western District of Washington, in <u>Washington</u>, rejected a similar contention regarding intervention:

> The conclusion does not follow from the premise.  The reasons the States would likely not have been permitted to intervene in the prior litigation is that they were not necessary parties, they had no right to appear simply because they were interested in its outcome, their claim had nothing to do with the facts or law at issue between the existing parties, and their … objections could be heard and their interests protected in a separate litigation with the federal defendants. … The district court's likely refusal to allow plaintiffs to appear and/or intervene in the Western District of Texas litigation is not relevant to, much less dispositive of, plaintiffs' right to seek relief in this litigation.

318 F.Supp.3d, at 1256.

---

[6] In the other cases relied upon by Defendants, post-judgment intervention was <u>denied</u>.  <u>Orange County v. Air California</u>, 799 F.2d 535, 537 (9th Cir. 1986); <u>Alaniz v. Tillie Lewis Foods</u>, 572 F.2d 657, 659 (9th Cir. 1978).

In any case, even if the chances that the Central District would have allowed Plaintiffs to intervene and object were not zero, speculation does not fulfill the Leedom standard. The D.C. Circuit, in Physicians National House Staff Association v. Murphy, 1979 WL 4851, *11 (D.C.Cir. 1979), noted that the "language in [Leedom] pointing out that for the professional employees in that suit 'there is no other means, within their control,' to protect their rights" contrasted with circumstances under which "the plaintiff would eventually have the opportunity to force the adverse party to seek a [unfair labor practice] order from the Board, at which time the merits of the case could be argued" (emphasis added).[7]  In this case, Plaintiffs have no means by which to "control" or "force" the Central District (or FAA) to allow intervention and objection.[8]

Additionally, even if the Central District at its discretion were to allow Plaintiffs to intervene and object to the consent decree, there is no certainty that Plaintiffs would be allowed to include in their objections that FAA had acted ultra vires. While the D.C. Circuit suggested that Plaintiffs could have done so (Memorandum, at 10, citing NBAA v. Huerta, 2018 WL 3159150, *3 (D.C.Cir. 2018)), it did not imply that to be the only remedy – and its analysis was dicta and incomplete. Unaddressed was that intervenors generally may not introduce issues not briefed by the original parties – including that an agency had exceeded its authority. See, e.g., NARUC v. ICC, 41 F.3d 721, 729 (D.C.Cir. 1994); New York v. Reilly, 969 F.2d 1147, n.11

---

[7] Although the Physicians decision subsequently was vacated (1979 WL 4854 (D.C.Cir. 1979)), and upon en banc review the D.C. Circuit ruled that the agency had not exceeded its statutory powers (642 F.2d 492 (D.C.Cir. 1980)), the court did not question that the plaintiffs lacked any means to "force" judicial review. See also 642 F.2d, at 512 (Wright, Chief Judge, dissenting).

[8] Other courts concur that scenarios in which a plaintiff's arguments might be heard by another court based on factors beyond its control do not satisfy Leedom. See, e.g., NLRB v. Interstate Dress Carriers, 610 F.2d 99, 109 (3rd Cir. 1979); Southern Ohio Coal v. Interior Department, 831 F.Supp. 1324, 1333 (S.D.Ohio 1993), reversed on other grounds, 20 F.3d 1418 (6th Cir. 1994).

(D.C.Cir. 1992).[9]  This rule is not absolute, but it is departed from only in "extraordinary cases," and "[e]ven a cursory reading of our case law makes clear that a party who seeks to challenge an aspect of agency action not questioned by any other petitioner must file a separate petition for review."  NARUC, 41 F.3d at 730.  FAA (and the City) did not alert the Central District that FAA's authority was in doubt in conjunction with the consent decree, and this Court cannot say that it is sufficiently likely that the Central District would allow Plaintiffs to raise that issue, such that even if allowed intervention and objection would comprise a "viable alternative path."[10]

In sum, speculation that Plaintiffs would have been allowed to intervene in the Central District – despite that court, at FAA and the City's urging, having already rejected intervention – and further speculation that Plaintiffs would have been allowed to object to FAA's ultra vires actions should intervention be allowed, does not fulfill the Leedom requirement of a "meaningful and adequate" path to relief for Plaintiffs.  The present action is the only such path.

## II.     FAA Acted in Excess of Its Delegated Powers

The second threshold requirement under Leedom is that an agency have facially exceeded its powers.  See, e.g., Dart v. U.S., 848 F.2d 217, 231 (D.C.Cir. 1988) ("agency action allegedly in excess of authority must not simply involve a dispute over statutory interpretation or challenged findings of fact. ... [T]he invocation of Leedom v. Kyne jurisdiction is extraordinary; to justify such jurisdiction, there must be a specific provision of the Act which, although it is

---

[9] Courts in the Ninth Circuit concur.  See, e.g., U.S. v. Blue Lake Power, 215 F.Supp.3d 838, 844 (N.D.Cal. 2016), quoting Vinson v. Washington Gas Light, 321 U.S. 489, 498 (1944) ("an intervenor is admitted to the proceeding as it stands, and in respect of the pending issues, but is not permitted to enlarge those issues or compel an alteration of the nature of the proceeding").  Indeed, in its brief in Blue Lake Power, the federal government specifically endorsed limits on the issues that the Native American tribe seeking intervention could raise in conjunction with a consent decree.  Plaintiffs' Response to Blue Lake Rancheria's Motion to Intervene, 2016 WL 8839155 (August 17, 2016).

[10] Further, as discussed infra in Section II(B)(4)-(5), Defendants assert that the statutory mandates for NEPA and notice-and-comment are specifically barred from being asserted in connection with a consent decree, which would mean that Plaintiffs could not in the Central District raise all of the ultra vires issues asserted in the Complaint.

clear and mandatory, was nevertheless violated") (citation omitted).   Although the bar set by

<u>Leedom</u> is high, in this case the six sets of statutory requirements cited in the Complaint were all

mandatory and applicable to FAA, and yet FAA made no effort to even nominally comport with

any of them, as set forth further <u>infra</u>.   As a consequence, the Agreement is <u>ultra vires</u>.

### A.  Plaintiffs' Claims Rely on Well-Established Legal Premises

Before turning to statutory mandates, Defendants' Memorandum (at 13-16) asserts three

additional arguments, which allegedly preclude this Court from proceeding any further: (1) that

only the consent decree and not the Agreement is subject to challenge, because the D.C. Circuit

held that the Agreement was not a final agency action; (2) that procedural requirements usually

applicable to FAA are simply irrelevant to the settlement of litigation; and (3) that FAA did not

actually release any obligations of the City.   All of these arguments are faulty, and as set forth

<u>infra</u>, do not in any way impede this Court from acting upon the Complaint.

### 1.  The Agreement Is Subject to Challenge

First, Defendants assert that the Complaint is misdirected, and that Plaintiffs should have

challenged the consent decree rather than the Agreement.[11]   It is not clear if Defendants mean for

this to be a challenge to Plaintiffs' Article III standing, or merely to assert that Plaintiffs do not

state a claim under <u>Leedom</u>.   But in either case, as a matter of law, Plaintiffs were under no

obligation to challenge the consent decree, as set forth <u>supra</u> in Section I(A).   <u>See also</u> <u>Broadcast</u>

<u>Music v. CBS</u>, 441 U.S. 1, 13 (1979) ("a consent judgment, even one entered at the behest of the

[Department of Justice], does not immunize the defendant from liability for actions").

---

[11] Defendants additionally assert that "[t]he Complaint does not contain a single reference to the Consent Decree."
Memorandum, at 14.  Defendants are wrong.  <u>See</u> Complaint, ¶¶ 21, 25, 27, 32, and 33.

Moreover, although Defendants structured the Agreement to condition its effectiveness on the entry of a consent decree, there is no question that the decree was procured in a matter of days, and that the substantive terms agreed to by FAA and the City thus almost immediately entered effect.  Conversely, absent the Agreement, there would have been no consent decree; the Agreement was the foundation of the deal, incorporating all of the key terms, subject only to a consent decree (itself approved with a single sentence of analysis) as a triggering device.  Thus it is entirely appropriate for Plaintiffs to challenge the Agreement directly, to the extent that the FAA's actions embodied in the Agreement were ultra vires.  It was Defendants' decision to authorize the releases, in violation of statutory mandates and as documented in the Agreement – not the subsequent implementation of the releases via a mechanism that they had devised – which violated Plaintiffs' procedural rights and is the root of the harms inflicted on Plaintiffs.

On its face, the Agreement reflects an understanding by FAA that even if the Agreement was not final for purposes of Section 46110 judicial review, the Agreement sets forth the terms and conditions to which FAA had agreed, and would enter into effect without any further FAA action: "this Agreement upon entry of the Consent Decree shall resolve all claims by the Parties."  Feldon Dec., Ex. C, at 4.  Only post hoc do Defendants suggest that the consent decree is the only operative and challengeable document.  Plaintiffs are aware of nothing in Leedom-based jurisprudence – intended to ensure that ultra vires agency actions do not escape review – which holds that the Agreement is beyond this Court's reach.  Defendants have cited no such authority.  See also Washington, 318 F.Supp.3d, at 1256.

Further, the D.C. Circuit rejected Defendants' contention that a ruling upon the validity of the Agreement would not provide any redress to Plaintiffs (and thus that Plaintiffs' lacked Article III standing), because: "There is at least a significant possibility that a decision by this

Court invalidating the January 30 agreement also would unravel the February 1 consent decree, thus redressing any harms flowing from both." NBAA, 2018 WL 3159150, at *2. The D.C. Circuit in that same decision concluded that because the Agreement was not a final FAA action (although there was no question that it was an FAA action), it could not be challenged pursuant to the procedures of 49 U.S.C. § 46110. But the D.C. Circuit was not asked to, nor did it, opine on whether the Agreement was susceptible to a Leedom-based challenge, for which finality is not a requirement (as set forth in greater detail infra in Section III).

This Court recently considered a similar set of circumstances in Duluth v. National Indian Gaming Commission, 7 F.Supp.3d 30 (D.D.C. 2013). The Commission issued a notice to the effect that an agreement between Duluth and a Native American tribe was illegal. On that basis, the U.S. District Court in Minnesota rescinded a consent decree between Duluth and the tribe that was premised on the agreement. Duluth then challenged the validity of the Commission's notice in this Court, and the Commission responded that Duluth lacked standing because redress was lacking. But this Court rejected that contention and held Duluth's claim proper for adjudication; a ruling for Duluth would not automatically restore the status quo, but was "a necessary first step" – providing a basis for the Minnesota court to re-evaluate the decree's validity. Id., 42-43. Although Duluth specifically concerned standing, it also confirms that agency action which is interrelated with a consent decree is not immunized from review by the mere existence of that decree; if the agency action is contrary to law, that issue may be raised independently – in this case via Leedom, because Section 46110 judicial review is foreclosed.

## 2. The Agreement Must Comply with Statute

That the agency action challenged by the Complaint was a settlement agreement – and/or that its entry into effect was made conditional on a consent decree – did not absolve FAA of its obligation to comply with law. The settlement authority of FAA – and any agency – is

constrained by statute, especially if it implicates non-party interests.   Indeed, DOJ itself has

opined that federal statutes deliberately "constrain the exercise of the settlement power in a

manner that is protective of third parties."   Authority of the United States to Enter Settlements

Limiting the Future Exercise of Executive Branch Discretion, 23 Op. OLC 126, 170 (1999).

As the D.C. Circuit has recognized, agencies "may not … opt to act illegally.   When the

bounds of discretion give way to the stricter boundaries of law, administrative discretion gives

way to judicial review."   Scanwell Laboratories v. Shaffer, 424 F.2d 859, 874 (D.C.Cir. 1970).

That includes settlements, both via agencies and via their counsel: "[T]he agreement of Justice

Department officials to the stipulation does not compensate for the Secretary's lack of authority."

National Audubon Society v. Watt, 678 F.2d 299, n.18 (D.C.Cir. 1982).   See also Cleveland

County, 142 F.3d at 478 (invalidating consent decree "because state law prevents the Board from

unilaterally agreeing to any change in its structure or method of election").   In general:

> [I]t is elementary that an agency must adhere to its own rules and regulations.   Ad
> hoc departures from those rules, even to achieve laudable aims, cannot be
> sanctioned, for therein lie the seeds of destruction of the orderliness and
> predictability which are the hallmarks of lawful administrative action.

Reuters v. FCC, 781 F.2d 946, 950-51 (D.C.Cir. 1986) (citations omitted).

Courts in other circuits concur: litigation is not a trap door enabling generally-applicable

statutes to be circumvented.   "[W]e are bound to consider procedural requirements in the context

of an agency's voluntary resolution of litigation … procedural requirements remain relevant in

the context of consent decrees."   Conservation Northwest v. Sherman, 715 F.3d 1181, 1186 (9th

Cir. 2013).[12]   Settlement authority stops "at the walls of illegality."   Executive Business Media v.

---

[12] Elsewhere in their Memorandum, Defendants invoke the D.C. Circuit's discussion of Conservation Northwest, including that court's acknowledgement that the case is binding precedent in the Ninth Circuit.   Id., at 10, citing NBAA, 2018 WL 3159150, *3.   Defendants do not explain why agency settlements in the Ninth Circuit must conform with statutory mandates, but agency settlements should be exempt from compliance in this Court.

DOD, 3 F.3d 759, 762 (4th Cir. 1993).[13]

Defendants cite a single decision of this Court for the supposed proposition that a consent decree need not abide by statutes otherwise applicable to an agency. Memorandum, at 15, citing American Forest Resource Council v. Ashe, 946 F.Supp.2d 1, 26 (D.D.C. 2013), affirmed on other grounds 601 Fed. Appx. 1 (D.C.Cir. 2015).[14] Plaintiffs respectfully submit that Ashe may have been wrongly decided, without the benefit of the authority cited herein. In any case, Ashe – which involved an endangered species rulemaking – should be strictly limited to its specific circumstances, namely: (i) the vacating of agency rulemaking; (ii) with new rulemaking to follow (so there is little if any harm or prejudice); (iii) the only compliance issue being notice-and-comment; and (iv) the overall context being that of a consent decree. Id., 26-27. In contrast, the Complaint before this Court: (i) does not involve rulemaking but rather the release of long-standing federal obligations and imposition of new access restrictions at an airport; (ii) will not be followed by successor proceedings in which Plaintiffs can participate; (iii) implicates multiple statutory mandates, not just notice-and-comment; and (iv) arises in the context of a settlement agreement. Moreover, the Ashe court "stresse[d] the unusual nature of the proposed remedy" (id., 30), stressed that careful scrutiny was required, and – contrary to Defendants' implication – ultimately declined to enter a consent decree.[15] In sum, the atypical circumstances of Ashe

---

[13] See also U.S. v. Carpenter, 526 F.3d 1237, 1242 (9th Cir. 2008), on remand 2016 WL 4392810, *19 (D.Nev. 2016) and 2017 WL 4274857, *2-3 (D.Nev. 2017); Keith v. Volpe, 118 F.3d 1386, 1393 (9th Cir. 1997); Washington, 318 F.Supp.3d at 1256.

[14] Defendants also assert that because the Releases embodied in the Agreement were not effective until the entry of the consent decree, the Agreement was not obligated to comply with statutory mandates. Memorandum, at 14. No authority is cited for this proposition, and Plaintiffs are not aware of any.

[15] "If every lawsuit challenging agency action ended in a consent decree giving a private interest group plaintiff the relief it was seeking, the procedural safeguards of the APA would be eviscerated. The public has an interest in seeing these procedural safeguards enforced." Id., 27.

provides no basis to disregard the well-established and generally-applicable guidance of the D.C.
Circuit and other courts that agency settlements must comply with statutory mandates.[16]

### 3. The Agreement Incorporates Releases

Defendants next argue that this Court need not consider – and they need not defend – the
legality of the releases embodied in the Agreement because those releases do not actually exist.
Memorandum, at 15.  The Agreement did not release the City of any obligations – so FAA's
argument goes – because the City had contended in pending litigation in the Central District and
Ninth Circuit that there were no obligations.  This "reasoning" is circular and nonsensical on its
face.  It is also irrelevant, because the Agreement includes an explicit release:

> The FAA agrees that the Airport Property shall be released from all covenants,
> reservations, restrictions, conditions, exceptions and reservations of rights imposed
> under the [Instrument of Transfer] and the Quitclaim Deed and the grant
> assurances imposed in 1994 upon the effectiveness of this Agreement.

Feldon Dec., Ex. C, at 5.  The same section of the Agreement also provides that: "Upon the
City's request, the FAA shall execute, acknowledge and deliver from time to time any
instruments reasonably necessary requested by the City appropriate to evidence the release of the
Airport Property from all such covenants, reservations, restrictions, conditions, exceptions and
reservations of rights."  Id.  Indeed, the entire Agreement is predicated on it constituting a release
of obligations; it would serve no purpose otherwise.  Even Defendants' Memorandum in this
case concedes that it is judicially noticeable that: "FAA released the Airport Property from all

---

[16] In a footnote, Defendants seemingly concede that an agency may not enter into a settlement or consent decree if
its substance violates federal law.  Memorandum, at n.7.  But the cases cited by Defendants do not provide a basis to
distinguish settlements that violate substantive requirements and settlements that violate procedural requirements;
both must comply with law.  In another footnote (Memorandum, at n.6), Defendants apparently suggest that the
United States is subject to different settlement standards than DOJ or FAA, but provide no authority or explanation.
Contrast Carpenter, 2017 WL 4274857, *3 ("[t]he Department of Justice does not have authority to ignore federal
law in settling quiet title actions against the United States").

rights and restrictions other than those imposed by the decree or by statute." Id., at 7 (emphasis added).  There can be no doubt as to what FAA intended and what the Agreement accomplished.

Defendants additionally argue that this Court cannot resolve any contested issues of fact that underlie their settlement with the City, citing Officers for Justice v. Civil Service Commission, 688 F.2d 615, 625 (9th Cir. 1982) and U.S. v. Oregon, 913 F.2d 576, 582 (9th Cir. 1990).  Memorandum, at 15-16.  But these cases stand for the unremarkable proposition that a court should be deferential in reviewing a consent decree negotiated between parties to litigation. Nothing in either case suggests that if a third party alleges that an agency acted ultra vires in conjunction with a settlement agreement, a court may not consider facts relevant to that claim.

The situation before this Court is similar to that in Executive Business Media, in which the Fourth Circuit held that the federal government could not settle a contract dispute absent compliance with competitive bidding procedures.  In that case, the parties to the settlement argued that the settlement did not, as a matter of fact, amount to a cardinal change and thus that no compliance was required.  The court did not blindly accept this assertion, but instead referred it for further fact-finding.  3 F.3d, at 763-64.  Likewise, in Carpenter, the court was asked to approve a consent decree to settle a title dispute that was premised on a municipality owning a right-of-way over federal lands.  The parties agreed not to dispute its existence, but the court did not blindly accept that proposition – and after fact-finding concluded that the right-of-way did not actually exist and thus that the proposed decree could not be approved.  2016 WL 4392810, at *2 and 2017 WL 4274857, at *2-3.  Thus, there is no prohibition on this Court engaging, as a matter of fact, whether the City was actually released of obligations if, despite the plain language of the Agreement and Defendants' own Memorandum, the issue remains in contention.

That said, at this time the Court need not determine whether obligations were actually released by the Agreement, because the Agreement on its face purported to comprise an FAA release of City obligations.  Neither party admitted to the validity of the other party's arguments (Feldon Dec., Ex. C, at 9), and that was not just FAA's litigating position.  In an adjudicative proceeding, FAA had concluded that the City was grant-obligated until 2023 (Complaint, ¶ 23; NBAA v. Santa Monica, FAA docket no. 16-14-04, Final Agency Decision, 2016 WL 9685579 (August 15, 2016).  "[T]he principles announced in an adjudication cannot be departed from in future adjudications without reason."  Verizon Telephone Companies v. FCC, 269 F.3d 1098, 1109 (D.C.Cir. 2001), quoting Bowen v. Georgetown University Hospital, 488 U.S. 204, 216-17 (1988) (Scalia, J., concurring).  Thus, given FAA's formal position that there were obligations to be released, FAA was required to comply with applicable procedural statutes before it could agree to the releases.  See, e.g., Sierra Club v. EPA, 762 F.3d 971, 982 (D.C.Cir. 2014) (legal dispute between agency and regulated party "does not endow [agency] with authority simply to waive … regulations on an ad hoc basis by rewriting unambiguous statutory terms in order to serve its own bureaucratic policy goals") (citation omitted).  See also Estep v. Manley Deas Kochalski, 552 Fed. Appx. 502, 505 (6th Cir. 2014) (upon motion to dismiss, court need not consider actual purpose of document, but rather whether based on facts alleged, plaintiff's allegations of its purpose are plausible); Doe v. Rumsfeld, 341 F.Supp.2d 1, 9 (D.D.C. 2004), remanded on other grounds 172 Fed. Appx. 327 (D.C.Cir. 2006) ("it is well within this Court's scope of authority to ensure that the agency adheres to its own procedural requirements").

Finally, apart from whether it constituted a release of City obligations, the Agreement was required to comply with the Airport Noise and Capacity Act ("ANCA") and the National Environmental Policy Act ("NEPA").  See infra Section II(B)(3)-(4).  So even if any credence is

given to Defendants' post hoc disavowing of the releases – despite them having been pleaded in the Complaint, having appeared on the face of the Agreement, and having been acknowledged in Defendants' own Memorandum – that argument does not foreclose the Complaint.

## B.  The Agreement Facially Does Not Comply with Statutory Requirements

Defendants assert that even if the statutory procedural requirements cited in the Complaint are generally applicable to settlement agreements, the Agreement either fulfilled them or was exempt from them, based on facts pleaded and noticeable and the language of the statutes. Memorandum, at 16-19.  Defendants are wrong.  The Agreement, and releases embodied therein, neither complied with, nor were exempt from, statutory mandates.   Additionally, some of Defendants' arguments exceed the boundaries of a motion pursuant to FRCP 12(b)(6), because they rely upon allegations of fact not pleaded or noticeable, in the form of post hoc assertions about the justifications for FAA's actions that are not presently before this Court.

## 1.  Contrary to Statute, FAA Failed to Demonstrate a Benefit to Aviation

The Complaint alleges that FAA did not make a decision that the Agreement was "necessary to protect or advance the civil aviation interests of the United States."  Id., ¶ 36.  This allegation – of a facial conflict with a mandate included in FAA's organic statutes (49 U.S.C. § 47153(a)(2)) – states a claim pursuant to FRCP 12(b)(6) and Leedom.[17]

An airport may be released from federal grant and/or deed-based obligations only if the finding required by Section 47153(a)(2) is made by FAA.  See also 14 C.F.R. § 155.3(a)(2).  In practice, this means that a release must generate a "net benefit" to aviation.  Friends of Richards-Gebaur Airport v. FAA, 251 F.3d 1178, 1195 (8th Cir. 2001); Airport Compliance Manual, FAA

---

[17] The powers and responsibilities today codified in Section 47153 were transferred to FAA upon its creation in 1958 by Pub. L. 85-726, § 1402(c), and specifically incorporated into its organic statutes by the recodification of the federal aviation statutes in 1994 by Pub. L. 103-272.

Order      5190.6B,      §§      22.4(a)(3),      22.17(a),      22.27(d)      (September      30,      2009)
(https://www.faa.gov/airports/resources/publications/orders/compliance_5190_6/media/5190_6b.
pdf).  In this case, this requirement facially was not met; the Agreement provides no analysis nor
explanation of how Section 47153(a)(2) was fulfilled.

Defendants initially point to a boilerplate statement in the Agreement to the effect that the
Parties agreed that it was "in the interest of the public and civil aviation."  Memorandum, at 16,
citing Feldon Dec., Ex. C, at 3.  But this single sentence is devoid of any analysis or explanation.
The Agreement is silent as to how aviation benefits from the immediate truncation of the SMO
runway, or from SMO's subsequent closure.  No authority is cited by FAA, but the agency is on
notice that "[m]ere recitation that" agency action "is in the public interest gives the court no basis
by which to judge the FAA's action."  Delta Air Lines v. U.S., 490 F.Supp. 907, 916 (N.D.Ga.
1980).  Likewise, "the public interest … must yield to the obligation [of] … compliance with the
relevant … laws."  Davis v. Mineta, 302 F.3d 1104, 1116 (10th Cir. 2002).  Nor is there any
explanation of how a mere agreed-to statement between the City and FAA in the Agreement
fulfills FAA's obligation to reach a decision.  Agency findings must be supported by substantial
evidence.  See, e.g., Louisiana-Pacific v. NLRB, 52 F.3d 255, 258 (9th Cir. 1995).

Congress expected that fulfilling this statutory requirement would require more than
boilerplate.  When its predecessor was under debate, a Congressman inquired about a similar
scenario – and an attorney for FAA's ancestor testified that a release would not be easily granted:

> Rep. George Sadowski: "[S]uppose the municipality finds it has an airport on its
> hands that is costing some money to keep up, they do not feel that they want to
> keep it up any further, and they would like to use it for a playground or a park, or
> some other municipal purpose, and they would like to be released from any
> obligation as far as that land is concerned from maintaining it for airport purposes,
> could the Administrator of the CAA convey this airport over to the city for other
> purposes than airport purposes?"

Aubrey Edey, Jr., CAA: "No; they could not, unless he made a determination that there was absolutely no need for that airport to continue in operation as an airport. … I cannot imagine an Administrator of the CAA, who is interested in the furtherance of civil aviation, ever approving such a transaction unless there was absolutely no need for the airport in civil aeronautics."

Hearings before a Subcommittee of the Committee on Expenditures in the Executive Departments on H.R. 2822, 81st Cong., 1st Sess., at 40 (March 28, 1949).

FAA, through guidance letters from senior officials, routinely has interpreted the statute to mean that the closure of an airport seldom will be deemed beneficial to aviation, and that detailed analysis and explanation – not boilerplate – is mandatory. "FAA has rarely acted on an application to allow for the closure of an airport and then only in the highly unusual circumstance where the closing provides a benefit to civil aviation." Letter from Catherine Lang, FAA Acting Associate Administrator for Airports, to Shawn Schroeder, Acting Director of Aviation, Springfield-Branson National Airport, Release of Air Park South Airport, Ozark, Missouri, at 2 (May 23, 2011), Silversmith Dec., Ex. B, at 4.[18]

Defendants belatedly attempt to rationalize the Agreement by invoking the risk of a loss in the litigation previously in progress in the Ninth Circuit and the Central District regarding the City's grant- and deed-based obligations. Memorandum, at 16. But risk is a factor in any litigation, and does not provide a basis for FAA to ignore Section 47153(a)(2) and to fail to identify in the Agreement the supposed benefits of the settlement for aviation. As set forth supra in Section II(A)(2), an agency's desire to settle litigation does not excuse it from statutory compliance. See also Dragon v. N.J. Department of Environmental Protection, 965 A.2d 209, 217 (N.J.Super. 2009). Moreover, this argument has no basis in the text of the Agreement, and

---

[18] Judicial notice may be taken of agency responses to FOIA requests. See, e.g., In re American Apparel Shareholder Litigation, 855 F.Supp.2d 1043, 1064 (C.D.Cal. 2012). Plaintiffs request that judicial notice be taken of this and other documents cited herein that have been made available by FAA pursuant to FOIA, and which set forth FAA's own interpretations of statutes at issue.

even apart from the limits of FRCP 12(b)(6), it is well-established that gaps in FAA's reasoning cannot be backfilled by post hoc justifications.   Clark County v. FAA, 522 F.3d 437, n.1 (D.C.Cir. 2008), quoting PanAmSat v. FCC, 198 F.3d 890, 897 (D.C.Cir. 1999) ("we do not ordinarily consider agency reasoning that appears nowhere in the agency's order").

**2. Contrary to Statute, FAA Failed to Demonstrate that the Agreement Is Consistent with SMO's Purposes**

The Complaint alleges that FAA did not make a finding in the Agreement that SMO no longer serves the purpose for which it was conveyed, or that the release of obligations therein would not prevent SMO from carrying out the purposes for which SMO was conveyed.  Id., ¶ 36. This allegation – of a facial conflict with a mandate included in FAA's organic statutes (49 U.S.C. § 47153(a)(1)) – states a claim pursuant to FRCP 12(b)(6) and Leedom.

In addition to the "net benefit" requirement set forth supra in Section II(B)(1), another sub-section of the same statute imposes a second mandatory predicate for the release of airport obligations.  Section 47153(a)(1) provides for a waiver of airport obligations only if:

> (A) the property no longer serves the purpose for which it was conveyed; or (B) the waiver will not prevent carrying out the purpose for which the conveyance was made and is necessary to advance the civil aviation interests of the United States.

This requirement is long-established, originating in 1949 (Pub. L. 81-311), and subsequently was incorporated into FAA's organic statutes.  See also 14 C.F.R. § 155.3(a).  Indeed, its legislative history shows that it is to be interpreted strictly; a release is allowable only if "properties can no longer serve any useful airport purpose."  Pub. L. 81-311, Surplus Airport Property – Disposal – Uses, S.Rep. 81-690, 1949 U.S.C.C.A.N. 1965, 1967 (July 15, 1949) (emphasis added).

Senior FAA officials have emphasized that a net benefit to civil aviation, standing alone, is statutorily inadequate to justify the release of an airport's obligations.  The requirements of Section 47153(a)(1) also must be "clearly" shown – not just asserted – to have been fulfilled:

[B]efore agreeing to close an airport, the FAA would have to <u>clearly determine</u> that the airport no longer serves the purpose for which it was created, the closure would not prevent achievement of the purpose for which the airport was first created, and the loss of the airport will actually protect and advance the civil aviation interests of the United States.

<u>Letter from Catherine Lang, FAA Acting Associate Administrator for Airports, to Harvey Hall, Mayor of Bakersfield, California, Bakersfield Municipal Airport, California: Response to Request for Closure</u>, at 2 (September 8, 2006), Silversmith Dec., Ex. B, at 9 (emphasis added). The Agreement's agreed-to language is not an FAA determination nor a permissible substitute.

Defendants do not seriously dispute that the Agreement fails to address this requirement. The explicit purpose of the post-World War II conveyance of SMO was for it to be "used for public airport purposes and for the use and benefit of the public."  Feldon Dec., Ex. A, at 4. Defendants' Memorandum, at 17, invokes the same boilerplate "public interest" language of the Agreement discussed in Section II(B)(2) to justify the releases, along with the certain existence of a remnant of the airport through 2028.  But even if that language could be construed to fulfill the requirements of 49 U.S.C. § 47153(a)(2), it simply does not address the different, more focused analysis and standard mandated by 49 U.S.C § 47153(a)(1).  FAA does not dispute that SMO has continued to serve the purpose for which it was conveyed, and does not – and cannot – explain how its truncation and closure will not prevent SMO from carrying out that purpose. Nor, as set forth <u>supra</u> in Section II(B)(2), can FAA rely on rationales that are both <u>post hoc</u> and not cognizable by this Court upon an FRCP 12(b)(6) motion.

### 3.  FAA Failed to Comply with the Airport Noise and Capacity Act

The Complaint alleges that FAA did not require that the City submit, and did not thereafter itself approve, a study of the noise and access restrictions embodied in the Agreement. <u>Id.</u>, ¶ 36.  This allegation – of a facial conflict with a mandate included in ANCA (49 U.S.C. §

47524(c)), which is part of FAA's organic statutes – states a claim pursuant to FRCP 12(b)(6) and Leedom.

Defendants assert that ANCA governs restrictions on the aircraft that are permitted to use airports based only on the noise they emit, and only governs direct restrictions, and thus that the Agreement is exempt from ANCA. Memorandum, at 17.  These assertions are inconsistent with the plain language of the statute, as well as with FAA's own determinations.

ANCA was adopted by Congress in 1990 to strictly limit the adoption of airport noise and other access restrictions that would interfere with the national air transportation system.  In FAA's own words, ANCA "contemplates a broad review of such restrictions."  Notice and Approval of Airport Noise and Access Restrictions, 56 Fed. Reg. 48661, 48664 (September 25, 1991).  See also 14 C.F.R. § 161.5 (defining "noise or access restrictions" to include "a limit, direct or indirect" on aircraft operations); Letter from Nicholas Garaufis, FAA Chief Counsel, to David Chapman, Attorney, Port of San Diego, at 2 (August 8, 2000) ("[a]s defined under 14 C.F.R. 161.5, airport noise and access restrictions include those that directly or indirectly limit numbers or hours of operation") (https://www.faa.gov/airports/environmental/airport_noise/part_161/media/San_Diego_8_8_00.pdf).[19]  Thus, the Agreement embodies restrictions within the broad scope of those that ANCA was intended to prevent – access restrictions not studied or approved by FAA.  "ANCA's procedural requirements for local restrictions on airport access apply to all public airport proprietors."  Friends of the East Hampton Airport v. East Hampton, 841 F.3d 133, 147 (2d Cir. 2016) (emphasis added).

---

[19] "Courts in this jurisdiction have frequently taken judicial notice of information posted on official public websites of government agencies."  Pharmaceutical Research and Manufacturers of America v. HHS, 43 F.Supp.3d 28, 33 (D.D.C. 2014).  Plaintiffs request that judicial notice be taken of this and other documents cited herein that have been made available online by FAA, and which set forth FAA's own interpretations of statutes at issue.

Defendants' arguments before this Court directly contradict guidance about the meaning of ANCA that FAA previously provided to Santa Monica.  In 2003, FAA specifically warned that the shortening of the SMO runway would be "an artificial restriction on access to the airport … subject to compliance with" ANCA.  "[A] proposal to implement the restriction would require compliance with the review and approval process set forth in 14 C.F.R. part 161, the agency regulations implementing ANCA."  Letter from David L. Bennett, FAA Director of Airport Safety and Standards, to Robert Trimborn, Airport Manager, Santa Monica Airport, at 4 (October 15, 2003) (https://www.regulations.gov/document?D=FAA-2003-15807-0148, Exhibit DD).[20]

Nevertheless, Defendants post hoc assert that the Agreement was exempt from ANCA because ANCA does not apply to physical airport reconfigurations that have the indirect effect of preventing aircraft from safely operating at an airport.  No authority is cited for this proposition, and it too is at odds with the statutory text (49 U.S.C. § 47524(c)(1)(E)).  At SMO, it is the reduction in runway length itself that is the intended and impermissible denial of access.  If accepted, FAA's argument would eliminate virtually any obligation to comply with ANCA, provided that airports implemented restrictions through physical changes, yet allowed some aircraft to continue to operate.  That is not the law.  That a restriction is physical and not total does not exempt it from ANCA; it is still within ANCA's scope, and must be vetted.  Indeed, FAA has no record of ever asserting such an exemption to ANCA.  Letter from Winsome

---

[20] FAA's letter concerned proposed displaced thresholds – runway modifications to limit the distance available for landing.  Displaced thresholds require physical modifications – including restriping and the relocation of lights.  Standards of Airport Markings, FAA Advisory Circular 150/5340-1L, § 2.9 (September 27, 2013) (https://www.faa.gov/documentLibrary/media/Advisory_Circular/150_5340_1l.pdf); Design and Installation Details for Airport Visual Aids, FAA Advisory Circular 150/5340-30J (February 12, 2018) (https://www.faa.gov/documentLibrary/media/Advisory_Circular/150-5340-30J.pdf).   In practice, they are indistinguishable from measures that to date have been implemented by the City to truncate the SMO runway.

Lenfert, Acting Associate Administrator for Airports, to Jol Silversmith (August 3, 2017), Silversmith Dec., Ex. A.  "[T]he plain statutory text is fairly read to mandate … procedures for the enactment of local noise and access restrictions."  Friends of the East Hampton Airport, 841 F.3d 133, at 151.  Nor is there any exemption from ANCA based on exactly how restrictions are procured (e.g., in this case via an agreement with FAA), nor is there any provision for FAA to waive ANCA's requirements.

### 4.   FAA Failed to Comply with the National Environmental Policy Act

The Complaint alleges that FAA did not assess the environmental impacts of the City actions authorized by the Agreement, such as the shift to other airports of air traffic that can no longer be accommodated at SMO, or make any showing that those actions and impacts were categorically excluded from environmental analysis.  Id., ¶ 36.  This allegation – of a facial conflict with the mandates of NEPA (42 U.S.C. § 4332(2)(C)), as incorporated into FAA's organic statutes,[21] states a claim pursuant to FRCP 12(b)(6) and Leedom.

Defendants' ultimate argument is that a release of airport land is categorically excluded from the requirement for NEPA environmental assessment.  Memorandum, at 18, citing National Environmental Policy Act (NEPA) Implementing Instructions for Airport Actions, FAA Order 5050.4B, Table 6-2 (April 28, 2006).  But FAA misrepresents the requirements for a categorical exclusion.  It is not automatic; FAA must specifically document that it is applicable.  FAA does not dispute that in this case, there was no documentation of a categorical exclusion.[22]

---

[21] Claims implicating FAA's compliance with NEPA arise under FAA's organic statutes.  Media Access Project v. FCC, 883 F.2d 1063, 1067 (D.C.Cir. 1989), citing City of Rochester v. Bond, 603 F.2d 927, 931 (D.C.Cir. 1979).

[22] Additionally, FAA actions under ANCA may be categorically exempt from NEPA only if they do "not have the potential to significantly increase noise … at other airports to which restricted aircraft may divert" – and again, the exemption is not automatic.  Environmental Impacts: Policies and Procedures, FAA Order 1050.1F, § 5-6.1(u) (https://www.faa.gov/documentLibrary/media/Order/FAA_Order_1050_1F.pdf).  See also 14 C.F.R. § 161.305(c); infra Section II(B)(4).

In 2006, FAA specifically warned the City that "any FAA decision required for a change to the runway environment at SMO will require environmental review" (emphasis added).  Letter from David L. Bennett, FAA Director of Airport Safety and Standards, to Robert Trimborn, Airport Manager, Santa Monica Airport, at 3 (January 20, 2006) (https://www.regulations.gov/document?D=FAA-2003-15807-0148, Exhibit T).

FAA also routinely has confirmed that a categorical exclusion must be documented.  See, e.g., FAA, Standard Operating Procedure (SOP): CATEX Determinations, v. 5.1, § 2 (June 2, 2017)  (https://www.faa.gov/airports/resources/sops/media/arp-SOP-510-catex.pdf) (mandate to "appropriately document a CATEX for actions by the FAA Airports Division").  See also BRRAM v. FAA, 723 Fed. Appx. 173, 175 (3rd Cir. 2018) ("[b]efore an agency can conclude that its action is categorically excluded, the agency must consider whether any of its delineated extraordinary circumstances apply"); Friends of Richards-Gebaur Airport, 251 F.3d at 1184; Letter from Robert Lee, FAA Airports Compliance Specialist, to Sherry Miller, Airport Manager, Lake Tahoe Airport, Information on Airport Closure: South Lake Tahoe Airport, at 3 (April 27, 2014), Silversmith Dec., Ex. B, at 20 ("FAA must determine if FAA Order 5050.4B … requires an environmental review procedure").[23]

Moreover, the rationale for an exclusion must be contemporaneous – not post hoc.  Fund for Animals v. Espy, 814 F.Supp. 142, 151 (D.D.C. 1993) ("[i]nvocation of the categorical exclusion for the first time by counsel after the complaint was filed in this case appears to be a post hoc rationalization, and is inadequate as a basis for review"); Anacostia Watershed Society v. Babbitt, 871 F.Supp. 475, 481 (D.D.C. 1994) (citing Fund for Animals).  See generally

---

[23] Nor can NEPA compliance be delegated or waived.  Idaho v. ICC, 35 F.3d 585, 595 (D.C.Cir. 1994); Santana v. Bureau of Indian Affairs, 33 IBIA 135, 143, 1999 WL 35793970 (Board of Indian Appeals January 28, 1999).

Brookings Municipal Telephone v. FCC, 822 F.2d 1153, 1165 (D.C.Cir. 1987) ("[p]ost hoc rationalizations advanced to remedy inadequacies in the agency's record … are bootless").

In the alternative, Defendants make a further post hoc argument: that because a consent decree is not defined to be a major federal action within the scope of NEPA, NEPA is inapplicable.  Memorandum, at 18, citing 28 C.F.R. § 61.4.  But the matter before the Court is whether FAA, in the Agreement, could approve the releases absent compliance with NEPA.  DOJ's subsequent actions and litigation tactics are not at issue; Section 61.4 was not intended to apply to DOJ acting as counsel for another agency or to immunize the underlying agency from compliance with NEPA.  U.S. v. South Florida Water Management District, 847 F.Supp. 1567, n.8 (S.D.Fla. 1992), affirmed and reversed on other grounds, 28 F.3d 1563 (11th Cir. 1994).  See also Conservation Northwest, 715 F.3d at 1187 ("a district court abuses its discretion when it enters a consent decree that permanently and substantially amends an agency rule that would otherwise have been subject to statutory rulemaking procedures"); Southeastern Federal Power Customers v. Caldera, 301 F.Supp.2d 26, 33 (D.D.C. 2004), reversed on other grounds, 514 F.3d 1316 (D.C.Cir. 2008) (evaluating NEPA compliance separate from settlement).

**5.   Contrary to Statute, FAA Did Not Provide for Public Notice and Comment**

The Complaint alleges that FAA failed to provide for public notice of and comment on the Agreement.  Id., ¶ 36.  This allegation – of a facial conflict with mandates for the release of airport obligations that are included in FAA's organic statutes (49 U.S.C. §§ 47107(h), 47151(d), 47153(c)) – states a claim pursuant to FRCP 12(b)(6) and Leedom.

FAA is required by 49 U.S.C. § 47107(h) to publish any modification of grant-based airport obligations, and to solicit public comment, before it can become effective.  A similar requirement applies to the modification of deed-based airport obligations, under 49 U.S.C. §§ 47151(d) and 47153(c).  Congress specified that these requirements "are effective for any

waiver issued on or after the date of enactment." <u>Wendell H. Ford Aviation Investment and Reform Act for the 21st Century</u>, H.Rep. 106-513, at 157 (March 8, 2000) (emphasis added).

Defendants do not dispute that there was no public notice and comment; they instead assert that the statutes are inapplicable because the Agreement does not "propose[]" to use the released property for non-aeronautical purposes. Memorandum, at 18. But that misstates the law. The requirement for public engagement does not turn on when/if released property may be put to non-aeronautical use. The City now has unfettered discretion to close SMO and use it for non-aeronautical purposes after 2028; and certain property no longer required for aeronautical purposes because of the truncation of the runway may be repurposed immediately. Feldon Dec., Ex. C, at 4. That is a significant and obvious modification to the City's obligations. FAA's failure to provide for notice and comment before agreeing to that change was facially illegal.

FAA itself has emphasized that, based on statute, to effect a release of airport obligations "notice <u>must</u> be published in the Federal Register to afford the public an opportunity to comment." <u>Letter from Robert Lee</u>, at 3 (emphasis added), Silversmith Dec., Ex. B, at 20. <u>See also</u> FAA Order 5190.6B §§ 22.22(d), 22.31(e)-(f). Further, under standards set forth by the D.C. Circuit, "an utter failure to comply with notice and comment cannot be considered harmless if there is any uncertainty at all as to the effect." <u>Sugar Cane Growers v. Veneman</u>, 289 F.3d 89, 96 (D.C.Cir. 2002). If given the opportunity, there is no doubt that Plaintiffs (and others) would have objected to the releases, disputing that runway truncation and SMO's eventual closure were in the public interest – or even a reasonable compromise. <u>See also</u> <u>Seaboard World Airlines v. Gronouski</u>, 230 F.Supp. 44, 47 (D.D.C. 1964) ("plaintiff does have a right … to certain procedural safeguards before the [agency] can effect a new policy"); <u>BFI Waste Systems v. FAA</u>, 293 F.3d 527, 533 (D.C.Cir. 2002) ("FAA's unexplained failure to solicit comments …

was arbitrary and capricious"); <u>Detroit Newspaper Agency v. Schaub</u>, 108 F.Supp.2d 729, 735 (E.D.Mich. 2000), vacated on other grounds 286 F.3d 391 (6th Cir. 2002) (<u>Leedom</u> shields "right to be free from explicitly unlawful agency action"); 5 U.S.C. § 706(2)(D).[24]

### 6. Contrary to Statute, FAA Waived SMO's Grant-Based Obligations

The Complaint alleges that FAA waived the enforcement of obligations attached to federal grants that FAA, by its own admission, has a non-discretionary obligation to enforce. <u>Id.</u>, ¶ 36. This allegation – of a facial conflict with mandates of FAA's organic statutes (49 U.S.C. § 47107(a)) – states a claim pursuant to FRCP 12(b)(6) and <u>Leedom</u>.

The Agreement releases the City from <u>all</u> of its existing obligations vis-à-vis SMO. The Agreement imposes new obligations – but they are very limited in scope, requiring the City to comply with only six of the 39 assurances upon which FAA, pursuant to statute, conditions grants to airports (FAA Order 5190.6B, § 4.6(g)(1) and Table 4.1) – and there is no provision for substituting lesser alternatives to the required assurances.

Defendants argue only that the Agreement actually enhances the City's obligations, because it expires in 2028, and the City's grant-based obligations at latest expire in 2023. Memorandum, at 19. But that argument ignores: (i) the thirty-three other assurances from which SMO is now exempt, and (ii) FAA's prior position that the City had <u>perpetual</u> deed-based obligations (similar to the grant-based assurances – FAA Order 5190.6B, § 1.8), so the full slate of obligations would <u>not</u> have expired in either 2023 or in 2028. Moreover, the Agreement's waiver of most of the City's grant-based obligations cannot be spun to be beneficial on a motion to dismiss; there is no basis for FAA's argument of benefits in the pleaded or noticeable facts.

---

[24] Defendants also invoke <u>Ashe</u>, which – as set forth <u>supra</u> in Section II(A)(2) – does not provide a general sanction for agencies to ignore notice and comment requirements.

Nor are the implications of the omission of 85% of the assurances from the Agreement amenable to review at this time. And the argument that the waiver is beneficial is also entirely <u>post hoc</u>.

In any case, FAA previously has interpreted Section 47107(a) to prohibit <u>any</u> waiver of grant-based airport obligations. In 2008 – in a proceeding in which it rejected the City's efforts to, by local ordinance, prohibit operations at SMO by larger jets, FAA acknowledged its statutory obligation to enforce the conditions of the grants that the City had accepted:

- "<u>FAA may not by agreement waive its statutory enforcement jurisdiction</u> over future cases."

- "FAA is the Federal agency assigned responsibility by Congress for enforcing the statutory safety and AIP grant obligations ... <u>FAA did not and could not abdicate that responsibility</u> by signing an agreement with Santa Monica that settled existing litigation."

- "Just as the FAA cannot agree to waive its statutory enforcement jurisdiction, <u>the agency cannot, and did not, agree to a waiver by a Federally obligated airport of its statutory obligations under the grant assurances</u>."

<u>In re Santa Monica</u>, FAA docket no. 16-02-08, Director's Determination, 2008 WL 6895776, *26-27 (May 27, 2008) (emphasis added), <u>affirmed</u> <u>Santa Monica v. FAA</u>, 631 F.3d 550 (D.C.Cir. 2011). <u>See also</u> <u>Platinum Aviation and Platinum Jet Center BMI v. Bloomington-Normal Airport Authority, Illinois</u>, FAA docket no. 16-06-09, Final Decision, 2007 WL 4854321, *15 (November 28, 2007) ("FAA can neither bargain away the rights of access [to airport facilities] nor waive the grant assurances of the Respondent [airport]. <u>FAA is required to enforce the federal statutes</u> to protect the federal interest in the Airport") (emphasis added).

Indeed, this principle has been set forth in virtually every airport compliance decision issued under Part 16 of FAA's regulations since it was established more than two decades ago. <u>See, e.g.</u>, <u>In the Matter of Revenue Diversion by the City of Los Angeles at Los Angeles International, Ontario, Van Nuys and Palmdale Airports</u>, FAA docket no 16-01-96, Record of Determination, 1997 WL 35413113, *10 (March 17, 1997) ("FAA has a statutory mandate to ensure that airport owners comply with these sponsor assurances"). In this case, "[t]he agency

has, in effect, said that … the circumstances at hand warrant [its] walking away from the metes and bounds which otherwise constrain it.  This we cannot sanction."  <u>Reuters</u>, 781 F.2d at 951.

## III.  Federal Law Does Not Preclude Review of Plaintiffs' Claims by this Court

Defendants' final argument is that a third predicate for <u>Leedom</u>-based jurisprudence precludes this Court from acting upon the Complaint.   Citing <u>Nyunt</u>, 589 F.3d at 449, and <u>MCorp</u>, 502 U.S. at 44, Defendants assert that 49 U.S.C. § 46110 expressly prohibits this Court from exercising jurisdiction over a <u>Leedom</u>-based challenge to FAA action (i.e., the Agreement). Defendants' Memorandum, at 19.  Again, Defendants are wrong.

As an initial matter, Defendants misrepresent Section 46110, <u>Nyunt</u>, and <u>MCorp</u>.   In those cases, the D.C. Circuit and the Supreme Court established that the <u>Leedom</u> pathway is available – even if the other factors are met – only if in the otherwise applicable review mechanism "the statutory preclusion of review is implied rather than express."  <u>Nyunt</u>, 589 F.3d at 449.   Section 46110 does provide for the review of certain final FAA actions in the D.C. Circuit or another circuit court, but its prohibition on litigation in a district court is <u>implied</u>, not <u>express</u>.  Accordingly, the Complaint is consistent with the requirement noted in <u>Nyunt</u> and not barred from review.  Indeed, in <u>MCorp</u>, the Supreme Court was even more explicit, explaining that a <u>Leedom</u>-based claim could not be brought under the Financial Institutions Supervisory Act because that statute expressly stated that: "no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any … notice or order under this section."  <u>MCorp</u>, 502 U.S. at 44, quoting 12 U.S.C. § 1818(i)(1).   There simply is no equivalent language in Section 46110; as in <u>Leedom</u>, it merely "implie[s], by its silence, a preclusion of review" in this

Court.  Id., 44.  Thus, the Complaint also is consistent with MCorp and not barred from review.[25]

Courts considering Leedom-based challenges to agency actions appear to rarely even acknowledge the existence of this predicate – presumably because few review statutes include an express (in contrast to an implied) prohibition on review by district courts, so this factor rarely is relevant.  This Court on at least one prior occasion has considered a Leedom-based challenge to FAA action, with no suggestion that the predecessor of Section 46110 prohibited it from doing so; although plaintiffs in that case were held not to have done so, this Court explicitly stated that it had considered if those plaintiffs asserted "claims which would give rise to an exception to that exclusive Court of Appeals review."  O'Donnell v. Bond, 510 F.Supp. 925, 931 (D.D.C. 1981).

Defendants further assert, despite the lack of any express preclusion language in Section 46110, that it nevertheless bars jurisdiction in this Court.  Memorandum, at 19-20.  Defendants cite no Leedom-based authority – or any authority – for this claim, and there is none; in fact, quite the opposite.  Plaintiffs do not dispute that Section 46110 directs review of final FAA actions to the D.C. Circuit or another circuit court, and routinely has been interpreted to prohibit final FAA actions from review in a district court.[26]  But the D.C. Circuit has established that FAA "[a]ctions which are not (or not yet) [final] orders but which are nonetheless reviewable may be raised in the district court."  City of Rochester, 603 F.2d at 935.  See also Merritt v. Shuttle, 245 F.3d 182, 187 (2d Cir. 2001) (predicating exclusive circuit review on presumption "that the court of appeals has authority to hear the claim on direct review of the agency order").

---

[25] Other courts concur.  See, e.g., Doral Bank v. FDIC, 59 F.Supp.3d 358, 367 (D.P.R. 2014) (citing 12 U.S.C. § 1818(i)(1)); Allcare Hospice v. Sebelius, 2012 WL 5246512, *6 (E.D.Okla. 2012) (citing 42 U.S.C. § 405(h)).

[26] Although Section 46110 literally refers to "orders," the D.C. Circuit has established that it only enables the review of final orders.  See, e.g., Association of Flight Attendants-CWA v. Huerta, 785 F.3d 710, 716 (D.C.Cir. 2015).

Previously, the D.C. Circuit ruled that the Agreement did <u>not</u> constitute <u>final</u> FAA action (but did not dispute that the Agreement constituted FAA <u>action</u>). <u>NBAA</u>, 2018 WL 3159150, *2. Thus, case law holding that Section 46110 is the exclusive vehicle for review of <u>final</u> FAA actions is simply not relevant to this case. Indeed, almost by definition, <u>Leedom</u> was intended to provide for scrutiny of non-final agency actions. <u>Association of National Advertisers v. FTC</u>, 627 F.2d 1151, 1180 (D.C.Cir. 1979) (Leventhal, J., concurring) (court may take "jurisdiction before final agency action … in a case of "clear right" such as outright violation of a clear statutory provision (<u>Leedom</u>)"); <u>Weber v. U.S.</u>, 209 F.3d 756, n.1 (D.C.Cir. 2000). Section 46110 is not a unique exception to that general principle.

Lastly, Defendants assert that even if <u>Leedom</u> enables review of a non-final FAA order, it must occur in a circuit court. Memorandum, at 20. That is incorrect. <u>See, e.g.</u>, <u>American Federation of Government Employees v. FLRA</u>, 453 F.3d 500, 502 (D.C.Cir. 2006) ("<u>Leedom v. Kyne</u> implicates the jurisdiction of the district court, not that of the court of appeals"); <u>Treasury Department v. FLRA</u>, 43 F.3d 682, n.6 (D.C.Cir. 1994) ("[t]he <u>Leedom</u> exception is premised on the <u>original</u> federal subject matter jurisdiction of the district courts") (emphasis in original).[27]

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be denied.

---

[27] Defendants also are wrong to suggest that Plaintiffs previously made a contradictory argument to the D.C. Circuit. In that litigation, Plaintiffs argued that the Agreement was a final order – not that a circuit court could review non-final orders. Defendants misrepresent the decision (<u>NBAA</u>, 2018 WL 3159150, *3) and the underlying record.

ZUCKERT, SCOUTT & RASENBERGER, LLP

Dated: October 12, 2018

JOLYON ("JOL") A. SILVERSMITH, Esq.
D.C. Bar no. 463897
BARBARA M. MARRIN, Esq.
D.C. Bar no. 1031665
888 17th Street, N.W., Suite 700
Washington, D.C. 20006
(202) 298-8660
jasilversmith@zsrlaw.com
bmmarrin@zsrlaw.com

RICHARD K. SIMON, Esq.
1700 Decker School Lane
Malibu, CA 90265
(310) 503-7286
rsimon3@verizon.net

Counsel for Plaintiffs