# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NATIONAL BUSINESS AVIATION ASSOCIATION, INC., *et al.*, | ) ) ) | Case No. 1:18-cv-01719-RBW |
| *Plaintiffs*, | ) ) | |
| v. | ) ) | |
| DANIEL K. ELWELL, only in his official capacity as Acting Administrator of the Federal Aviation Administration, | ) ) ) ) | |
| and | ) ) | |
| FEDERAL AVIATION ADMINISTRATION, | ) ) | |
| *Defendants*. | ) | |

## REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

I.   Intervention in the Central District Litigation Provided Plaintiffs with a Meaningful and Adequate Alternative to a *Leedom* Claim. …………………………..……………………….2

    A.   Collateral Attacks on Settlements or Consent Decrees Are Not Exempt from the Requirement that *Leedom* Claims Have No Other Avenue for Judicial Review. ……...2

    B.   Plaintiffs Would Have Received Meaningful Judicial Review, Under a More Favorable Standard, Through Intervention. ………………………………………………………..4

    C.   Plaintiffs' Speculation About the Outcome of an Intervention Motion They Never Filed Does Not Establish that Intervention Was Not a Meaningful or Adequate Avenue for Review of the Terms of the Settlement Agreement. ..………………………………......6

        1.   Speculating that an Intervention Motion Would Have Been Denied Does Not Establish that Plaintiffs Lacked Other Mechanisms for Securing Judicial Review of the Terms of the Settlement Agreement. …………………………………………7

        2.   Plaintiffs' *Ultra Vires* Challenge Could Have Been Considered If Plaintiffs Had Intervened in the Central District Litigation. ……………………………….…9

II.   The FAA Did Not Exceed Its Authority When It Entered Into the Settlement Agreement. …………………………………………………………………………………………10

    A.   The FAA Did Not Need to Comply with Procedural Requirements for Administratively Releasing Interests When It Approved the Settlement Agreement. ……..…………...10

        1.   The Settlement Agreement Itself Did Not Release Any Interests, so Did Not Need to Comply with FAA Procedural Requirements for Releasing Interests. ………..11

        2.   Any Failure to Comply with Procedural Requirements Would Not Constitute the Extreme *Ultra Vires* Action Necessary for a *Leedom* Claim. …………………...12

        3.   Any Failure to Comply with Procedural Requirements Would Not Constitute the Extreme *Ultra Vires* Action Necessary for a *Leedom* Claim. ....………………...13

    B.   The Settlement Agreement Does Not Exceed the FAA's Authority. ……………….16

        1.   The Settlement Agreement Reflects the Necessary FAA Determinations for the Release of Interests Under 49 U.S.C. § 47153(a)(1) and (a)(2). .....……………..17

        2.   The Settlement Agreement Does Not Implicate the Noise Act Because Nothing in its Terms Limit the Aircraft that May Use the Airport. .....………………………18

        3.   The Settlement Agreement was Not a Major Federal Action that Would Trigger Procedural Requirements Under NEPA. .....………………………………….....18

4.   The FAA Was Not Obligated to Make the Settlement Agreement Subject to Notice and Comment. .......……………………………………………………….....19

5.   The FAA Has Not Waived Compliance with Grant Assurances. ...……………...20

CONCLUSION……………………………………………………………………………..21

## TABLE OF AUTHORITIES

**Cases**

*AFGE, AFL-CIO, Local 2798 v. Pope*,
  808 F. Supp. 2d 99 (D.D.C. 2011) ............................................................................... 13

*American Federation of Government Employees v. Secretary of the Air Force*,
  716 F.3d 633 (D.C. Cir. 2013) ..................................................................................... 13

*American Forest Resources Council v. Ashe*,
  946 F. Supp. 2d 1 (D.D.C. 2013) .................................................................... 13, 19, 20

*Board of Governors, Federal Reserve System v. MCorp Financial, Inc.*,
  502 U.S. 32 (1991) ..................................................................................................... 2, 4

*Bombardier v. United States Departmentt of Labor*,
  145 F. Supp. 3d 21 (D.D.C. 2015) ................................................................................. 4

*City of Naples Airport Auth. v. FAA*,
  409 F.3d 431 (D.C. Cir. 2005) ..................................................................................... 18

*Cleveland County Association v. Cleveland County Board of Commissioners*,
  142 F.3d 468 (D.C. Cir. 1998) ....................................................................................... 2

*Conservation Northwest. v. Sherman*,
  715 F.3d 1181 (9th Cir. 2013) ............................................................................. 6, 9, 12

*Executive Business Media, Inc. v. U.S. Dep't of Defense*,
  3 F.3d 759 (4th Cir. 1993) ........................................................................................... 14

*Home Builders Associations of Northern California v. Norton*,
  293 F. Supp. 2d 1 (D.D.C. 2002) ................................................................................. 12

*Leedom v. Kyne*,
  358 U.S. 184 (1958) ....................................................................................................... 1

*Local No. 93, International Association of Firefighters v. City of Cleveland*,
  478 U.S. 501 (1986) ....................................................................................................... 6

*Martin v. Wilks*,
  490 U.S. 755 (1989) ....................................................................................................... 2

*Mobil Exploration and Producing U.S., Inc. v. Department of Interior*,
  180 F.3d 1192 (10th Cir. 1999) ..................................................................................... 7

*National Air Traffic Controllers Association of AFL-CIO v. Federal Service Impasses Panel*,
   437 F.3d 1256 (D.C. Cir. 2006) .......................................................................................... 2, 4

*National Association of Home Builders v. Evans*,
   No. 00-2799, 2002 WL 1205743 (D.D.C. Apr. 30, 2002) ....................................................... 12

*National Association of Regulatory Utility Commissioners v. Interstate Commerce Commission*,
   41 F.3d 721 (D.C. Cir. 1994) .................................................................................................. 9

*National Busisness Aviation Association, Inc. v. Huerta*,
   737 F. App'x 1 ............................................................................................................ *passim*

*Nebraska Legislative Board v. Slater*,
   245 F.3d 656 (8th Cir. 2001) .................................................................................................. 6

*New York v. Reilly*,
   969 F.2d 1147 (D.C. Cir. 1992) .............................................................................................. 9

*NLRB v. Interstate Dress Carriers, Inc.*,
   610 F.2d 99 (3d Cir. 1979) ...................................................................................................... 7

*NLRB v. Vista Del Sol Health Services, Inc.*,
   40 F. Supp. 3d 1238 (C.D. Cal. 2014) ..................................................................................... 7

*Norfolk Southern Railway v. Solis*,
   915 F. Supp. 2d 32 (D.D.C. 2013) ........................................................................................... 4

*Nyunt v. Chairman, Broad. Board of Governors*,
   589 F.3d 445 (D.C. Cir. 2009) .......................................................................................... *passim*

*Officers for Justice v. Civil Service Commission*,
   688 F.2d 615 (9th Cir. 1982) ............................................................................................. 13, 15

*Pacific Maritime Association v. NLRB*,
   827 F.3d 1203 (9th Cir. 2016) ........................................................................................... 3, 4, 8

*Physicians Nat'l House Staff Ass'n v. Murphy*,
   No. 78-1209, 1979 WL 4851 (D.C. Cir. Apr. 2, 1979) ............................................................ 7

*Southern Ohio Coal v. Office of Surface Mining Reclamation and Enforcement, Department of
   Interior*,
   831 F. Supp. 1324 (S.D. Ohio 1993) ....................................................................................... 7

*Schwarz Partners Packaging, LLC v. NLRB*,
   12 F. Supp. 3d 73 (D.D.C. 2014) ............................................................................................ 4

*Stringfellow v. Concerned Neighbors in Action*,
480 U.S. 370 (1987) ........................................................................................................ 7

*Turtle Island Restoration Network v. United States Department of Commerce*,
672 F.3d 1160 (9th Cir. 2012) ........................................................................................ 9

*United States v. Blue Lake Power, LLC*,
215 F. Supp. 3d 838 (N.D. Cal. 2016) ........................................................................... 9

*United States v. Carpenter*,
No. 3:99-cv-00547-MMD-WGC, 2016 WL 4392810 (D. Nev. Aug. 16, 2016) ...................... 15

*United States v. Oregon*,
913 F.2d 576 (9th Cir. 1990) .............................................................................. 5, 13, 15

*United States v. United Technologies Corp.*,
No. 1:12-CV-1230 (KBJ), 2013 WL 12303363 (D.D.C. May 29, 2013) ................................ 5

*Washington v. United States Department of State*,
318 F. Supp. 3d 1247 (W.D. Wash. 2018) ..................................................................... 6

*Yniquez v. Arizona*,
939 F.2d 727 (9th Cir. 1991) ........................................................................................ 6

**Statutes**

42 U.S.C. § 4332(C) .................................................................................................... 16

49 U.S.C. § 47107 ...................................................................................................... 20

49 U.S.C. § 47107(a) .................................................................................................. 20

49 U.S.C. § 47107(a)(1) .............................................................................................. 21

49 U.S.C. § 47107(a)(9) .............................................................................................. 21

49 U.S.C. § 47107(h) ............................................................................................. 19, 21

49 U.S.C. § 47107(i) ................................................................................................... 21

49 U.S.C. § 47151(d) .................................................................................................. 19

49 U.S.C. § 47153(a)(1) .............................................................................................. 17

49 U.S.C. § 47153(a)(2) .............................................................................................. 17

49 U.S.C. § 47153(c) .................................................................................................. 19

49 U.S.C. § 47524(c) ........................................................................................................... 16, 18

**Regulations**

22 C.F.R. § 125.4(b)(13)........................................................................................................... 6

22 C.F.R. § 126.2 ..................................................................................................................... 6

28 C.F.R. § 61.4 ...................................................................................................................... 18

**Other Authorities**

FAA Order 5050.4B (2006), Table 6-2 ...................................................................................... 18

FAA Order 1050.1F…………………………………………………………………………...19

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL BUSINESS AVIATION ASSOCIATION, INC., *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> DANIEL K. ELWELL, only in his official capacity as Acting Administrator of the Federal Aviation Administration, <br><br> and <br><br> FEDERAL AVIATION ADMINISTRATION, <br><br> *Defendants*. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )    Case No. 1:18-cv-01719-RBW |

## <u>REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>

As set forth in Defendants' Motion to Dismiss ("Motion"), the Court should dismiss Plaintiffs' Complaint because Plaintiffs meet none of the three requirements for their challenge under *Leedom v. Kyne*, 358 U.S. 184 (1958), to the Settlement Agreement, a non-final agency action that had no legal effect apart from the Consent Decree.[1]  Plaintiffs' arguments to the contrary in their Memorandum of Points and Authorities in Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss, ECF No. 10, ("Opposition") are unsupported by the legal authorities on which they rely and vastly overstate the extraordinarily narrow scope of cognizable *Leedom* claims.  The Court should therefore dismiss the Complaint.

---

[1] For clarity and brevity, this reply brief uses terms identified and defined in Defendants' Motion to Dismiss, ECF No. 6-1.

III.   **Intervention in the Central District Litigation Provided Plaintiffs with a Meaningful and Adequate Alternative to a *Leedom* Claim.**

The first requirement for a *Leedom* claim is that the "plaintiff must show . . . that barring review by the district court 'would wholly deprive [the party] of a meaningful and adequate means of vindicating its statutory rights.'"   *Nat'l Air Traffic Controllers Ass'n of AFL-CIO v. Fed. Serv. Impasses Panel*, 437 F.3d 1256, 1263 (D.C. Cir. 2006) (quoting *Bd. of Governors, Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991) (alteration in original).   Here, Plaintiffs had a full opportunity to challenge the terms of the Settlement Agreement by intervening in the Central District Litigation.   The Settlement Agreement would have had no effect if it were not embodied in the Consent Decree, and the Central District of California could not have entered (or maintained) the Consent Decree if Plaintiffs had intervened and succeeded in their current arguments.   Plaintiffs make three arguments in response to this fatal deficiency in their *Leedom* claim; none has merit.

A.   **Collateral Attacks on Settlements or Consent Decrees Are Not Exempt from the Requirement that *Leedom* Claims Have No Other Avenue for Judicial Review.**

Plaintiffs first argue that, because some challenges to consent decrees or settlements can be brought by third parties who did not intervene in the underlying proceeding, Plaintiffs' current challenges can likewise be raised despite their failure to intervene.   Opp'n at 6-8 (citing, for example, *Martin v. Wilks*, 490 U.S. 755, 761-64 (1989) and *Cleveland County Association v. County Board of Commissioners*, 142 F.3d 468, 473-74 (D.C. Cir. 1998)).   This argument fails because it disregards the requirement that "there be no alternate procedure for review" applicable to *Leedom* claims, which is entirely independent of whether the *Leedom* claim happens to challenge a settlement agreement or consent decree.   *Nyunt v. Chairman, Broadcasting Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009).   Defendants do not contend that all third parties

2

must intervene to challenge a settlement agreement or consent decree.  Rather, Defendants contend that, because these Plaintiffs could have intervened to challenge the Consent Decree, they cannot now bring those challenges under *Leedom*.  Plaintiffs do not identify a single case in which a court held that a *Leedom* claim was proper despite the availability of review through intervention in an earlier proceeding.  *See generally* Opp'n at 6-8.

Indeed, in an analogous situation, the Ninth Circuit held that a *Leedom* claim was improper when the plaintiff did not "attempt to intervene" in an underlying administrative proceeding.  *Pac. Maritime Ass'n v. NLRB*, 827 F.3d 1023, 1211 (9th Cir. 2016).  Plaintiffs try to distinguish *Pacific Maritime* by noting that the administrative proceeding underlying that case eventually could have produced a final order subject to judicial review.  Opp'n at 8.  However, this disregards the Ninth Circuit's explicit holding that "seek[ing] to intervene in the ongoing" proceeding and "simply await[ing] the [NLRB's] final order" were separate and "alternative means to challenge the [agency] decision."  *Pac. Maritime, Inc.*, 827 F.3d at 1210.  Just like the plaintiffs in *Pacific Maritime*, Plaintiffs here could have obtained judicial review by intervening.  And, as the D.C. Circuit explained when it rejected Plaintiffs' petition for review, Plaintiffs' arguments regarding the Settlement Agreement could have been addressed if Plaintiffs had intervened in the Central District Litigation to challenge the Consent Decree that gave effect to the Agreement's terms.  *Nat'l Bus. Aviation Ass'n, Inc. v. Huerta*, ___ F. App'x ___, No. 17-1054, 2018 WL 3159150, at *2-3 (D.C. Cir. June 12, 2018) (per curiam).  Thus, the Ninth Circuit's conclusion that intervention can provide meaningful and adequate review of an agency decision is applicable here and precludes Plaintiffs' *Leedom* claim.  *Pacific Maritime, Inc.*, 827 F.3d at 1211.

**B.** **Plaintiffs Would Have Received Meaningful Judicial Review, Under a More Favorable Standard, Through Intervention.**

Plaintiffs second argue that raising their current arguments as intervenors in the Central District Litigation would not be meaningful and adequate review because of the procedural posture and/or the legal standards that would be applied.  Opp'n at 8-11.  Neither claim is true.

Nothing about the procedural posture of proceeding as an intervenor would have deprived Plaintiffs of meaningful and adequate review.  A plaintiff must be "wholly deprive[d]" of judicial review before a *Leedom* claim might be proper.  *Nat'l Air Traffic Controllers Ass'n of AFL-CIO*, 437 F.3d at 1263 (quoting *Bd. of Governors, Fed. Reserve Sys.*, 502 U.S. at 43). There is no requirement of a particular procedural posture of that review.[2]  Indeed, this Court has specifically stated that even if a plaintiff "may never get the opportunity to challenge" an agency's decision in one case, the opportunity to challenge [it] in another case" precludes a *Leedom* claim.  *Norfolk S. Ry. v. Solis*, 915 F. Supp. 2d 32, 45 (D.D.C. 2013).  *See also Schwarz Partners Packaging, LLC v. NLRB*, 12 F. Supp. 3d 73, 86 (D.D.C. 2014) (holding that "indirect review" of agency decision constituted meaningful and adequate review for *Leedom*).  Not only is this true as a general matter, but *Pacific Maritime* specifically recognizes intervention as "a viable alternative path to seeking review" sufficient to undercut a *Leedom* claim.  *See Pacific Maritime, Inc.*, 827 F.3d at 1211.  Contrary to Plaintiffs' assertion, *Leedom* does not give them a right to a separate proceeding just because they prefer one.  *See* Opp'n at 10.

---

[2]  Plaintiffs cite no authority for their assertion that "[t]he opportunity for judicial review must be straightforward." Opp'n at 11.  They quote *Bombardier v. U.S. Department of Labor*, 145 F. Supp. 3d 21, 35 (D.D.C. 2015), in the sentence following this assertion, but that case does not provide them any support.  *Bombardier* stands for the very different proposition that "a party lacks meaningful review of its claims only when administrative procedures create burdensome barriers to those claims being heard at all."  *Id.*  (emphasis added).  There are no administrative procedures at issue here, and Plaintiffs could have had their claims heard through the filing of a motion to intervene in the Central District Litigation.

4

Likewise, Plaintiffs were not deprived of meaningful and adequate review under *Leedom* just because they apparently prefer the *Leedom* standard of review to the review that would have been available if they had intervened in the Central District Litigation (or, if appeal were necessary, in Ninth Circuit). Even if the *Leedom* standard were more favorable to Plaintiffs— and it is not—permitting Plaintiffs to invoke *Leedom* whenever they prefer that standard of review would render meaningless the requirement that there be no alternate avenue for review. Because *Leedom* entails a unique standard of substantive review—*i.e.*, that the challenged agency action is so *ultra vires* as to be nearly jurisdictional, *Nyunt*, 589 F.3d at 449—any other form of review necessarily would apply a different standard. Under Plaintiffs' view, *Leedom*'s different standard entitles them (and all other plaintiffs) to proceed under *Leedom* whenever they prefer that standard. That expansive view is completely at odds with the well-established rarity of a cognizable *Leedom* claim.

Moreover, Plaintiffs are wrong in arguing that the standard of substantive review under *Leedom* is more favorable to them than the standards that would have applied in the Central District Litigation. Opp'n at 9. Plaintiffs assert that the district court in that case would have applied the "highly deferential" standard for a reviewing court's assessment of whether a consent decree is in the public interest. *See* Opp'n at 9 & n.2 (citing *United States v. United Techs. Corp.*, No. 1:12-CV-1230 (KBJ), 2013 WL 12303363, at *5 (D.D.C. May 29, 2013)). *See also United States v. Oregon*, 913 F.2d 576, 581 (9th Cir. 1990) (laying out the standard for a court's assessment of the reasonableness of a consent decree's substantive provisions). But here Plaintiffs do not contend the Settlement Agreement was contrary to the public interest; they contend it was *ultra vires* because it violated statutes governing the FAA's release of Federal Government interests in airports. Because "a district court may not approve a consent decree

that 'conflicts with or violates' an applicable statute," the district court in the Central District

Litigation would have considered Plaintiffs' arguments without deference to the agreed-upon

terms. *Conservation Nw. v. Sherman*, 715 F.3d 1181, 1185 (9th Cir. 2013) (quoting *Local No.*

*93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 526 (1986)).[3] Thus, had

Plaintiffs intervened, the court would have considered their arguments on the merits without

applying a deferential standard that Plaintiffs would have to overcome. That stands in sharp

contrast to the very narrow review permitted by *Leedom*, under which legal errors are not even

cognizable unless they amount to extreme *ultra vires* actions. *Nyunt*, 589 F.3d at 449.[4]

>   **C.     Plaintiffs' Speculation About the Outcome of an Intervention Motion They
>           Never Filed Does Not Establish that Intervention Was Not a Meaningful or
>           Adequate Avenue for Review of the Terms of the Settlement Agreement.**

Plaintiffs third argue that intervention did not constitute an alternate means to obtain

meaningful and adequate review of the terms of the Settlement Agreement because they <u>might</u>

have been denied intervention or <u>might</u> not have been able to raise the allegations of *ultra vires*

action made here.[5] Opp'n at 11-14. Not only is this speculation insufficient to establish a lack of

meaningful and adequate review, but Plaintiffs' speculation is based on faulty legal premises.

---

[3]  In the event of an appeal, the Ninth Circuit would have reviewed the legal question *de novo*, and the district court's "failure to apply the correct law" would be *per se* abuse of discretion that mandated *vacatur* of the consent decree. *Conservation Nw.*, 715 F.3d at 1185.

[4]  Plaintiffs fundamentally misconstrue *Washington v. State Department,* 318 F. Supp. 3d 1247 (W.D. Wash. 2018). As an initial matter, that case did not involve a *Leedom* challenge, and thus the existence of alternative forms of review did not by itself preclude the challenge in that case (nor did the government argue that it did so). Moreover, the actions challenged by the plaintiffs in that case were issuance of a letter permitting the posting of certain computer files under 22 C.F.R. § 125.4(b)(13), and a temporary modification to arms control regulations under 22 C.F.R. § 126.2 pursuant to the national security and foreign policy interests of the United States.

[5]  In support thereof, Plaintiffs speculate that a motion filed after the entry of the Consent Decree might be less likely to succeed than one filed beforehand. Opp'n at 12. Notably, Plaintiffs do not even acknowledge the Ninth Circuit's express statement of the "general rule" that "a post-judgment motion to intervene is timely if filed within the time allowed for the filing of an appeal." *Yniquez v. Arizona*, 939 F.2d 727, 735 (9th Cir. 1991). Moreover, a plaintiff's "fail[ure] to [seek judicial review] in a timely fashion" does not affect whether the plaintiff had the "opportunity to seek judicial review" for purposes of a *Leedom* claim. *Neb. Legislative Bd. v. Slater*, 245 F.3d 656, 659 (8th Cir. 2001). Finally, Plaintiffs acknowledge that the district court in the Central District Litigation had the discretion to grant a motion to intervene after it entered the Consent Decree. Opp'n at 12-14. The uncertainty of

1.    **Speculating that an Intervention Motion Would Have Been Denied
      Does Not Establish that Plaintiffs Lacked Other Mechanisms for
      Securing Judicial Review of the Terms of the Settlement Agreement.**

The possibility that an intervention motion would have been denied is insufficient to establish a lack of meaningful and adequate review.  Plaintiffs have provided no basis for their speculation that the district court in the Central District Litigation would have denied their motion or that the Ninth Circuit (to which Plaintiffs could have immediately appealed any denial) would have upheld the district court's denial.  *See Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 377 (1987) (providing for immediate appeal of denial of motions to intervene).

Plaintiffs cite three cases in arguing that a motion to intervene does not provide for meaningful and adequate review, none of which actually supports their position.  *See* Opp'n at 13 & nn. 7-8.  Rather, all three stand for the proposition that a *Leedom* claim might be appropriate when, otherwise, the only way for a plaintiff to raise its arguments would be in defense of a legal proceeding that the government initiates at its discretion (*e.g.*, enforcement proceedings).[6]  Initially, numerous cases decided since the ones cited by Plaintiffs have held that even proceedings that can be initiated only by the government may nonetheless may provide meaningful and adequate judicial review for *Leedom* purposes.  *See, e.g., Mobil Exploration & Producing U.S., Inc. v. Dep't of Interior*, 180 F.3d 1192, 1200 (10th Cir. 1999); *NLRB v. Vista Del Sol Health Servs.*, 40 F. Supp. 3d 1238, 1254-55 (C.D. Cal. 2014).  Moreover, Plaintiffs'

---

whether the district court would have granted the motion is entirely the fault of Plaintiffs, who chose not to seek intervention, and does not establish the lack of an alternate means of review as required by *Leedom*.

[6]  Notably, two of these cases are no longer good law.  *See Physicians Nat'l House Staff Ass'n v. Murphy*, No. 78-1209, 1979 WL 4851, at *11 (D.C. Cir. 1979), *vacated and rev'd en banc* 642 F.2d 492 (D.C. Cir. 1980); *S. Ohio Coal v. Office of Surface Mining Reclamation & Enforcement, Dep't of Interior*, 831 F. Supp. 1324, 1333 (S.D. Ohio 1993), *rev'd* 20 F.3d 1419 (6th Cir. 1994).  The other is forty years old and from another circuit.  *NLRB v. Interstate Dress Carriers*, 610 F.2d 99, 109 (3d Cir. 1979).

cases are inapplicable here because the Central District Litigation was pending when Plaintiffs

wanted to raise their current challenges to the terms of the Settlement Agreement, providing

them with a then-existing legal forum for those challenges to be heard.  Plaintiffs therefore did

not have to rely on the FAA to initiate a legal proceeding in which Plaintiffs could raise their

challenges.

Further, their argument is squarely contradicted by the Ninth Circuit's analysis in *Pacific

Maritime* and the D.C. Circuit's analysis in Plaintiffs' previous challenging the Settlement

Agreement.  Like two of the Plaintiffs here, the plaintiff in *Pacific Maritime* moved to intervene

in a pending proceeding and was denied.  *Pac. Maritime Ass'n*, 827 F.3d at 1210.  And, like

Plaintiffs here, the *Pacific Maritime* plaintiff later argued that *Leedom* provided its only adequate

means for judicial review because "a renewed request for intervention would be futile."  *Id.*  The

Ninth Circuit rejected this argument, holding that there was meaningful review because a

renewed motion to intervene could be granted at a later point in the pending administrative

proceeding in light of changes in circumstances and the applicability of a different legal standard

for intervention later in the proceeding.  *Id.* at 1210-11.  The D.C. Circuit mirrored this analysis

in rejecting Plaintiffs' *Leedom*-like equitable argument that the court should ignore finality "lest

the FAA escape judicial review."  *Nat'l Bus. Aviation Ass'n*, 2018 WL 3159150 at *2.  The court

explained that "two of the [Plaintiffs] had previously been denied intervention . . . on the ground

that the FAA adequately protected their interests" but then faulted Plaintiffs because they had not

"sought intervention after the 'Settlement Agreement/Consent Decree' created fissures between

the FAA, which now wants to compromise" and Plaintiffs, who do not.  *Id.* at *3.  In sum,

Plaintiffs' unsupported speculation that the district court in the Central District Litigation (or the

Ninth Circuit on appeal) would have denied a motion to intervene that they never filed is

insufficient under *Leedom* to establish the unavailability of a mechanism for judicial review.

> **2.    Plaintiffs' *Ultra Vires* Challenge Could Have Been Considered If Plaintiffs Had Intervened in the Central District Litigation.**

Plaintiffs next argue that "there is no certainty that Plaintiffs would be allowed to include

in their objections that [the] FAA had acted <u>ultra vires</u>" even if they had intervened in the Central

District Litigation.  Opp'n at 13.  The D.C. Circuit rejected precisely this argument concluding

that Plaintiffs were "mistaken" on the law.  Rather, under Ninth Circuit precedent, "intervenors

may challenge consent decrees entered into by federal agencies as violating any applicable

statutes or regulations."  *Nat'l Bus. Aviation Ass'n*, 2018 WL 3159150, at *3.  Plaintiffs here

contend that the D.C. Circuit was wrong because the general rule for the scope of intervention

(which Plaintiffs acknowledge "is not absolute") is that the intervenor may not introduce new

issues in the litigation.  Opp'n at 13-14.  Critically, not one of the cases on which Plaintiffs rely

involved an argument that a consent decree was *ultra vires*, an issue that presumably would not

be raised by the settling parties.[7]  The Ninth Circuit cases cited by the D.C. Circuit in contrast

address precisely that question, and they contradict Plaintiffs' position here.  *Nat'l Bus. Aviation

Ass'n*, 2018 WL 3159150, at *3.  *See also Conservation Nw.*, 715 F.3d at 1183-89 (reversing the

entry of a consent decree after an intervenor successfully argued that it was contrary to statutory

limit on agency action); *Turtle Island Restoration Network v. U.S. Dep't of Commerce*, 672 F.3d

1160, 1165-69 (9th Cir. 2012) (reviewing intervenor's argument that a consent decree violated

two statutes limiting agency action).  Plaintiffs' authorities are therefore inapposite, and their

final argument against the availability of meaningful and adequate review is thus meritless.

---

[7] *See Nat'l Ass'n of Regulatory Utility Comm'rs v. Interstate Commerce Comm'n*, 41 F.3d 721, 729 (D.C. Cir. 1994); *New York v. Reilly*, 969 F.2d 1147, 1154 n.11 (D.C. Cir. 1992); *United States v. Blue Lake Power*, 215 F. Supp. 3d 838, 844 (N.D. Cal. 2016).

IV.     **The FAA Did Not Exceed Its Authority When It Entered Into the Settlement Agreement.**

Plaintiffs also have not alleged the kind of extreme *ultra vires* action required for a *Leedom* claim.  Indeed, they have not even plausibly alleged that the terms of the Settlement Agreement incorporated into the Consent Decree violated any applicable law or regulation.  Plaintiffs' *ultra vires* arguments rely on improperly conflating the Settlement Agreement—an agency action that had no legal effect—with the Consent Decree, a judicial action that resolved disputes concerning the Federal Government's and the City's respective rights over the Airport.  Moreover, Plaintiffs allege only violations of procedural rules, not substantive law, which means that any alleged agency overreach would not be so *ultra vires* as to justify *Leedom* review.  Finally, Plaintiffs do not allege that the Settlement Agreement facially exceeded the FAA's authority.  At most they allege that the FAA entered the Settlement Agreement without developing the record to allow review of the agency's decision under the Administrative Procedure Act ("APA").  However, Plaintiffs have not brought an APA claim, and a *Leedom* claim is not judged by APA standards.

A.      **The FAA Did Not Need to Comply with Procedural Requirements for Administratively Releasing Interests When It Approved the Settlement Agreement.**

Plaintiffs challenge the FAA's decision to enter into the Settlement Agreement, not the Consent Decree that gave legal effect to the terms of the Agreement.  Compl. ¶¶ 21-25; Opp'n at 1.  They nonetheless claim that the FAA had to comply with the procedural requirements for releasing interests in the Airport before it could approve the Settlement Agreement.  Under *Leedom*, Plaintiffs would have to show that the purported failure to comply with these procedural requirements was an *ultra vires* action so extreme as to be nearly jurisdictional.  *Nyunt*, 589 F.3d at 449.  They cannot meet this standard because (1) the Agreement did not release any interests

because it had no legal effect whatsoever, (2) procedural requirements for administrative actions

do not necessarily apply to actions taken through litigation and, even if they did, failure to

comply with those requirements would not constitute extreme *ultra vires* action, and

(3) Plaintiffs have made no effort to show that any Airport obligations remained in effect to be

released, which was the core issue in the underlying litigation, and, in any event, is not an issue

that can be resolved by this Court.

> **1.    The Settlement Agreement Itself Did Not Release Any Interests, so Did Not Need to Comply with FAA Procedural Requirements for Releasing Interests.**

As the D.C. Circuit held in rejecting Plaintiffs' petition for review, the Settlement

Agreement "produced no legal consequences at all" with regard to the Federal Government's

disputed right to prevent the City from closing the Airport.  *Nat'l Bus. Aviation Ass'n, Inc.*, 2018

WL 3159150, at *2.  The Agreement therefore clearly did not effect a release of the Federal

Government's rights in the Airport.  As a result, procedural requirements for such releases would

not apply to the Settlement Agreement.

Plaintiffs try to contest this straightforward legal conclusion by asserting that the

Settlement Agreement should be treated as though it had legal effect because it represented the

"terms and conditions to which the FAA had agreed, and would enter into effect without any

further FAA action."[8]  Opp'n at 16.  However, the D.C. Circuit already rejected this analysis

when it found that the Settlement Agreement did not "stand on its own bottom, separate and

apart from the" Consent Decree.  *Nat'l Bus. Aviation Ass'n, Inc.*, 2018 WL 3159150, at *3.  The

procedural requirements upon which Plaintiffs base their claim relate to actual releases of

---

[8]  Under this point, Plaintiffs also introduce unrelated analysis about the standing requirements of injury in fact and redressability.  Opp'n at 15-17.  Defendants do not contend in this litigation that Plaintiffs lack standing.  *See generally* Mot.  Plaintiffs' arguments on standing are therefore beside the point.

Federal Government interests; none governs the decision to propose that disputed interests be resolved by judicial act.  *See* Compl. ¶ 36 (listing statutes).  The requirements are therefore inapplicable on their face, and the FAA could not have violated them by signing the Settlement Agreement.

> ### 2.    Any Failure to Comply with Procedural Requirements Would Not Constitute the Extreme *Ultra Vires* Action Necessary for a *Leedom* Claim.

Plaintiffs have not alleged a *Leedom* claim because procedural requirements for administrative actions are not directly applicable to resolution of litigation through consent decree and, regardless, alleged violations of those requirements do not constitute agency action so *ultra vires* as to be nearly jurisdictional.  *See Nyunt*, 589 F.3d at 449 ("Even if the [agency] has misinterpreted or otherwise evaded its statutory obligation . . . its action is not the kind of 'extreme' error that would justify reliance on the *Leedom v. Kyne* exception.").

In response to this argument, Plaintiffs assert that procedural requirements on administrative actions apply to settlement agreements and consent decrees.  Opp'n at 17-20.  Although there are conflicting authorities on that issue,[9] this Court need not resolve that them to decide whether Plaintiffs state a *Leedom* claim.  Initially, given the lack of a broad statement on this issue by the D.C. Circuit or any precedent regarding the specific procedural requirements invoked by Plaintiffs, the FAA purportedly not complying with those requirements before entering the Settlement Agreement was not of the extreme kind of error necessary for a *Leedom*

---

[9]  Plaintiffs rely on cases from outside the D.C. Circuit to contend that "procedural requirements . . . remain relevant in the context of consent decrees."  Opp'n at 18 (quoting *Conservation Nw.*, 715 F.3d at 1186).  That statement is in tension with this Court's holdings that at least some procedural requirements do not apply to consent decrees, even if the agency would have to comply with those requirements were it to achieve the same result through administrative action.  *See Am. Forest Res. Council v. Ashe*, 946 F. Supp. 2d 1, 26 (D.D.C. 2013), *judgment entered* 301 F.R.D. 14 (D.D.C. 2014), *and aff'd* 601 F. App'x 1 (D.C. Cir. 2015); *Home Builders Ass'ns of N. Cal. v. Norton*, 293 F. Supp. 2d 1, 5 (D.D.C. 2002); *Nat'l Ass'n of Home Builders v. Evans*, No. 00-2799, 2002 WL 1205743, at *3 (D.D.C. Apr. 30, 2002).

claim.  *See AFGE, AFL-CIO, Local 2798 v. Pope*, 808 F. Supp. 2d 99, 110 (D.D.C. 2011)

("'[g]arden-variety errors of law or fact' . . . are not enough to invoke the *Leedom* exception"

(alteration in original)).  Further, it is clear that any error by the agency was not "so extreme that

one may view it as jurisdictional or nearly so."  *Am. Fed'n of Gov't Emps. v. Sec'y of Air Force*,

716 F.3d 633, 639 n.6 (D.C. Cir. 2013) (internal quotation marks omitted).  By arguing that the

FAA had to comply with various procedural requirements before releasing the Federal

Government's interests in the Airport, Plaintiffs recognize the FAA's statutory authority to

release those interests under some circumstances.  Any release, even if it were procedurally

improper, would not be the nearly jurisdictional overreach required for a *Leedom* claim.  *See id.*

3.  **Plaintiffs Do Not Allege Facts Sufficient to Plead the Existence of Obligations that Could be Released, and this Court Cannot Decide the Disputes Underlying the Resolved Litigation.**

Plaintiffs' claim that the FAA improperly released interests in the Airport, which could

only have happened if the Federal Government had any interests to release.  But the existence of

any continuing interest in the Airport was the central issue being disputed in the Central District

Litigation and the separate Ninth Circuit Action.  Establishing Plaintiffs' claims would therefore

require full litigation of the legal issues resolved by the Consent Decree.  Remarkably, however,

Plaintiffs do not even attempt to demonstrate that any Airport obligations remained in effect for

Defendants to release—the central premise of their claims that release was improper.  On that

basis alone, Plaintiffs have failed to state a claim.

Even if Plaintiffs had sought to establish the existence of continuing Airport obligations

that could be released, it would be inappropriate for this Court to accept the invitation to re-

litigate the disputes resolved by the Consent Decree.  When evaluating third party challenges to

the terms of consent decrees reviewing courts do not inquire into the merits of the underlying

claims.  *See United States v. State of Oregon*, 913 F.2d at 582; *Officers for Justice v. Civil Serv.*

*Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  If this were not the rule, third parties to litigation would always be able to force resolution of disputed legal claims by making the parties defend the reasonableness of consent decrees and the legality of their terms.  Plaintiffs' four arguments in response to this analysis are without merit.

Plaintiffs first argue that the Settlement Agreement stated that the Federal Government would release its interests, so interests must have existed.  Opp'n at 20-21.  Although the Consent Decree included standard release language, the City did not concede—nor did the Consent Decree establish—that there were any obligations for the FAA to release.  To the contrary, the Settlement Agreement provides that none of its terms "constitute[s] an admission concerning any allegation, claim or defense at issue" in the Central District Litigation, including the Federal Government's claims that it retained interests in the Airport.  Mot., Feldon Decl., Ex. C at 9.  In other words, the language Plaintiffs cite, without further context, does not accurately reflect the intent or effect of the Agreement.  Plaintiffs make no attempt to show that there was an actual release of obligations and fail to distinguish between a release of uncontested obligations and the resolution of litigation in which the very existence of obligations is the disputed issue.  Reading the Agreement as a whole, it is clear that it did not establish that the FAA had interests in the Airport Property.

Plaintiffs second argue that the Court should engage in fact-finding to resolve any underlying issues in the cases resolved by the Consent Decree, relying on two inapposite out-of-circuit cases to claim this would be appropriate.  *See* Opp'n at 21.  In one case, the legally operative document was a settlement agreement that had not been given effect in a consent decree, meaning that the terms of the settlement had not been previously approved by a court. *See Exec. Bus. Media, Inc. v. U.S. Dep't of Defense*, 3 F.3d 759, 760 (4th Cir. 1993).  Further,

the issue in that case—whether competitive bidding procedures applied to the award of a

government contract by settlement agreement—did not require resolution of the dispute in the

underlying litigation, whether the government had breached a different contract. *See id.*  The

other case on which Plaintiffs rely did not involve a review of an earlier consent decree, but

rather a court rejecting the parties' request that it enter a proposed consent decree in the first

instance.  *See United States v. Carpenter*, No. 3:99-cv-00547-MMD-WGC, 2016 WL 4392810,

at *2-3 (D. Nev. Aug. 16, 2016).  That case therefore does not bear on the way a court should

review an already-approved proposed consent decree.  Here, the terms of the Settlement

Agreement were embodied and given effect in the Consent Decree, which was approved by the

district court in the Central District Litigation.  Thus, the applicable standard is the one for

collateral review of consent decrees, which does not permit inquiry into the underlying merits.

*See Oregon*, 913 F.2d at 582; *Officers for Justice*, 688 F.2d at 625.

Plaintiffs third argue that Defendants cannot now argue that the agency lacked any

interests in the Airport that it could relinquish because the FAA found in the administrative

proceeding that the City still had obligations under airport improvement grants.  Opp'n at 22.

This finding was the one at issue in the separate Ninth Circuit proceeding also resolved by the

Consent Decree.  Plaintiffs misconstrue the nature of Defendants' arguments.  There is no

question that, at the time the FAA entered the Settlement Agreement, the agency believed that

obligations existed.  Indeed, that was the agency's position in the Ninth Circuit litigation at issue.

But that position was strongly contested by the City, and the existence of the obligations was

never resolved due to the district court's entry of the Consent Decree.  Plaintiffs therefore cannot

state a claim that the Settlement was *ultra vires* for failure to comply with procedural

requirements for releasing interests without establishing that interests existed to be released.

Establishing that contention, however, would require the Court to resolve the legal disputes resolved by the Consent Decree.  *See* Mot. at 15-16.  There is no tension between the FAA's position that the City still had obligations under its airport improvement grants and the FAA's recognition that the merits of its position had yet to be decided by the courts.

Finally, Plaintiffs argue that the question of whether the FAA released interests is irrelevant to their allegations that the Settlement Agreement failed to comply with the procedural requirements of the Airport Noise and Capacity Act ("Noise Act") and the National Environmental Policy Act ("NEPA").  Opp'n at 22-23.  That argument is misplaced because those acts are triggered by specific legal events.  *See* 49 U.S.C. § 47524(c) (requiring approval by the Secretary of Transportation of new, contested restrictions on airport noise or access); 42 U.S.C. § 4332(C) (requiring an environmental impact statement when there is a proposal for major Federal action that significantly affects the quality of the human environment).  If the FAA did not release any Federal Government rights in the Airport, then there was no legal change that would trigger either statute.  Thus, like Plaintiffs' other allegations, their Noise Act and NEPA allegations depend on the Settlement Agreement or Consent Decree releasing still-existent interests.  The Noise Act and NEPA claims therefore also fail because the Court cannot in this case resolve the question of whether such interests existed.

**B.     The Settlement Agreement Does Not Exceed the FAA's Authority.**

Although the FAA was not required to comply with procedural requirements for releasing interests through administrative action when it approved the Settlement Agreement, it did so nonetheless.  Moreover, any technical defects in compliance would not result in an extreme *ultra vires* action that would permit review under *Leedom*.

**1.**      **The Settlement Agreement Reflects the Necessary FAA Determinations for the Release of Interests Under 49 U.S.C. § 47153(a)(1) and (a)(2).**

When it approved the terms of the Settlement Agreement, the FAA represented that the Agreement was "in the interest of the public and civil aviation." Mot., Feldon Decl., Ex. C. at 3. The FAA made this determination because, if the City had prevailed on its claims, it would have been able to close the Airport completely and immediately.  That would be both a total loss of the use of the Airport Property for civil aviation purposes and cause disruption to the tightly interwoven network of civilian air traffic in Southern California.  By the same rationale, the FAA determined that compromising any interests it may have had over some of the Airport Property (without letting that property interfere with the Airport's continued operation) was the best way for that portion of the Airport Property to further its purpose of serving civilian air traffic.

Plaintiffs contend that the Settlement Agreement did not adequately state or justify these determinations.  Opp'n at 23-27.  In support of this contention, Plaintiffs rely extensively on case law applying the Administrative Procedure Act ("APA"). *See id.* (citing cases).  However, Plaintiffs have not brought a claim under the APA.  Neither the procedural requirements upon which Plaintiffs base their claims nor *Leedom* requires documentation or explanation of FAA determinations.  *See generally* 49 U.S.C. §§ 47153(a)(1), (a)(2).  Those obligations exist under the APA and other review statutes that incorporate the principles of APA review.  Plaintiffs cannot, however, rely on those obligations in support of a *Leedom* claim.  The FAA's determinations alone, as reflected in the Settlement Agreement, facially comply with the statutory requirements for releasing interests and thus clearly are not *ultra vires* as required under *Leedom.*

**2.      The Settlement Agreement Does Not Implicate the Noise Act Because Nothing in its Terms Limit the Aircraft that May Use the Airport.**

The Settlement Agreement provides that "the Airport shall accommodate aircraft operations that can safely take off and land on a runway of the agreed-upon length," Mot., Feldon Decl., Ex. C at 4-5, so does not implicate the Noise Act, which applies to restrictions on which aircraft may use airports based on the noise they generate.  *See City of Naples Airport Auth. v. FAA*, 409 F.3d 431, 433 (D.C. Cir. 2005) (explaining the Noise Act framework). Plaintiffs contend that the Noise Act applies even to a physical change that limits the type of aircraft that may use a runway (including when it reduces noise by functionally excluding larger, noisier aircraft, which is what the alteration of the runway configuration did here).  Opp'n 27-30. Notably, Plaintiffs fail to cite even a single case saying as much.[10]  *See generally id.*  The plain language of the Noise Act controls, and it does not support Plaintiffs' position.  *See* 49 U.S.C. § 47524(c).

**3.      The Settlement Agreement was Not a Major Federal Action that Would Trigger Procedural Requirements Under NEPA.**

NEPA requires formal environmental assessments only for major federal actions.  No matter its effect, no "action taken by the Department of Justice within the framework of . . . litigation, including but not limited to the submission of consent or settlement agreements" is a "major federal action."  28 C.F.R. § 61.4.  In addition, there is a categorical exclusion of "federal release of airport land" from this NEPA requirement.  *See, e.g.*, FAA Order 5050.4B (2006), Table 6-2, *available at* https://go.usa.gov/xnrZQ.  Plaintiffs make no substantive response to the

---

[10]  Instead, Plaintiffs cite to a letter from fifteen years ago in which a senior FAA official wrote that it "appears that" erecting physical barriers to prevent certain planes from accessing the Airport would implicate the Noise Act.  Letter from David L. Bennett to Robert Timborn, at 4 (Oct. 15, 2003) (cited at Opp'n at 29)).  Even if that were a definitive statement of the law, which it is not, creating artificial barriers on property reserved to aviation use is different from shortening a runway and permitting all aircraft which can safely land on that shortened runway—regardless of noise levels or aircraft category.

first point, instead just reiterating their argument that all procedural requirements applicable to administrative action must also bind the Federal Government in resolving litigation.  Opp'n at 32.  This argument fails for the reasons already discussed.  *See* § II.A.2, *supra.*

As to the categorical exclusion issue, Plaintiffs reassert that the FAA must justify its invocation of that exclusion.  Opp'n at 30-32.  FAA Order 5050.4B expressly provides that "NEPA implementing regulations do not require documentation for categorically excluded actions."  *Id.* § 607(a).  FAA Order 1050.1F reflects this and notes that a categorical exclusion "is not considered deficient due to lack of documentation," even when "extraordinary circumstances" may exist.  *Available a*t https://go.usa.gov/xnrZk.  The law is clear that the FAA may release airport land without undertaking an environmental analysis, even outside the litigation context.  *See* FAA Order 5050.4B (2006), Table 6-2 (listing categorically excluded actions requiring environmental analysis only in extraordinary circumstances).  And, even were that not the case, a deficient record explaining an action does make the action *ultra vires*.  Plaintiffs' arguments on this point are therefore irrelevant to their *Leedom* claim.

### 4.   The FAA Was Not Obligated to Make the Settlement Agreement Subject to Notice and Comment.

Plaintiffs contend that the Settlement Agreement should have been published for notice and comment before the FAA agreed to it.  Compl. at 3 (citing 49 U.S.C. §§ 47107(h), 47151(d), 47153(c)).  This Court has held that notice and comment requirements for administrative actions do not apply to agency actions undertaken pursuant to settlement agreements or consent decrees.  *See Am. Forest Res. Council*, 946 F. Supp. 2d at 26 (collecting cases).  Further, the avigation easement provided for in the Settlement Agreement ensures that the entire Airport Property continues to be used for aeronautical purposes, even if a portion is no longer used specifically as a runway.  Mot., Feldon Decl., Ex. C at 5.

In response to case law providing that notice and comment are not required for settlement agreements and consent decrees, Plaintiffs just include a footnote referring to their earlier attempt to explain why the Court should disregard here its reasoned holdings in other cases. Opp'n at 34 n.24.  Plaintiffs go on to argue that any waiver of obligations to use property for aviation purposes must go through notice and comment.  *Id.*  Even if that were the case, Plaintiffs are once again asserting that the FAA failed to comply with a procedural requirement for administrative action, not that the administrative action was *ultra vires*.  Allegations of this kind of error therefore do not state a *Leedom* claim.

### 5.    The FAA Has Not Waived Compliance with Grant Assurances.

In their Complaint, Plaintiffs made a vague allegation that the Settlement Agreement improperly failed to enforce obligations under federal grants.  Comp. at 3 (citing 49 U.S.C. § 47107(a)).  In their Motion, Defendants noted that there was language specifically requiring compliance with various grant assurances for so long as the City is required to operate the Airport under the Consent Decree.  Mot. at 18-19.  In their Opposition, Plaintiffs finally explain what they apparently intended to plead, which is that the Settlement Agreement purportedly "waived the enforcement of obligations attached to federal grants by the FAA . . . [that it] has a non-discretionary obligation to enforce."  Opp'n at 34.

As an initial matter, the terms of the Settlement Agreement (which became effective only once incorporated into the Consent Decree) ensure compliance with a set of FAA grant assurances that accord with 49 U.S.C. § 47107.  In addition to the grant assurances explicitly extended by the Consent Decree, the manner in which the City must operate the Airport meets the remaining, unlisted grant assurances.  For example, the Consent Decree ensures that an "airport will be available for public use on reasonable conditions and without unjust discrimination," *id.* § 47107(a)(1), by mandating that the "Airport shall accommodate aircraft

20

operations that can safely take off and land on a runway of the agreed-upon length." Mot., Feldon Decl., Ex. C at 4-5. Likewise, the Consent Decree ensures that "appropriate action will be taken to ensure that terminal airspace . . . will be cleared and protected by mitigating existing, and preventing future, airport hazards," 49 U.S.C. § 47107(a)(9), by providing for an avigation easement over the parts of the Airport Property the runway was shortened, Mot., Feldon Decl., Ex. C at 5. *See generally id.* at 4-8 (Articles II, V, VI, VIII.B, VIII.F).

Moreover, to the extent any grant assurances were waived, that is different from not enforcing the assurances. There is no question that the FAA has the authority to waive or modify grant assurances that are not otherwise statutorily mandated. *See* 49 U.S.C. § 47107(h). *See also id.* § 47107(i). If there were any grant assurances remaining as of the Consent Decree, then those assurances were waived and/or modified as provided for in the Decree. Modifying obligations is not abdicating their enforcement, and the FAA's duty to enforce grant assurance obligations can apply only to existent obligations. Plaintiffs' claim that the FAA agreed not to enforce grant assurances is therefore baseless.

## CONCLUSION

For the foregoing reasons and those set forth in the Motion, the Court should grant Defendants' Motion and dismiss Plaintiffs' Complaint with prejudice.

Dated:  October 30, 2018                  Respectfully submitted,

                                          JOSEPH H. HUNT
                                          Assistant Attorney General

                                          JACQUELINE COLEMAN SNEAD
                                          Assistant Branch Director

                                          /s/ *Gary D. Feldon*
                                          GARY D. FELDON

Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW, Room 7128
Washington, D.C. 20530
Tel: (202) 514-4686
Fax: (202) 616-8460
E-mail: gary.d.feldon@usdoj.gov

*Attorneys for Defendants*