# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NATIONAL BUSINESS AVIATION ASSOCIATION, INC., <u>et al.</u>, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 18-1719 (RBW) |
| v. | ) ) | |
| FEDERAL AVIATION ADMINISTRATION and STEVE DICKSON, in his official capacity as Administrator of the Federal Aviation Administration,[1] | ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM OPINION

The plaintiffs, the National Business Aviation Association, Inc.; the Santa Monica Airport Association, Inc.; Wonderful Citrus LLC; Bill's Air Center, Inc.; Kim Davidson Aviation, Inc.; and Redgate Partners, LLC, bring this civil action pursuant to the All Writs Act, 28 U.S.C. § 1651 (2018) and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02 (2018), against the defendants, the Federal Aviation Administration ("FAA") and Steve Dickson, in his official capacity as the Administrator of the FAA, alleging that the FAA acted outside the scope of its statutory authority by entering into a settlement agreement (the "Settlement Agreement") with the City of Santa Monica, California (the "City"), regarding the City's obligation to continue operating the Santa Monica Municipal Airport (the "Airport"). <u>See</u> Complaint for Declaratory and Injunctive Relief ("Compl.") ¶¶ 5–11, 36–40. Currently pending before the Court is the Defendants' Motion to Dismiss ("Defs.' Mot."). Upon careful consideration of the

---

[1] Steve Dickson is the current Administrator of the Federal Aviation Administration, and he is therefore substituted for Daniel K. Elwell as the proper party defendant pursuant to Federal Rule of Civil Procedure Rule 25(d).

parties' submissions,[2] the Court concludes for the following reasons that it must grant the defendants' motion.

## I.   BACKGROUND

### A.   Santa Monica Municipal Airport

In 1941, the United States leased the land where the Airport now sits from the City of Santa Monica "as part of its effort to develop military aircraft during World War II."  Defs.' Mem. at 2; see Compl. ¶¶ 12–14.[3]  In 1948, after World War II had ended, the United States "executed an agreement ([the] 'Instrument of Transfer') conveying its leasehold interest in the leased portion of the Airport [p]roperty back to the City[.]"  Defs.' Mem. at 3.  Pursuant to the Instrument of Transfer, "no property transferred by th[at] instrument shall be used, leased, sold, salvaged, or disposed . . . for other than airport purposes without the written consent of the Civil Aeronautics Administrator."  Id. (first alteration in original) (internal quotation marks omitted) (quoting Feldon Decl., Exhibit ("Ex.") A (Instrument of Transfer (Aug. 19, 1948)) at 6); see also Compl. ¶ 15 ("Under the deed [conveying the Airport to the City], obligations were imposed upon the City—most importantly, that it operate [the Airport] as a fully-functional airport in perpetuity.").  "If the City violated this requirement or any other provision of the Instrument of

---

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the defendants' Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss ("Defs.' Mem." or the "defendants' memorandum"); (2) the Declaration of Gary Feldon ("Feldon Decl."); (3) the Plaintiffs' Opposition to Defendants' Motion to Dismiss ("Pls.' Opp'n"); and (4) the defendants' Reply in Further Support of Defendants' Motion to Dismiss ("Defs.' Reply").

[3] The plaintiffs note that the defendants' memorandum "summarizes the history of [the Airport] and the disputes between the City and [the] FAA, drawing upon the Complaint and judicially-noticeable information[,]" and therefore, "[e]xcept as noted, and to the extent consistent with the factual allegations made in the Complaint, [the] [p]laintiffs do not contest the accuracy of [the] [d]efendants' summary."  Pls.' Opp'n at 3.  Accordingly, the Court's recitation of the facts in this case are taken from the Complaint as well as the defendants' memorandum, unless otherwise specified.

Transfer," the United States would have the option to reclaim the property rights that were conveyed to the City.  Defs.' Mem. at 3; see Feldon Decl., Ex. A (Instrument of Transfer) at 6.

"The City has operated the Airport since the Instrument of Transfer [was executed]." Defs.' Mem. at 3; see Compl. ¶¶ 12–14.  During that time, the Airport has been designated as a "'reliever' by [the] FAA— [which is] a significant general aviation airport which accommodates traffic that otherwise would utilize already-congested commercial airports, such as [the] Los Angeles International Airport."  Compl. ¶ 13.

**B.      Litigation Between the FAA and the City**

"Beginning in the late 1960s, the Airport became the subject of legal disputes among the City, the FAA, City residents, and Airport tenants and users[,]" including "numerous legal challenges to the way the City operated the Airport in state courts, federal courts, and administrative proceedings."  Defs.' Mem. at 3.  However, "[m]any of the disputes between the FAA and the City were held in abeyance between 1984 and 2015[,] as a result of an agreement . . . concerning the operation of the Airport[.]"  Id.  This agreement (the "1984 Agreement") expired in 2015.  See Feldon Decl., Ex. B (Santa Monica Airport Agreement (Jan. 31, 1984)) at 5.

**1.      Central District of California Quiet Title Case**

In 2013, in anticipation of the expiration of the 1984 Agreement, the City filed a lawsuit (the "Quiet Title Case"), under the Quiet Title Act, 28 U.S.C. § 2409a (2012), in the United States District Court for the Central District of California (the "Central District of California"), seeking "a declaration that it would be free to close the Airport entirely once the 1984 Agreement expired."  Defs.' Mem. at 4.  The City argued that its obligation to operate the Airport extended only as long as the United States' original leasehold in the Airport property would have lasted, but in response, the FAA asserted that the City was "obligated [] to operate

the Airport in perpetuity[.]"  Id.  The Central District of California initially dismissed the Quiet

Title Case as barred by the statute of limitations, but on appeal, the United States Court of

Appeals for the Ninth Circuit reversed and remanded the case to the district court for further

development of the factual record.  See id. at 4–5; see also City of Santa Monica v. United

States, 650 F. App'x 326, 327–29 (9th Cir. 2016).

On remand, two of the plaintiffs in this case, Kim Davidson Aviation, Inc. and Bill's Air

Center, Inc., moved in August 2016 to intervene in the Quiet Title Case.  See Compl. ¶ 28;

Defs.' Mem. at 5.  The Central District of California denied their motion to intervene because

there was a "unity of interests between" the proposed intervenors and the defendants in the Quiet

Title Case.  Defs.' Mem. at 5 (internal quotation marks omitted) (quoting City of Santa Monica

v. United States, No. CV 13-8046-JFW (VBKx), 2016 WL 10576629, at *4 (C.D. Cal. Sept. 23,

2016)).  Neither Kim Davidson Aviation, Inc. nor Bill's Air Center, Inc. appealed the denial of

their motion to intervene.  See id.

### 2.     Settlement Agreement and Consent Decree

In January 2017, the City and the FAA entered into the Settlement Agreement that

resolved, inter alia, the Quiet Title Case.  See id.; Compl. ¶ 21.  Under the terms of the

Settlement Agreement,

> (1) the City was allowed to immediately shorten the Airport's runway; (2) the
> City committed to operate the Airport in accordance with certain FAA regulations
> and specified grant obligations through the expiration of the Settlement
> Agreement on December 31, 2028; and (3) the FAA released
> the Airport [p]roperty from all rights and restrictions other than those
> imposed by the [Settlement Agreement] or by statute.

Defs.' Mem. at 7; see Compl. ¶ 21.  The Settlement Agreement also required that "the parties [ ]

jointly move the [Central District of California] to enter a consent decree [(the 'Consent

Decree')] embodying their agreement."  Defs.' Mem. at 6.  However, the Settlement Agreement

provided that "[i]f the [Central District of California] failed to [enter the Consent Decree], the [Settlement Agreement] would 'be of no force and effect and [could] not be used by either [p]arty for any purpose whatsoever.'"  Id. (fifth alteration in original) (quoting Feldon Decl., Ex. C (Settlement Agreement/Consent Decree Between the Federal Aviation Administration and the City of Santa Monica (Jan. 30, 2017) ("Settlement Agreement")) at 4).  On January 30, 2017, the City and the FAA jointly filed the Settlement Agreement and the proposed Consent Decree with the Central District of California.  See Compl. ¶ 25; Defs.' Mem. at 7.

On January 31, 2017, one day after the Settlement Agreement and proposed Consent Decree were filed in the Quiet Title Case, two local resident groups who are unaffiliated with the plaintiffs moved to intervene to oppose the proposed Consent Decree.  See Compl. ¶ 27; Defs.' Mem. at 7.  On February 1, 2017, the Central District of California denied the resident groups' motion to intervene and entered the proposed Consent Decree.  See Compl. ¶¶ 25, 27; Defs.' Mem. at 7.  In that order, the Central District of California stated that it had "reviewed the Settlement Agreement . . . and conclude[d] that" the Settlement Agreement was "not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, [was] fair, reasonable, and adequate to all concerned."  Defs.' Mem. at 7 (first and second alterations in original) (internal quotation marks omitted) (quoting Feldon Decl., Ex. D (Order Re: Stipulation and Order/Consent Decree (Feb. 1, 2017)) at 1).  "Neither resident group appealed" the denial of their motion, "nor did any other non-party move to intervene to challenge the Consent Decree."  Id. at 8.

**C.      The Plaintiffs' Challenge to the Settlement Agreement in the District of Columbia Circuit**

On February 13, 2017, the plaintiffs in this case[4] filed a petition in the District of

Columbia Circuit seeking judicial review of the Settlement Agreement pursuant to 49 U.S.C.

§ 46110 (2012).  See id.; Compl. ¶ 31; see also Nat'l Bus. Aviation Ass'n v. Huerta, 737 F.

App'x 1, 2 (D.C. Cir. 2018).  49 U.S.C. § 46110 "permits individuals with substantial interests in

final orders of the FAA Administrator to challenge those orders[,]" and "[j]urisdiction over such

claims is limited exclusively to the [District of Columbia] Circuit or 'the court of appeals of the

United States for the circuit in which the person resides or has its principal place of business.'"

Defs.' Mem. at 8 (quoting 49 U.S.C. § 46110(a)).

The FAA subsequently moved to dismiss the District of Columbia Circuit petition for

lack of jurisdiction on the grounds that "[the] [p]laintiffs' proper forum for relief would be the

Central District of California."  Id.  In response, the plaintiffs acknowledged that the Consent

Decree was "reviewable only in the Ninth Circuit[,]" but they argued that the Settlement

Agreement was a separate "final agency action reviewable in this [Circuit] under 49 U.S.C. §

46110(a)."  Nat'l Bus. Aviation Ass'n, 737 F. App'x at 2.  The District of Columbia Circuit

rejected the plaintiffs' argument and denied the plaintiffs' petition on the grounds that "the

[S]ettlement [A]greement is not a final order of the FAA, and therefore is not reviewable under

49 U.S.C. § 46110(a)."  Id. at 3 ("[I]n order for us to entertain a petition under [49 U.S.C. §

46110(a)], the challenged order must possess the quintessential feature of agency

decisionmaking suitable for judicial review: finality." (first alteration in original) (internal

---

[4] The plaintiffs in this action were also the same plaintiffs in the District of Columbia Circuit litigation.  Compare Compl. at 1, with Initial Brief for the Petitioners at 1, Nat'l Bus. Aviation Ass'n v. Huerta, 737 F. App'x 1 (D.C. Cir. 2018) (No. 17-1054), 2017 WL 3530533.  For consistency purposes, the plaintiffs in both cases will be referred to as "the plaintiffs" throughout this Memorandum Opinion.

quotation marks omitted) (quoting Ass'n of Flight Attendants-CWA v. Huerta, 785 F.3d 710, 716 (D.C. Cir. 2015))). Specifically, this Circuit held that the Settlement Agreement was not a final order of the FAA because it "produced no legal consequences at all[,]" as "the [Settlement] [A]greement did not become effective until the [Consent] [D]ecree was entered and, absent that decree, the agreement would have been 'of no force and effect' whatsoever." Id. at 3–4 (internal citations omitted).

### D.    This Case

The plaintiffs in this case consist of various businesses that use the Airport as well as trade groups that advocate for the Airport's continued operation. See Compl. at ¶¶ 5–10. On July 24, 2018, the plaintiffs filed their Complaint in this Court, "seeking a declaratory judgment and injunctive relief holding that [the] FAA acted beyond its statutory authority in releasing [the City] from the requirement that it operate [the Airport] in conformity with specified obligations to the federal government[.]" Compl. at 1–2.

On September 28, 2018, the defendants filed their motion to dismiss, which is the subject of this Memorandum Opinion.[5]

---

[5] The defendants assert that the plaintiffs' Complaint should be dismissed for failure to satisfy the requirements for Leedom jurisdiction. See Nyunt v. Chairman, Broad. Bd. of Governors, 589 F.3d 445, 449 (D.C. Cir. 2009) (noting that the Leedom doctrine "permits, in certain limited circumstances, judicial review of agency action for alleged statutory violations even when a statute precludes review" (citing Leedom v. Kyne, 358 U.S. 184 (1958))); see discussion infra pp. 9–10 (outlining the doctrine of Leedom jurisdiction in more detail). Although the defendants construe the plaintiffs' failure to satisfy the requirements for Leedom jurisdiction as a failure to state a claim pursuant to Rule 12(b)(6), see Defs.' Mot. at 1; Defs.' Mem. at 1–2, it is more appropriately considered as a jurisdictional issue. See Rd. Sprinkler Fitters Local Union No. 669, U.A., AFL-CIO v. Nat'l Labor Relations Bd., 324 F. Supp. 3d 85, 89 (D.D.C. 2018) (holding that the district court lacked subject matter jurisdiction under the Leedom doctrine to review the plaintiff's challenge of non-final agency action, where the plaintiff did "not me[e]t the first requirement to establish Leedom jurisdiction[,]" and therefore the court granted the defendant's motion to dismiss on Rule 12(b)(1) grounds); Norfolk S. Ry. Co. v. Solis, 915 F. Supp. 2d 32, 46 (D.D.C. 2013) (holding that the district court lacked subject matter jurisdiction under the Leedom doctrine to review the plaintiff's challenge of non-final agency action, where "[the plaintiff] [ ] failed to satisfy either prong under the Leedom doctrine[,]" and therefore the court granted the defendant's motion to dismiss on Rule 12(b)(1) grounds). Accordingly, and in light

(continued . . .)

## II.    STANDARD OF REVIEW

Federal district courts are courts of limited jurisdiction, Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994), and therefore, "[a] motion for dismissal under [Federal Rule of Civil Procedure] 12(b)(1) 'presents a threshold challenge to the [C]ourt's jurisdiction[.]'" Morrow v. United States, 723 F. Supp. 2d 71, 75 (D.D.C. 2010) (Walton, J.) (quoting Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987)).  Thus, the Court is obligated to dismiss a claim if it "lack[s] [ ] subject matter jurisdiction[.]" Fed. R. Civ. P. 12(b)(1).  And, because "it is to be presumed that a cause lies outside [ ] [the Court's] limited jurisdiction," Kokkonen, 511 U.S. at 377, the plaintiff bears the burden of establishing by a preponderance of the evidence that a district court has subject matter jurisdiction, see Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992).

In deciding a motion to dismiss based upon lack of subject matter jurisdiction, the Court "need not limit itself to the allegations of the complaint."  Grand Lodge of the Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 14 (D.D.C. 2001).  Rather, the "[C]ourt may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case."  Scolaro v. D.C. Bd. of Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); see also Jerome Stevens Pharms., Inc. v. Food & Drug Admin., 402 F.3d 1249, 1253 (D.C. Cir. 2005).  Additionally, the Court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged[.]'"  Am. Nat'l Ins. Co. v. Fed.

(. . . continued)
of the fact that "federal courts, being courts of limited jurisdiction, must assure themselves of jurisdiction over any controversy they hear, regardless of the parties' failure to assert any jurisdictional question[,]" Noel Canning v. Nat'l Labor Relations Bd., 705 F.3d 490, 496 (D.C. Cir. 2013), the Court will construe the defendants' motion to dismiss as one brought pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, as the defendants' failure to argue the correct standard is not consequential, see Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

Deposit Ins. Corp., 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d

970, 972 (D.C. Cir. 2005)).  However, "the [p]laintiff's factual allegations in the complaint . . .

will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for

failure to state a claim."  Grand Lodge, 185 F. Supp. 2d at 13–14 (alterations in original)

(citation and internal quotation marks omitted).

### III.    ANALYSIS

The plaintiffs claim that the Court has jurisdiction "to prohibit action by an agency

(including action not deemed final) that is in excess of the agency's jurisdiction or its delegated

powers" pursuant to the doctrine pronounced by the Supreme Court in Leedom v. Kyne, 358

U.S. 184 (1958).  Compl. ¶ 2.  According to the plaintiffs, their "Complaint represents the

exceptional case that Leedom was intended to ensure would not escape scrutiny."  Pls.' Opp'n

at 5.

The Leedom doctrine "permits, in certain limited circumstances, judicial review of

agency action for alleged statutory violations even when a statute precludes review."  Nyunt v.

Chairman, Broad. Bd. of Governors, 589 F.3d 445, 449 (D.C. Cir. 2009).  In fact, the exercise of

Leedom jurisdiction permits review of agency action even when that agency action is non-final.

See Leedom, 358 U.S. at 190–91 (allowing the exercise of judicial review over a non-final

collective bargaining certification action); see also Weber v. United States, 209 F.3d 756, 759

n.1 (D.C. Cir. 2000) ("In Leedom, the Supreme Court held that although [National Labor

Relations Board] orders in certification proceedings had been understood not to be final orders

subject to judicial review, a district court had jurisdiction over a suit to 'strike down' an order

made in excess of the Board's authority . . . .").  However, "[t]he invocation of Leedom

jurisdiction . . . is extraordinary," Nat'l Air Traffic Controllers Ass'n AFL–CIO v. Fed. Serv.

Impasses Panel, 437 F.3d 1256, 1263 (D.C. Cir. 2006) (internal quotation marks omitted)

(quoting Ass'n of Civilian Technicians v. Fed. Labor Relations Auth., 283 F.3d 339, 344 (D.C.

Cir. 2002)), and "[t]his point cannot be overstated[] because . . . Leedom jurisdiction is

extremely narrow in scope," id.; see also Nyunt, 589 F.3d at 449 ("Given [the] very stringent

standard[s], a Leedom v. Kyne claim is essentially a Hail Mary pass—and in court as in football,

the attempt rarely succeeds.").

     A district court has jurisdiction under the Leedom doctrine only if three prerequisites are

satisfied: "(i) the statutory preclusion of review is implied rather than express; (ii) there is no

alternative procedure for review of the statutory claim; and (iii) the agency plainly acts in excess

of its delegated powers and contrary to a specific prohibition in the statute that is clear and

mandatory."  DCH Reg'l Med. Ctr. v. Azar, 925 F.3d 503, 509 (D.C. Cir. 2019) (internal

quotation marks omitted) (quoting Nyunt, 589 F.3d at 449).  In assessing whether the plaintiffs

have satisfied the second requirement of the Leedom doctrine—i.e., whether they have

established that there is no alternative procedure for review of their statutory claim—the Court

must determine whether the plaintiffs have been "wholly deprive[d] . . . of a meaningful and

adequate means of vindicating [their] statutory rights."  Bd. of Governors of Fed. Reserve Sys. v.

MCorp Fin., Inc., 502 U.S. 32, 43 (1991).

     Here, the plaintiffs have not satisfied the second requirement for the Court to exercise

Leedom jurisdiction because they have failed to demonstrate that there was no alternative

procedure available to them for the review of their claim.[6]  As the defendants correctly note, the

---

[6] Because a plaintiff must satisfy all three prerequisites of the Leedom doctrine for a court to exercise Leedom jurisdiction, DCH Reg'l Med. Ctr., 925 F.3d at 509 (noting that Leedom jurisdiction "applies only when [the] three requirements are met"), the Court need not consider the first and third requirements since the Court concludes that the plaintiffs fail to establish the second requirement, see Nyunt, 589 F.3d at 449 (concluding that Leedom jurisdiction was unavailable because "[e]ven assuming arguendo that [the plaintiff's] claim can meet the first and
(continued . . .)

"[p]laintiffs could have moved to intervene [in the Quiet Title Case] in the Central District [of California] [l]itigation to challenge the Consent Decree on the same grounds that it asserts in this case." Defs.' Mem. at 10.[7]  Therefore, nothing prevented the plaintiffs from seeking to intervene in the Quiet Title Case, and that opportunity provided them with an avenue to vindicate their rights and thus an alternative procedure for review.  See Nat'l Bus. Aviation Ass'n, 737 F. App'x at 4 ("[T]he [C]onsent [D]ecree was itself reviewable in the Ninth Circuit. . . . [T]he Ninth Circuit repeatedly has held that intervenors may challenge consent decrees entered into by federal agencies as violating any applicable statutes or regulations." (citing Conservation Nw. v. Sherman, 715 F.3d 1181, 1185–87 (9th Cir. 2013))).  Accordingly, the Court concludes that because the plaintiffs had an avenue for "possible redress for the alleged violations of their statutory rights" in the Quiet Title Case, the Court may not exercise Leedom jurisdiction in this case.  Nat'l Air Traffic Controllers Ass'n AFL-CIO, 437 F.3d at 1265.

The Court does not find the plaintiffs' counterarguments persuasive.  First, the plaintiffs argue that "[t]he mere existence of a consent decree does not require all claims related to it to be litigated in the issuing court[,]" Pls.' Opp'n at 6, and that because they "were not required to request intervention[,]" id. (capitalization removed), in the Quiet Title Case in order to challenge the Settlement Agreement, they therefore remain free to "vindicate their rights separately[,]" id. However, the plaintiffs "disregard[] the requirement that there be no alternat[ive] procedure for

---

(. . . continued)

second requirements [of the Leedom test], it cannot meet the third [requirement of the Leedom test]").

[7] The plaintiffs assert that the two-day window between when the FAA and the City moved for the Central District of California to enter the Consent Decree and the Central District of California's grant of that motion did not give them "a meaningful opportunity to participate before the case was closed." Compl. ¶¶ 25–26.  However, as the defendants note, the plaintiffs could have also moved to intervene after the entry of the Consent Decree.  See Defs.' Mem. at 11–12; see also Yniguez v. Arizona, 939 F.2d 727, 734–39 (9th Cir. 1991) (noting that district courts consider multiple factors when assessing whether to grant a post-judgment motion to intervene, including timeliness, and recognizing "the general rule that a post-judgment motion to intervene is timely if filed within the time allowed for the filing of an appeal").

review[,]" Defs.' Reply at 2 (internal quotation marks omitted), before a Court can exercise

Leedom jurisdiction, and this requirement "is entirely independent of whether the [plaintiffs']

claim happens to challenge a settlement agreement or consent decree[,]" id.  And, as the

defendants correctly note, the plaintiffs "do not identify a single case in which a court [has] held

that [the exercise of] Leedom [jurisdiction] was proper despite the availability of review through

intervention in an earlier proceeding[,]" Defs.' Reply at 3, and the Court is unable to locate any

such authority.  To the contrary, the possibility of intervention precludes the availability of

Leedom jurisdiction in an analogous case.  See Pac. Mar. Ass'n v. Nat'l Labor Relations Bd.,

827 F.3d 1203, 1211 (9th Cir. 2016) (concluding that exercising Leedom jurisdiction was

improper where the plaintiff did not "attempt to intervene" in an underlying administrative

proceeding because "intervention . . . presented [the plaintiff] with a viable alternative path to

seeking review of [the agency's] decision"). [8]

     Second, the plaintiffs argue that even if they had attempted to intervene, raising their

arguments as intervenors in the Quiet Title Case would not have constituted "meaningful and

adequate judicial review." [9]  Pls.' Opp'n at 8.  They claim that "no Leedom-based jurisprudence

---

[8] The plaintiffs argue that "Pacific Maritime arose under very different circumstances" because
> The Ninth Circuit there concluded that Leedom was inapplicable because plaintiffs could have intervened:
> (i) in an administrative proceeding; (ii) that was actively pending; (iii) had not at that stage considered
> intervention; and (iv) directly concerned the same matter of law at issue before the court. . . .The Ninth
> Circuit clarified that a reason why intervention comprised a "viable alternative path" in Pacific Maritime
> was consisten[t] with the doctrine of administrative review, and further noted that even without
> intervention, the plaintiff could appeal a final order entered in the administrative proceeding.

Pls.' Opp'n at 7–8.  Although the plaintiffs are correct that the Quiet Title Case was not an administrative
proceeding, that difference is not sufficient to separate this case from the Ninth Circuit's conclusion that exercising
Leedom jurisdiction would be inappropriate because the plaintiff "had some alternative means to challenge the
[agency's] decision."  Pac. Mar. Ass'n, 827 F.3d at 1210.

[9] The plaintiffs also argue that a "'meaningful and adequate' remedy for Leedom purposes [must] turn[] on the
'statutory mechanism' for judicial review" and that "intervention and objection in the [Quiet Title Case] would not
[have been] based upon any statutory mechanism for review of FAA actions."  Pl.'s Opp'n at 10 (citing Reuben H.
Donnelly Corp. v. Fed. Trade Comm'n, 1977-2 Trade Cases ¶ 61,783, 1977 WL 1514, at *2 (N.D. Ill. Dec. 20,
1977), vacated on other grounds, Reuben H. Donnelly Corp v. Fed. Trade Comm'n, 580 F.2d 264 (7th Cir. 1978)).
However, the plaintiffs identify no authority for the proposition that the alternate mechanism of review must be

(continued . . .)

has ever suggested that it is sufficient that a plaintiff's rights could be injected into and incidentally considered in a third-party proceeding," Pls.' Opp'n at 9, and that "[i]n contrast, Leedom 'jurisdiction … will tend to be found where there is no appellate remedy at all[,]'" id. (citing CCA of Tenn., LLC v. Perez, No. 15-cv-3164 (KM)(MAH), 2015 WL 10911364, at *9 (D.N.J. Dec. 18, 2015)).  However, they fail to explain how intervening in the Central District Litigation would have deprived them of meaningful and adequate review.  In fact, the mere fact that the plaintiffs had the opportunity to intervene shows that they were not "wholly deprive[d]" of judicial review.  Nat'l Air Traffic Controllers Ass'n AFL–CIO, 437 F.3d at 1263; Defs.' Reply at 4 (noting that "[n]othing about the procedural posture of proceeding as an intervenor would have deprived [the] [p]laintiffs of meaningful and adequate review").  The plaintiffs also assert that intervention would not have constituted meaningful and adequate judicial review because "the standard of review regarding a consent decree in the Central District [of California], and for any appeal, would be highly deferential[,]" Pls.' Opp'n at 9, compared to the standard of review that the plaintiffs would face when challenging the Consent Decree under Leedom in this Court, see id. at 9–10.  However, as the defendants correctly note, the plaintiffs are mistaken "that the standard of substantive review under Leedom is more favorable to them than the standards that would have applied in the [Quiet Title Case]."  Defs.' Reply at 5.  Because "a district court may not approve a consent decree that 'conflicts with or violates' an applicable

---

(. . . continued)

based upon the statutory mechanism for judicial review of an agency's actions.  See id.  Additionally, the plaintiffs take the quoted language in Reuben H. Donnelly Corp. out of context.  See id.  In that case, the court was simply reiterating the proposition, which was not clarified until years later in MCorp Financial, Inc., 502 U.S. at 43, that the availability of review was a relevant consideration in determining whether to apply Leedom jurisdiction.  See Reuben H. Donnelly Corp., 1977 WL 1514, at *2 ("[A] plaintiff must always show that the statutory mechanism for appellate review of the challenged agency action is inadequate to protect his rights before he may invoke the Leedom rule."); MCorp Fin., Inc., 502 U.S. 32, 43 (1991) (noting that Leedom jurisdiction is only available when declining review "would wholly deprive the [plaintiff] of a meaningful and adequate means of vindicating [a plaintiff's] statutory rights").  Contrary to the plaintiffs' argument, the Reuben H. Donnelly Corp. court did not hold that the mechanism of review must be based upon the agency's statutory mechanism for judicial review in order to be meaningful and adequate.

statute," the Central District of California would have been required to consider the plaintiffs'

arguments on the merits, without deference to the Settlement Agreement.  Conservation Nw.,

715 F.3d at 1185 (holding "that a district court abuses its discretion when it enters a consent

decree that permanently and substantially amends an agency rule that would have otherwise been

subject to statutory rulemaking procedures").  Therefore, the standard of review that the

plaintiffs would have faced in the Quiet Title Case is not so deferential as to render intervention

in that case not "meaningful and adequate,"[10] and in fact, as the defendants correctly note, the

plaintiffs would have faced a less stringent standard than the standard of review that they would

now have to overcome on a claim authorized pursuant to Leedom, see Defs.' Reply at 6.[11]

Third, the plaintiffs contend that intervention would not constitute an alternate means to

obtain meaningful and adequate review because "intervention and objection, at the discretion of

the Central District, likely would have been denied or restricted."  Pls.' Opp'n at 11.  According

to the plaintiffs, "only [forty-eight] hours elapsed between FAA and the City's submission of an

application for a consent decree and the Central District's issuance thereof," and "[i]n that brief

---

[10] If the plaintiffs had not prevailed and appealed the decision of the Central District of California, the Ninth Circuit would have "review[ed] [the] district court's approval of [the] [C]onsent [D]ecree for abuse of discretion[,]" Conservation Nw., 715 F.3d at 1185, and, in making this determination, the Ninth Circuit would review questions of law "de novo[.]"  id. (citing Husain v. Olympic Airways, 316 F.3d 829, 835 (9th Cir. 2002), aff'd, 540 U.S. 644 (2004)).  Accordingly, the standard of review that the plaintiffs would have received on appeal would also not be so deferential as to render intervention not meaningful and adequate.

[11] The plaintiffs also contend that intervention would not be a "meaningful and adequate" mechanism of judicial review because "[t]he opportunity for judicial review must be straightforward[,]" rather than fulfilled by "convoluted procedures."  Pls.' Opp'n at 10 ("'[A] party lacks meaningful review of its claims' when an agency has structured its 'procedures [to] create burdensome barriers to those claims being heard at all.'" (alterations in original) (quoting Bombardier, Inc. v. U.S. Dep't of Labor, 145 F. Supp. 3d 21, 35 (D.D.C. 2015))).  However, the Bombardier case cited by the plaintiffs does not provide support for their position that the Court should exercise Leedom jurisdiction in this case.  The Bombardier court held that "a party lacks meaningful review of its claims only when administrative procedures create burdensome barriers to those claims being heard at all."  145 F. Supp. 3d at 34–35 (emphasis added) (holding that the Department of Labor's administrative review scheme, which required the plaintiff "to continue litigating before the Department" before having the opportunity to "appeal an adverse decision to a court of appeals," did "not foreclose all meaningful judicial review").  Here, there were no "convoluted" administrative procedures that effectively prevented the plaintiffs' claims from being heard as suggested by the plaintiffs.  Pls.' Opp'n at 10.  Instead, as the Court previously explained, the plaintiffs could have had their claims heard in the Quiet Title Case by filing a motion to intervene in that case.

window, two other parties submitted requests to intervene and object, which were denied despite the significant change in the circumstances of the case."  Id.  However, although, as the plaintiffs correctly note, it is possible that their motion to intervene would have been denied, see Pls.' Opp'n at 11–12, the fact that the Central District of California may have denied the plaintiffs' attempt to intervene does not show the plaintiffs were "wholly deprive[d]. . . of a meaningful and adequate means of vindicating [their] statutory rights."[12]  MCorp Fin., Inc., 502 U.S. at 43.  The plaintiffs fail to cite any authority to support their assertion that an alternative path for review is not meaningful or adequate simply because it is uncertain whether the sought-after review will actually be granted.  See Norfolk S. Ry. Co., 915 F. Supp. 2d at 45 (recognizing that, even if a plaintiff "may never get the opportunity to challenge" an agency's decision in one case, "the opportunity to challenge [it] . . . in another case" precludes the exercise of Leedom jurisdiction).[13]  Although courts have held that exercising Leedom jurisdiction is appropriate where the plaintiffs "had 'no other means, within their control' of obtaining judicial review[,]" Sturm, Ruger & Co. v. Chao, 300 F.3d 867, 874 (D.C. Cir. 2002) (quoting MCorp Fin., Inc., 502

---

[12] If the Central District of California had denied the plaintiffs' attempt to intervene, the plaintiffs could have then appealed the Central District of California's decision to the Ninth Circuit.  As the Court previously noted, see supra note 10, in such circumstances, the Ninth Circuit would have "review[ed] [the] district court's approval of [the] [C]onsent [D]ecree for abuse of discretion[,]" Conservation Nw., 715 F.3d at 1185, and, in making this determination, the Ninth Circuit would have reviewed questions of law "de novo[,]" id. (citing Husain v. Olympic Airways, 316 F.3d 829, 835 (9th Cir. 2002), aff'd, 540 U.S. 644 (2004)).

[13] The plaintiffs' argument is directly at odds with Pacific Maritime.  See Pac. Mar. Ass'n, 827 F.3d at 1210–11.  As the Court previously explained, in that case, the Ninth Circuit rejected the plaintiff's argument that "a renewed request for intervention would be futile[,]" id. at 1210, and "conclude[d] that intervention in the [agency] proceeding presented [the plaintiff] with a viable alternative path to seeking review of the [agency's] decision[,]" id. at 1211.  Accordingly, the Pacific Maritime court rejected a similar argument as the plaintiffs make in this case—namely, that simply because it is uncertain whether the sought-after review would have been granted, an alternative path for review would not have been meaningful or adequate.  See id. at 1210–11.  Moreover, this Circuit's analysis in National Business Aviation Ass'n, 737 F. App'x at 3, further undermines the plaintiffs' speculation that the Central District of California would have denied a motion to intervene in the Quiet Title Case, had the plaintiffs filed one.  In that case, this Circuit recognized that, even though "two of the [plaintiffs] had previously been denied intervention in the [Quiet Title Case] on the ground that the FAA adequately protected their interests[,]" id., the plaintiffs could have "sought intervention after the 'Settlement Agreement/Consent Decree' created fissures between the FAA, which now wants to compromise, and [the plaintiffs], who want to press for the airport to remain open in perpetuity[,]" id.

U.S. at 43), the plaintiffs have failed to show that intervention in the Quiet Title Case was not a means of obtaining judicial review "within their control[,]" id.  Contrary to the plaintiffs' argument that they "ha[d] no means by which to 'control' or 'force' the Central District [of California] or [the] FAA to allow intervention and objection[,]" Pls.' Opp'n at 13,[14] the plaintiffs chose not to avail themselves to a potential avenue for judicial review in the Quiet Title Case, and their failure to take advantage of that opportunity precludes the Court's review based on Leedom.

The plaintiffs further claim that, even if they had been able to intervene in the Quiet Title Case, "there is no certainty that [the] [p]laintiffs would [have] be[en] allowed to include in their objections that [the] FAA had acted ultra vires."  Pls.' Opp'n at 13.  Specifically, the plaintiffs contend that they might not have been able to raise their argument during intervention because "intervenors generally may not introduce issues not briefed by the original parties—including that an agency exceeded its authority[,]" id. (citing Nat'l Ass'n of Regulatory Util. Comm'rs v. Interstate Commerce Comm'n, 41 F.3d 721, 729 (D.C. Cir. 1994)), and the parties in the Quiet Title Case had not addressed the question of whether the FAA had acted ultra vires in entering into the Consent Decree, see id. at 14 ("[The] FAA (and the City) did not alert the Central District [of California] that [the] FAA's authority was [allegedly] in doubt in conjunction with the [C]onsent [D]ecree . . . .").  As the defendants correctly note, however, this Circuit has already rejected the plaintiffs' argument in National Business Aviation Association, stating that

---

[14] In support of their argument that "[o]ther courts concur that scenarios in which a plaintiff's arguments might be heard by another court based on factors beyond its control do not satisfy Leedom[,]" Pl.'s Opp'n at 13, n.8, the plaintiffs cite cases which, as the defendants correctly note, "stand for the proposition that [the exercise of] Leedom [jurisdiction] might be appropriate when, otherwise, the only way for a plaintiff to raise its arguments would be in defense of a legal proceeding that the government initiates at its discretion (e.g., enforcement proceedings)[,]" Defs.' Reply at 7; see also Pls.' Opp'n at 13 & nn.7–8.  However, these cases are not analogous here, because the plaintiffs could have moved to intervene in the already-pending Quiet Title Case to raise their current challenges to the Settlement Agreement.  Accordingly, the plaintiffs' opportunity to intervene in the Quiet Title Case did not depend on a discretionary enforcement proceeding initiated by the FAA.

"the Ninth Circuit repeatedly has held that intervenors may challenge consent decrees entered

into by federal agencies as violating any applicable statutes or regulations."  737 F. App'x at 4

(noting that the plaintiffs were "mistaken" when they argued "that because the [Quiet Title Case]

was limited to a dispute about certain deed restrictions, they could not have raised their current

arguments in that case"); see also Conservation Nw., 715 F.3d at 1183, 1185–88 (reversing the

district court's entry of a consent decree, where the consent decree "substantially and

permanently amend[ed] regulations that the agency could only otherwise amend by complying

with statutory rulemaking procedures"); Turtle Island Restoration Network v. U.S. Dep't of

Commerce, 672 F.3d 1160, 1165–66 (9th Cir. 2012) (reviewing an intervenor's argument that a

consent decree approving a settlement violated two statutes limiting agency action).

Accordingly, the plaintiffs' assertion that they would not have been permitted to raise their

objections that the Consent Decree was ultra vires through intervention is not correct.[15]

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes that the plaintiffs' opportunity to seek

intervention in the earlier Quiet Title Case presented them with a meaningful and adequate

alternative means of review, and therefore the Court may not exercise Leedom jurisdiction in this

case.  Accordingly, the Court grants the defendants' motion to dismiss for lack of jurisdiction.

---

[15] The plaintiffs' attempt to diminish the impact of this Circuit's ruling in National Business Aviation Ass'n is unpersuasive.  See Pls.' Opp'n at 13 (noting that "[w]hile the [District of Columbia] Circuit suggested that [the] [p]laintiffs could have" raised their argument that the FAA had acted ultra vires through intervention, "it did not imply that to be the only remedy — and its analysis was dicta and incomplete").  As the defendants correctly note, "not one of the cases on which [the] [p]laintiffs rely involved an argument that a consent decree was ultra vires, an issue that presumably would not be raised by the settling parties."  Defs.' Reply at 9 (citing Nat'l Ass'n of Regulatory Util. Comm'rs, 41 F.3d at 729; New York v. Reilly, 969 F.2d 1147, 1154 n.11 (D.C. Cir. 1992); United States v. Blue Lake Power, 215 F. Supp. 3d 838, 844 (N.D. Cal. 2016)).  In National Business Aviation Ass'n, however, this Circuit cited to various Ninth Circuit cases which directly address, and contravene, the plaintiffs' argument that they could not raise their objections through intervention.  See 737 F. App'x at 3 (citing Conservation Nw., 715 F.3d at 1185–87; Turtle Island Restoration Network, 672 F.3d at 1165–66).  Accordingly, the Court must adhere to the Circuit's conclusion in National Business Aviation Ass'n that the plaintiffs could have raised their objections that the FAA had acted ultra vires in the Quiet Title Case if they had sought and been permitted to intervene in that case.

**SO ORDERED** this 9th day of October, 2020.[16]

REGGIE B. WALTON
United States District Judge

---

[16] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.